CAUSE NO. DC-17-17592

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **MCR OIL TOOLS, LLC,** | § | ~~IN THE DISTRICT COURT OF~~ |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | |
| | § | ~~95th JUDICIAL DISTRICT~~ |
| **SPEX OFFSHORE, LTD.,** | § | |
| **SPEX SERVICES, LTD.,** | § | |
| **SPEX OFFSHORE (UK) LTD.,** | § | |
| **SPEX GROUP US LLC,** ~~and~~ | § | |
| **SPEX ENGINEERING (UK) LTD.,** | § | |
| | § | |
| **SPEX GROUP HOLDINGS, LTD,** | § | |
| **SPEX CORPORATE HOLDINGS,** | § | |
| **LTD., and** | § | ~~DALLAS COUNTY, TEXAS~~ |
| **JAMIE OAG.** | § | |
| | § | |
| *Defendants.* | | |
| | | CIVIL ACTION NO. 3:18-CV-00731-K |

**PLAINTIFF'S** ~~SECOND~~**THIRD AMENDED** ~~PETITION, REQUEST FOR TEMPORARY RESTRAINING ORDER~~**COMPLAINT AND APPLICATION** **FOR** ~~FOR TEMPORARY~~**PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

~~TO THE HONORABLE COURT:~~

~~COMES NOW~~ Plaintiff MCR Oil Tools, LLC ~~("MCR" or "Plaintiff")~~ files this ~~Second~~Third Amended ~~Petition, Request for Temporary Restraining Order~~Complaint and Application for ~~Temporary~~Preliminary and Permanent Injunctive Relief against Defendants SPEX Offshore, Ltd., SPEX Services, Ltd., SPEX Offshore (UK) Ltd., SPEX Group US, LLC, ~~and~~ SPEX

Engineering (UK) Ltd., SPEX Group Holdings, Ltd., SPEX Corporate Holdings, Ltd. and Jamie Oag (collectively, the "SPEX" or " Defendants") as follows:

**PARTIES**

~~INTRODUCTION~~

1.      Plaintiff MCR Oil Tools, LLC ("MCR") is a Texas limited liability company who has appeared in this action.

2.      Defendant SPEX Offshore, Ltd. ("SPEX Offshore") is organized under the laws of the United Kingdom, with its principal place of business in the United Kingdom. SPEX Offshore has engaged in business in the State of Texas but does not maintain a regular place of business or a designated agent for service of process in Texas. SPEX Offshore may be served via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil of Commercial Matters, 1965 U.S.T. 361, 658 U.N.T.S. 163 (1965). SPEX Offshore may be served at its home or home office address: FRP Advisory LLP, Suite 2B, Johnstone House, 52-54 Rose Street, Aberdeen, Scotland, AB10 1UD. Service of process on SPEX Offshore via the Hague Convention is underway.

3.      Defendant SPEX Services, Ltd. ("SPEX Services") is organized under the laws of the United Kingdom, with its principal place of business in the United Kingdom. SPEX Services has engaged in business in the State of Texas but does not maintain a regular place of business or a designated agent for service of process in Texas. SPEX Services may be served via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil of Commercial Matters, 1965 U.S.T. 361, 658 U.N.T.S. 163 (1965). SPEX Services may be served at its home or home office address: FRP Advisory LLP, Suite 2B, Johnstone House, 52-54 Rose Street,

Aberdeen, Scotland, AB10 1UD. Service of process on SPEX Services via the Hague Convention is underway.

4.  Defendant SPEX Offshore (UK) Ltd. ("SPEX Offshore UK") is organized under the laws of the United Kingdom and has appeared in this action.

5.  Defendant SPEX Group US, LLC ("SPEX Group") is a Texas limited liability company that has appeared in this action.

6.  Defendant SPEX Engineering (UK) Ltd. ("SPEX Engineering UK") is organized under the laws of the United Kingdom and has appeared in this action.

7.  Defendant SPEX Group Holdings, Ltd. ("SPEX Holdings") is organized under the laws of the United Kingdom, with its principal place of business in the United Kingdom. Upon information and belief, SPEX Holdings has engaged in business in the State of Texas but does not maintain a regular place of business or a designated agent for service of process in Texas. SPEX Holdings may be served via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil of Commercial Matters, 1965 U.S.T. 361, 658 U.N.T.S. 163 (1965). SPEX Holdings may be served at its home or home office address: Blackwood House, Union Grove Lane, Aberdeen, Scotland, AB10 6XU. MCR intends to initiate service of process on SPEX Holdings via the Hague Convention as soon as reasonably practicable.

8.  Defendant SPEX Corporate Holdings, Ltd. ("SPEX Corporate Holdings") is organized under the laws of the United Kingdom, with its principal place of business in the United Kingdom. Upon information and belief, SPEX Corporate Holdings has engaged in business in the State of Texas but does not maintain a regular place of business or a designated agent for service of process in Texas. SPEX Corporate Holdings may be served via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil of Commercial Matters, 1965

U.S.T. 361, 658 U.N.T.S. 163 (1965). SPEX Corporate Holdings may be served at its home or home office address: Blackwood House, Union Grove Lane, Aberdeen, Scotland, AB10 6XU. MCR intends to initiate service of process on SPEX Corporate Holdings via the Hague Convention as soon as reasonably practicable.

9.      Defendant Jamie Oag ("Oag") is an individual residing in the United Kingdom. Oag has engaged in business in the State of Texas but does not maintain a regular place of business or a designated agent for service of process in Texas. Oag may be served via the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil of Commercial Matters, 1965 U.S.T. 361, 658 U.N.T.S. 163 (1965). Oag may be served at his home or home office address: Dunnottar House, Howe Moss Drive, Kirkhill Industrial Estate, Aberdeen, Scotland, AB21 OFN or anywhere else he may be found. MCR intends to initiate service of process on Oag via the Hague Convention as soon as reasonably practicable.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332 as the matter in controversy exceeds $75,000 and the suit involves a citizen or subject of a State and citizens or subjects of a foreign state.

11.     The Court has personal jurisdiction over SPEX Offshore because it established sufficient minimum contacts with the State of Texas such that exercise of jurisdiction over SPEX Offshore would not offend traditional notions of fair play and substantial justice. Among other acts, SPEX Offshore has engaged in business in Texas, entered into contracts in Texas, directed substantial communications to MCR representatives in Texas, and sent agents to Texas to test and develop competing tools or products. In addition, SPEX Offshore, both directly and through its affiliates and directors, has committed and continues to commit intentional torts expressly aimed

at Texas, causing serious harm to MCR in Texas. At all relevant times, SPEX Offshore knew that the brunt of the injury resulting from its wrongful conduct would be felt by MCR in Texas. MCR's claims against SPEX Offshore arise out of events occurring in Texas.

12.     The Court has personal jurisdiction over SPEX Services because it established sufficient minimum contacts with the State of Texas such that exercise of jurisdiction over SPEX Services would not offend traditional notions of fair play and substantial justice. Among other acts, SPEX Services has engaged in business in Texas, entered into contracts in Texas, directed substantial communications to MCR representatives in Texas, and sent agents to Texas to test and develop competing tools or products. In addition, SPEX Services, both directly and through its affiliates and directors, has committed and continues to commit intentional torts expressly aimed at Texas, causing serious harm to MCR in Texas. At all relevant times, SPEX Services knew that the brunt of the injury resulting from its wrongful conduct would be felt by MCR in Texas. MCR's claims against SPEX Services arise out of events occurring in Texas.

13.     The Court has personal jurisdiction over Jamie Oag because he established sufficient minimum contacts with the State of Texas such that exercise of jurisdiction over Oag would not offend traditional notions of fair play and substantial justice. Among other acts, Oag has engaged in business in Texas, entered into contracts in Texas, directed substantial communications to MCR representatives in Texas, and sent agents to Texas to test and develop competing tools or products. In addition, Oag, both directly and through the SPEX Defendants, has committed and continues to commit intentional torts expressly aimed at Texas, causing serious harm to MCR in Texas. At all relevant times, Oag knew that the brunt of the injury resulting from his wrongful conduct would be felt by MCR in Texas. MCR's claims against Oag arise out of events occurring in Texas.

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

14.     The Court has personal jurisdiction over SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings because each of these entities established sufficient minimum contacts with the State of Texas such that exercise of jurisdiction over them would not offend traditional notions of fair play and substantial justice. Among other acts, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings, both directly and through directors and affiliates, has engaged in business in Texas, directed substantial communications to MCR representatives in Texas, and sent agents to Texas to test and develop competing tools or products. In addition, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings, both directly and through affiliates and directors, have committed and continue to commit intentional torts expressly aimed at Texas, causing serious harm to MCR in Texas. At all relevant times, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings knew that the brunt of the injury resulting from their wrongful conduct would be felt by MCR in Texas. MCR's claims against SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings arise out of events occurring in Texas. Alternatively, the Court has personal jurisdiction over SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings because they are alter egos of SPEX Offshore, SPEX Services, and Oag.

15.     Venue is proper because this district and division embrace the place in which the removed action was pending. 28 U.S.C. § 1441.

## BACKGROUND FACTS

**A.     MCR owns valuable oilfield tools and intellectual property.**

16.     For more than three decades, MCR has worked in the oilfield tool industry. MCR researches, invents, designs, develops, manufactures, and sells its oilfield tools, products and,

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF     REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 6

**Formatted:** Tab stops:  6", Right + Not at  6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

equipment. Many of MCR's tools and accessories are used to cut oil well pipe downhole.  MCR's tools ("Tools"), using patented technology, trade secrets, and confidential and proprietary information. MCR's Tools are generally thermite-based tools, that is, a pipe cutter cutters or torch torches fueled by a solid combustible charge. MCR's tools are used to cut, perforate and consume oil well pipe downhole.

17.     With respect to its Tools, MCR owns and controls a compilation of confidential and proprietary information and know-how relating to, among other things, the internal body size dimensions defining the diameter and length of the corresponding fuel load, the use of fuel extensions to increase power for the Tools, the design and function of nozzles (including the diameter, length, and number of nozzle holes), the design and length of pellets, the percentages of fuel mixtures and materials, and the size of fuel loads, for its radial cutting, axial cutting, and perforating torches, and consumables.

18.     This know-how together with other confidential and proprietary information comprises protected by an array of patented technology, trade secrets, confidential and proprietary information, and trade secrets, all of which were developed and designed to obtain an advantage over MCR's competitors. MCR's trade secrets include all improvements, experimentation, designs, refinements, processes, formulations, tool configurations, know-how, data, reports, methods, test methods and systems developed, tested, perfected and owned by MCR for the purpose of designing, developing and manufacturing its Tools.

19.     MCR's trade secrets include not only how to design, develop, test, configure and manufacture its Tools for proper field use and to achieve successful downhole cutting and perforating of downhole tubulars, but also how *not* to design, develop, configure and manufacture the Tools. MCR's trade secrets include methods of design, manufacturing and use that were

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEF Page PLAINTIFF'S

PAGE 7

effective, and methods that were *not* effective, toward reaching certain goals for the optimization of MCR's Tools.

20.    Lastly, MCR's trade secrets include specialized knowledge, know-how and skills gained by MCR's employees through experimentation, testing, development, trial and error, and from the investment and expenditure of time, money, and resources.

21.    MCR has invested substantial time, money, resources, and effort to develop the confidential and proprietary information comprising its trade secrets. MCR's highly valuable trade secrets represent decades of research and development and provide MCR an advantage over its competitors. MCR's trade secrets derive independent economic value because they are not generally known to, or readily ascertainable through proper means by, other persons who can obtain economic value from the disclosure or use of the information.

**B.     MCR takes active measures to protect its Tools and intellectual property.**

22.    MCR closely regulates access to its valuable trade secrets and confidential and proprietary information by limiting access to and disclosure of such information. As one such security measure, MCR limits access to its offices, files, and computers.

~~1.~~23.    In addition, MCR takes other active measures to prevent theft of its intellectual property by dishonest, cunning licensees hoping to reverse engineer MCR's Tools or rebrand MCR's intellectual property as their own. Most importantly, MCR requires its customers to enter into comprehensive, well-crafted license agreements ~~("Licensed Technology")~~, which MCR has invested substantial time and resources developing and strengthening over the years. MCR closely monitors all licensees' use of its Tools and intellectual property once they are bound by the detailed license agreements, which are specifically designed to protect these valuable assets.

24.     As set forth below in detail, the crux of MCR's claims against the SPEX Defendants stem from breaches (and continuing breaches) of MCR's license agreements.

**C.     MCR licenses its Tools and intellectual property to SPEX Services in 2009 and 2011, and to SPEX Offshore in 2014 and 2015.**

**SPEX Services**

25.     On April 20, 2009, SPEX Services was incorporated.

26.     On or about June 29, 2009, MCR licensed its Tools and intellectual property to SPEX Services.

27.     On May 16, 2011, MCR entered into a subsequent license agreement with SPEX Services.[1] John Fox ("Fox") signed the 2011 License Agreement as SPEX Services' Director.

28.     On May 24, 2011, eight days after signing the 2011 License Agreement, SPEX Services appointed Jamie Oag as Director.[2]

29.     On July 6, 2012 and April 18, 2013, respectively, SPEX Services appointed Rae Younger ("Younger") and Nadir Mahjoub ("Mahjoub") as Directors.

2.     **SPEX Offshore** SPEX Offshore, Ltd. and SPEX Services, Ltd. have been licensees of MCR as far back as 2009,[3] signing MCR licenses in 2009, 2011, 2014, and 2015.  All License Agreements contained essentially the same representations and prohibitions.  In 2014, MCR licensed the use of its tools and intellectual property to SPEX Offshore, Ltd. through a License

---

[1] Exhibit A (the "2011 License Agreement").

[2] In the 2011 License Agreement, SPEX Services listed Dunnottar House, Howe Moss Drive, Kirkhill Industrial Estate, Dyce AB21 0FN ("Dunnottar House") for notices. Upon information and belief, this is Jamie Oag's home address.

[3] SPEX Services Ltd., SPEX Offshore, Ltd.'s predecessor-in-interest, signed MCR license agreements in 2009 and 2011.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

Agreement (the "2014 License Agreement").[4] In 2015, MCR and SPEX Offshore, Ltd., agreed to extend the 2014 License Agreement for one year (the "2015 Extension"),[5] until its termination in May 2016. All of MCR's license agreements, including specifically the 2014 License Agreement, were carefully crafted to prevent the theft of trade secrets by a cunning licensee who attempts to rebrand MCR's intellectual property. Despite the strong and forceful language in the License Agreements, SPEX Offshore Ltd. and SPEX Services, Ltd. conspired with SPEX Offshore (UK) Ltd., SPEX Engineering (UK) Ltd., and SPEX Group US LLC to commit the illegal acts described throughout this Petition.

3.     As part of MCR's consistent efforts to protect its trade secrets and confidential and proprietary information, the 2014 License Agreement[6] was written so that:

SPEX

30.     On September 11, 2012, SPEX Offshore was incorporated.[7] At the time of incorporation, SPEX Offshore listed Fox and Ryan Strachan ("Strachan") as Directors.

31.     On February 21, 2014, SPEX Offshore appointed Oag as Director.

32.     On May 21, 2014, MCR entered into a license agreement with SPEX Offshore.[8] Oag signed the 2014 License Agreement as SPEX Offshore's Chief Executive Officer.[9]

---

[4] Exhibit 1.

[5] Exhibit 3.

[6] The 2015 Extension confirmed did not alter SPEX's representations.

[7] SPEX Offshore listed Blackwood House, Union Grove Lane, Aberdeen AB10 6XU ("Blackwood House") as its registered address.

[8] Exhibit B (the "2014 License Agreement").

[9] Although SPEX Offshore listed Blackwood House as its registered address in its incorporation papers, it listed Dunnottar House for notices in the 2014 License Agreement.

Formatted: Tab stops: 6", Right + Not at 6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

33.     On June 1, 2015, MCR agreed to extend the terms of the 2014 License Agreement for one year—to May 21, 2016.[10] Oag signed the 2015 Extension as SPEX Offshore's Chief Executive Officer.

34.     Importantly, in the 2015 Extension, MCR and SPEX Offshore agreed that "[e]xcept as specifically and explicitly amended … no other terms of the [2014 License Agreement] shall be affected by this extension."[11]

35.     The 2011 and 2014 License Agreements (and the 2015 Extension) contain essentially the same material terms, representations, acknowledgments and agreements by SPEX Services, SPEX Offshore and Oag, which were specifically negotiated by MCR in order to protect its Tools and intellectual property. Moreover, in entering into the 2011 and 2014 License Agreements (and the 2015 Extension), MCR relied on all representations, acknowledgments and agreements made by SPEX Services, SPEX Offshore and Oag in the respective agreements.

**D.     The 2014 License Agreement contains specific terms and definitions related to MCR's Tools and intellectual property.**

36.     In the 2014 License Agreement, "Confidential Information" is defined to include, among other things, MCR's "confidential or proprietary information," "know-how," "methods," "processes," and "trade secrets."[12] "Confidential Information" also includes MCR's "products," "equipment," and "instruments," *i.e.*, its Tools.[13]

---

[10] Exhibit C (the "2015 Extension").

[11] *Id.*

[12] Exhibit B at §1.01.

[13] *Id.*

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 11

37.    "Improvements" are defined as any improvement or modification, or future improvement or modification, of any "device, product, method, or process belonging to MCR."[14] With respect to ownership of any Improvements, the 2014 License Agreement explicitly provides that "any and all future improvements and/or modifications … whether conceived and/or developed independently … or jointly … will be owned by MCR."[15]

38.    "Licensed Patents" are defined as U.S. and foreign patents MCR owns or holds, as listed in Appendix A to the 2014 License Agreement.[16]

39.    "Licensed Products" are defined as MCR's products, as listed in Appendix B to the 2014 License Agreement.[17]

40.    "Licensed Technology" is defined as MCR's "confidential or proprietary information" relating to its Licensed Patents and Licensed Products, specifically including, among other things, MCR's "know-how," "methods," "trade secrets," and "processes."[18]

41.    The 2011 License Agreement contains similar terms and definitions related to MCR's Tools and intellectual property.[19]

**E.    Oag and SPEX Offshore make numerous representations and acknowledgements in the 2014 License Agreement related to MCR's Tools and intellectual property.**

42.    Immediately following the definitions section in the 2014 License Agreement are representations and acknowledgements, which MCR requires of its licensees as part of its

---

[14] *Id.* at § 1.02.

[15] *Id.* at §§ 1.02, 3.04.

[16] *Id.* at § 1.04.

[17] *Id.* at § 1.05.

[18] *Id.* at § 1.06.

[19] *See, e.g.,* Exhibit A at §§ 1.02, 1.03, 1.04, 1.06, 1.09, 1.10, 3.04.

~~PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND~~ THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF    ~~REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage~~ PLAINTIFF'S

PAGE 12

**Formatted:** Tab stops:  6", Right + Not at  6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

consistent, ongoing effort to protect its Tools and intellectual property.[20] These representations and acknowledgments, which Oag and SPEX Offshore made and MCR acted and relied on, include the following:

- Oag and SPEX Offshore acknowledged that MCR holds valuable rights in its Tools and intellectual property;[21]

- Oag and SPEX Offshore acknowledged that MCR has spent significant time and effort, at significant expense, to develop, acquire, protect, maintain and license its Tools and intellectual property;[22]

a. Oag and SPEX Offshore represented that SPEX Offshore had not invented, designed, developed, or improved ~~any~~(nor contributed to inventing, designing, developing or improving) any technology or products for perforating, consuming or cutting of downhole pipes using any part of MCR's Licensed Technology, which is ~~specifically~~ defined to include ~~such tools included in the definition of "Licensed Technology" in the 2014 License Agreement its~~MCR's trade secrets, thermite-based technology and solid combustible charge-based tools;[23]

- Oag and SPEX Offshore represented that ~~it was not engaged in~~SPEX Offshore was not aware of any person or entity having invented, designed, developed or improved (nor contributed to inventing, designing, developing or improving) any technology or products for perforating, consuming or cutting of downhole pipes using any of MCR's Licensed Technology,

---

[20] Exhibit B, p. 2-3.

[21] *Id.* at § 2.01.

[22] *Id.* at § 2.02.

[23] *Id.* at § 2.03.

which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools;[24]

- Oag and SPEX Offshore represented that SPEX Offshore was not in the business of designing or developing thermite-based products or technology substantially similar to or competitive with MCR's Licensed Products and Licensed Technology;[25] and

- Oag and SPEX Offshore represented that SPEX Offshore had no intention of entering into the business of designing or developing thermite-based products or technology substantially similar to or competitive with MCR's Licensed Products and Licensed Technology, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools.[26]

43.    In the 2011 License Agreement, SPEX Services made similar representations and acknowledgements, which MCR acted and relied on.[27]

**F.    Oag and SPEX Offshore make numerous agreements in the 2014 License Agreement regarding their use of MCR's Tools and intellectual property.**

44.    Throughout various provisions of the 2014 License Agreement, Oag and SPEX Offshore made numerous agreements regarding SPEX Offshore's use of MCR's Tools and intellectual property, which MCR acted and relied on. These agreements include the following:

---

[24] *Id.* at § 2.05.

[25] *Id.*

[26] *Id.*

[27] *See., e.g.*, Exhibit A at §§ 2.01, 2.02, 2.03, 2.05.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 14

b.• Oag and SPEX Offshore agreed not to engage or assist in any testing, modifying, reverse engineering, or development of any ~~MCR Tool;~~of MCR's Tools or intellectual property, either directly or by cooperation with a third party;[28]

• ~~SPEX agreed that it would not~~Oag and SPEX Offshore agreed to use MCR's Tools and Licensed Technology, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools, only in strict accordance with the terms of the agreement;[29]

• Oag and SPEX Offshore agreed that all rights, title and interest to any Improvements to MCR's Tools or intellectual property, including any and all patents and trade secrets, shall be exclusively owned by MCR;[30]

• Oag and SPEX Offshore agreed to assign and convey to MCR its entire right, title and interest to all Improvements, if any, including all applicable intellectual property rights related to any such Improvements;[31]

c.• Oag and SPEX Offshore agreed not to cooperate with, or seek to benefit from, any third party's infringement of MCR's rights in connection with its Licensed Technology~~,~~, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools;[32]

---

[28] Exhibit B at § 3.03.

[29] *Id.*

[30] *Id.* at § 3.04. Within this provision, SPEX Offshore also agreed to provide MCR with prompt notice of the development of any Improvement and all information necessary to practice any such Improvement.

[31] *Id.*

[32] *Id.* at § 3.05.

**Formatted:** Indent: Left: 0", First line: 0.5", Bulleted + Level: 1 + Aligned at: 0.25" + Indent at: 0.5"

**Formatted:** Indent: Left: 0", First line: 0.5", Bulleted + Level: 1 + Aligned at: 0.25" + Indent at: 0.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Tab stops: 6", Right + Not at 6.5"

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

- ~~SPEX~~Oag and SPEX Offshore agreed to promptly notify MCR of any third-party infringement or threatened infringement of MCR's Licensed Patents or Licensed Technology;[33]

- Oag and SPEX Offshore agreed to protect MCR's Confidential Information, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools, and to use it only for purposes of the agreement;[34]

d.• Oag and SPEX Offshore agreed, upon expiration of the ~~MCR~~2014 License Agreement, to cease all activities concerning and all use of ~~the~~MCR's Licensed Technology, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools, and to return the Licensed Technology to MCR;[35] and

- ~~SPEX agreed to~~ Oag and SPEX Offshore agreed that all material terms related to the licensing, use, and confidentiality of MCR's Tools and intellectual property and the enforcement of MCR's rights under the 2014 License Agreement survived termination of the agreement.[36]

45.   In the 2011 License Agreement, SPEX Services made similar agreements regarding its use of MCR's Tools and intellectual property, which MCR acted and relied on.[37]

**G.   Through Directors and affiliates, the SPEX Defendants file numerous international patent applications derived from MCR's Tools and intellectual property.**

---

[33] *Id.* at § 5.01.

[34] *Id.* at § 6.01.

[35] *Id.* at § 7.05.

[36] *Id.* at § 7.06.

[37] Exhibit A at §§ 3.01, 3.03, 3.04, 7.01, 8.01, 9.04.

46.     Just prior to and soon after Oag and SPEX Offshore signed the 2014 License Agreement, SPEX Services and its Directors and affiliates (including Oag) began filing patent applications, without notice to MCR, in an attempt to rebrand MCR's intellectual property as their own.[38]

47.     After filing these applications, the SPEX Defendants created shell companies, assigned the applications to the newly-created shell companies, and then used the shell companies to file additional patent applications derived from MCR's Tools and intellectual property. The SPEX Defendants also began appointing and terminating officers and directors in an ongoing game of musical chairs. The SPEX Defendants took these measures, among others, in an effort to avoid liability for their contractual breaches and to hide their wrongful conduct from MCR.

**Oag and Younger file priority applications derived from MCR's Tools and intellectual property.**

48.     On March 21, 2014, SPEX Services terminated Younger's appointment as Director.

49.     On September 22, 2014, Oag, Chief Executive Officer of SPEX Offshore and signatory to the 2014 License Agreement, filed UK Patent Application No. GB1416720.9 for an "Improved Plug" ("SPEX 1"). SPEX 1 was abandoned prior to publication and grant. However, it served as a priority document for PCT/GB2015/052738 ("SPEX PCT 1"), filed by Oag and Younger as co-inventors pursuant to the Patent Cooperation Treaty ("PCT"), which provides protection in all member countries for a period of time. After the initial protection period expires, applicants may pursue patent protection in a number of individual countries.

---

[38] As discovery has only begun, MCR continues to discover patent applications that were filed by the SPEX Defendants in violation of the 2011 and 2014 License Agreements and 2015 Extension, as part of their scheme to misappropriate MCR's trade secrets and confidential and proprietary information.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF      REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 17

50.     On November 18, 2014, Oag filed UK Patent Application No. GB1420491.1 for a "Downhole Tool with a Propellant Charge" ("SPEX 2"). SPEX 2 was abandoned prior to publication and grant. However, it served as a priority document for PCT/GB2015/053507 ("SPEX PCT 2"), filed by Oag, Younger and Johnston as co-inventors.

**After the filing of the priority applications, SPEX Engineering UK is formed.**

51.     On February 26, 2015, SPEX Engineering UK was incorporated.[39] SPEX Engineering UK is the parent company of SPEX Group.

52.     On May 5, 2015, SPEX Engineering UK appointed Oag, Mahjoub and Strachan as Directors.

**Oag, Younger and SPEX Engineering UK file additional priority applications derived from MCR's Tools and intellectual property.**

53.     On March 3, 2015, Oag filed UK Patent Application No. GB1503608.0 for "A Tool for Severing Or Assisting In The Severing Of A Conduit" ("SPEX 3"). SPEX 3 was abandoned prior to publication and grant. However, it served as a priority document for PCT/GB2016/050562 ("SPEX PCT 3"), filed by Oag and Younger as co-inventors.

54.     On April 13, 2015, Younger filed UK Patent Application No. GB1506265.6 for an "Improved Tool" ("SPEX 4"). SPEX 4 was abandoned prior to grant. However, it served as a priority document for PCT/GB2016/051032 ("SPEX PCT 4"), also filed by Younger.

55.     On November 18, 2015, Oag, Younger and Johnston filed UK Patent Application No. GB2532609 for a "Downhole Tool" ("SPEX 4A"). That same day, SPEX Engineering UK

---

[39] SPEX Engineering UK was known as SLLP 121 Ltd. until its name change on May 18, 2015.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 18

**Formatted:** Tab stops: 6", Right + Not at 6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

filed UK Patent Application No. GB2544616 for a "Downhole Tool" ("SPEX 4B"). Oag, Younger and Johnston are named as co-inventors on both SPEX 4A and SPEX 4B.[40]

**Oag and Younger assign patent applications to SPEX Services.**

56.     After filing the UK application for SPEX 1, but prior to September 22, 2015 (the date on which it expired), Oag and Younger assigned SPEX 1 to SPEX Services.

57.     In the same manner, on or prior to November 25, 2015, Oag, Younger and Johnston assigned SPEX 2, 3, 4 and 4A to SPEX Services.

**Oag, SPEX Services and SPEX Engineering UK file additional patent applications derived from MCR's Tools and intellectual property.**

58.     On September 22, 2015 (the same day Oag and Younger assigned SPEX 1 to SPEX Services), SPEX Services filed SPEX PCT 1 for an "Improved Plug."

59.     On November 18, 2015, SPEX Services filed SPEX PCT 2 for a "Downhole Tool With Propellant Charge."

60.     On March 3, 2016, SPEX Engineering UK filed SPEX PCT 3 for "A Tool for Severing Or Assisting In the Severing Of A Conduit." That same day, Oag and Younger filed related UK Patent Application No. GB2538346 ("SPEX 3A") for an "Improved Tool."

61.     On April 13, 2016, SPEX Engineering UK filed SPEX PCT 4 for an "Improved Tool." That same day, Younger filed UK Patent Application No. GB2537749 for "Improved Tool" ("SPEX 4C").

**SPEX Services assigns patent applications to SPEX Engineering UK.**

---

[40] Both SPEX 4A and SPEX 4B disclose subject matter related to SPEX PCT 4.

62.     On November 25, 2015, SPEX Services assigned SPEX 2, SPEX PCT 2, SPEX 3, SPEX 4 and SPEX 4A to SPEX Engineering UK. Mahjoub, who serves as Director of assignee SPEX Engineering UK, signed on behalf of assignor SPEX Services.

63.     On March 8, 2016, SPEX Services assigned SPEX PCT 1 to SPEX Engineering UK. Strachan, who serves as Manager of SPEX Group and Director of SPEX Engineering UK and SPEX Offshore, signed on behalf of assignor SPEX Services.

64.     Soon after the filing of SPEX 4C on April 13, 2016, Younger assigned SPEX 4C to SPEX Engineering UK.

**The first wave of SPEX patent applications are published.**

65.     On March 31, 2016, SPEX PCT 1 was published.[41]

66.     On May 26, 2016, SPEX PCT 2 was published.

67.     In May 2016, SPEX 4A and 4B were published.

68.     On September 9, 2016, SPEX PCT 3 was published.

69.     On October 20, 2016, SPEX PCT 4 was published.

70.     On October 26, 2016, SPEX 4C was published.

71.     On November 16, 2016, SPEX 3A was published.

**H.     In the midst of filing patent applications derived from MCR's Tools and intellectual property, the SPEX Defendants take active measures to conceal and avoid liability for their wrongful conduct.**

---

[41] In successive motions to dismiss, the SPEX Defendants allege that MCR's claims are barred by the applicable statute of limitations. *See, e.g.*, Doc. 20, 31. PCT applications are published as soon as possible after the expiration of 18 months from the earliest filing date. SPEX PCT 1—the earliest patent application derived from MCR's Tools and intellectual property—was not published until March 31, 2016. As a result, the SPEX Defendants' wrongful acts were inherently undiscoverable prior to March 31, 2016, and all of MCR's claims are therefore timely. *WesternGeco v. Ion Geophysical Corp.*, 2009 WL 3497123, at *5 (S.D. Tex. Oct. 28, 2009). Moreover, and as set forth in detail herein, MCR affirmatively pleads application of the discovery rule and fraudulent concealment, both of which toll limitations.

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

72.     As the first wave of SPEX patent applications were being published, the SPEX Defendants began a new cycle of forming shell holding companies, filing patent applications derived from MCR's Tools and intellectual property, assigning applications between and among affiliates, and appointing and terminating Directors. In an effort to further conceal their conduct, the SPEX Defendants also began changing corporate names, diverting assets between and among affiliates, causing entities to be undercapitalized, and dissolving contractually-liable entities.

**SPEX Holdings is formed.**

73.     On March 1, 2016, SPEX Holdings was incorporated. SPEX Holdings appointed Oag, Strachan and Mahjoub as Directors.

74.     On or about April 25, 2016, SPEX Holdings became the parent company of SPEX Engineering UK "following a share for share transfer" with SPEX Services.

75.     On July 5, 2016, SPEX Holdings changed its registered address to Blackwood House—the same address as SPEX Offshore.

**SPEX Offshore and SPEX Services divert assets, change names and terminate Directors.**

76.     On April 25, 2016, SPEX Services purposely caused itself to be undercapitalized through a payment of dividends to its affiliates, an asset transfer to SPEX Holdings, and a reduction of its share premium account to zero.

77.     On June 16, 2016, SPEX Offshore terminated Oag as Director.

78.     On June 30, 2016, SPEX Services terminated Oag and Mahjoub as Directors.

79.     On August 1, 2016, SPEX Offshore purposely caused itself to be undercapitalized by transferring its assets to SPEX Offshore UK. SPEX Offshore also transferred its employment contracts to SPEX Offshore UK. Prior to the transfer, SPEX Offshore UK had no personnel.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF    REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 21

Formatted: Tab stops: 6", Right + Not at 6.5"
Formatted: Font: 11 pt, Not Bold, Small caps
Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

80. On August 19, 2016, SPEX Services changed its name to General Services 2, Ltd. ("General Services 2"). That same day, SPEX Offshore changed its name to General Services 1, Ltd. ("General Services 1"). Coincidentally, the only two SPEX Defendants to change their names away from the "SPEX brand"—SPEX Services and SPEX Offshore—are signatories to the 2011 and 2014 License Agreements and 2015 Extension.

81. On October 27, 2016, after changing its name to General Services 2, SPEX Services passed a resolution to voluntarily wind itself up and appoint liquidators for that purpose. Strachan signed the resolution on behalf of SPEX Services.

82. On December 2, 2016, both SPEX Services and SPEX Offshore terminated Strachan as Director.

**SPEX Corporate Holdings is formed.**

83. On December 21, 2016, SPEX Corporate Holdings was incorporated. Its Directors are Oag, Mahjoub, and Strachan, and its registered address is Blackwood House—the same address as SPEX Offshore and SPEX Holdings. SPEX Holdings is the parent of SPEX Corporate Holdings, SPEX Offshore UK, SPEX Engineering UK and SPEX Engineering, Ltd.

**In various countries around the world, SPEX Services and SPEX Engineering UK file patent applications derived from MCR's Tools and intellectual property.**

84. At the conclusion of the PCT application procedure, SPEX PCT 1 entered the "national phase," in which applicants may pursue patent protection directly in specific countries.

85. In March and April of 2017, SPEX Services filed national phase applications, claiming priority from SPEX PCT 1, in Canada, Europe, Australia and the United States.

86. In May and June of 2017, SPEX Services filed national phase applications, claiming priority from SPEX PCT 2, in Canada, Australia, the United States and Europe.

Formatted: Tab stops: 6", Right + Not at 6.5"
Formatted: Font: 11 pt, Not Bold, Small caps
Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

87.     In August and September of 2017, SPEX Engineering UK filed national phase applications, claiming priority from SPEX PCT 3, in Canada, Australia, the United States, and Europe (including the United Kingdom).

88.     In October 2017, SPEX Engineering UK filed national phase applications, claiming priority from SPEX PCT 4, in Australia, Canada, the United States and Europe.

**SPEX Engineering UK files additional patent applications derived from MCR's Tools and intellectual property.**

89.     On January 19, 2017, SPEX Engineering UK filed International PCT Application No. PCT/GB2017/050129 for a "Tool With Propellant Sections" ("SPEX PCT 5") and UK Patent Application No. GB2546630 for an "Improved Tool" ("SPEX 5A").

90.     On May 18, 2017, SPEX Engineering UK filed International PCT Application No. PCT/GB2017/051390 for a "Tool For Severing A Downhole Tubular By A Stream Of Combustion Products" ("SPEX PCT 6") and UK Patent Application No. GB2550691 for an "Improved Tool" ("SPEX 7").

**The SPEX Defendants take further active measures to conceal their wrongful conduct, even after MCR filed its State Court Petition.**

91.     With the new patent applications on file and sham holding companies in place (SPEX Holdings and SPEX Corporate Holdings), the SPEX Defendants no longer had any use for contractual signatory SPEX Offshore, which had already changed its name away from the "SPEX" brand. Thus, on September 30, 2017, the SPEX Defendants dissolved General Services 1 (formerly SPEX Offshore) without notice to MCR.

c.92.     On October 31, 2017, SPEX Engineering UK assigned numerous SPEX patents and patent applications to the newly-formed SPEX Corporate Holdings. The assignment included but was not limited to transfer of all rights, title, and interest in any SPEX-created improvements or

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF        REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 23

modifications to the Licensed Technology to MCR to: (1) SPEX PCT 1, including the national phase applications filed in Australia, Canada, Europe and the United States; (2) SPEX PCT 2, including the national phase applications filed in Australia, Canada, Europe and the United States; (3) SPEX PCT 4, including the national phase applications filed in Australia, Canada, Europe and the United States; and (4) SPEX 4A, SPEX 4B, SPEX 4C, SPEX PCT 5, SPEX 5A, SPEX PCT 6, and SPEX 7. Strachan signed as SPEX Engineering UK's Director, Oag signed as SPEX Corporate Holdings' Director, and Mahjoub served as witness.

4.      MCR recently discovered that SPEX has breached numerous provisions of the 2014 License Agreement and the 2015 Extension, and that it has misappropriated MCR's trade secrets and MCR Licensed Technology and used MCR's stolen technology to obtain numerous patents in SPEX's own name.

5.      MCR requests that the Court protect MCR by enjoining:

i.   any further breaches of the 2014 License Agreement and the 2015 Extension; and

ii.  any further theft of its valuable intellectual property, trade secrets and confidential and proprietary information.

### PARTIES

93.      Plaintiff MCR Oil Tools, LLC ("MCR" or "Plaintiff") is a Texas limited liability company having its principal place of business at 7327 Business Place, Arlington, Texas 76001, USAOn October 31, 2017, contemporaneous with the assignment to SPEX Corporate Holdings, SPEX Engineering UK changed its registered address to Blackwood House—the same address as SPEX Offshore, SPEX Holdings and SPEX Corporate Holdings.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 24

**Formatted:** Tab stops: 6", Right + Not at 6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

94.     On December 27, 2017, MCR filed its original state court petition in this matter against SPEX Offshore, SPEX Offshore UK, SPEX Group, and SPEX Engineering UK. Because MCR was unaware of the full nature and extent of the SPEX Defendants' wrongful conduct, it did not name SPEX Services as a defendant at that time.

95.     Just nine days later, on January 5, 2018, the SPEX Defendants dissolved SPEX Services, which had changed its name to General Services 2, without notice to MCR.[42]

**I.     The SPEX Patents are derived from MCR's Tools and intellectual property.**

96.     The SPEX patents and patent applications ("SPEX Patents") are derived from MCR's Confidential Information, Licensed Patents, Licensed Products, and Licensed Technology, as those terms are defined in the 2011 and 2014 License Agreements.[43] In addition, the SPEX Patents relate to MCR's radial cutting torches, solid combustible charge-based tools, thermite-based tools and technology, or constitute substantially similar technology.

97.     To the extent that any of the inventions or alleged inventions disclosed in the SPEX Patents are deemed patentable, they are Improvements, as that term is defined in the 2011 and 2014 License Agreements.[44] Pursuant to the terms of the 2011 and 2014 License Agreements and 2015 Extension, any such Improvements belong exclusively to MCR.[45]

98.     SPEX PCT 1 includes, among other things, embodiments of a consumable plug (tool) that is consumed or partially disintegrated by a deflagration reaction using solid combustible

---

[42] Counsel for SPEX Offshore UK, SPEX Group and SPEX Engineering UK have refused to accept service on behalf of SPEX Offshore and SPEX Services. However, SPEX Offshore UK and SPEX Engineering UK have moved to dismiss MCR's claims against SPEX Offshore and SPEX Services alleging lack of capacity. [Doc. 81].

[43] Exhibit A at §§ 1.02, 1.03, 1.04, 1.06, 1.09, 1.10; Exhibit B at §§ 1.01, 1.04, 1.05 1.06, 1.09.

[44] Exhibit A at § 1.09; Exhibit B at § 1.02.

[45] Exhibit A at §§ 1.09, 3.04; Exhibit B at §§ 1.02, 3.04; Exhibit C.

**Formatted:** Tab stops:  6", Right + Not at  6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

charge-based tools, thermite-based technology or substantially similar technology. The embodiments include a plug or tool body comprising a propellant and an initiator adapted to initiate the propellant causing deflagration, in which the plug or tool body partially disintegrates.

99.   SPEX PCT 1 discloses that the propellant is comprised of an oxidizer and metallic segments that are keyed together by the propellant, or a mix of materials, which may include an oxidizer with metals, glass, or gravel. This technology is taught and disclosed by, and directly related to, MCR's Licensed Patents, and substantially similar to MCR's Licensed Technology.

100.   SPEX PCT 2 includes, among other things, embodiments of propellant combinations that undergo deflagration reactions to create a stream of combustion products that are directed and flow through nozzles (outlets) for manipulating (*e.g.*, cutting) a tubular or segment of casing. SPEX PCT 2 includes nozzle patterns and configurations for directing the flow of the stream of the combustion products to cut or perforate downhole tubulars or other equipment. This technology is the same as or substantially similar to MCR's Licensed Technology, including MCR's nozzle patterns and configurations, and flow paths shown and described in MCR's Licensed Patents and contained within MCR's Licensed Technology.

101.   SPEX PCT 3 and SPEX 3A include, among other things, embodiments of a tool comprising at least one propellant, an ignition mechanism for igniting the propellant, and at least one modifying material, wherein ignition of the propellant causes deflagration and the release of a stream of combustion products that flow through channels and outlets (nozzles) to cut or sever a conduit. The propellant comprises a metal oxidizer and a modifying material in the form of a metal, which, upon deflagration, forms a molten plasma for cutting or severing the target (*e.g.*, conduit). This technology is taught and disclosed by, and directly related to, MCR's Licensed Patents, and substantially similar to MCR's Licensed Technology.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 26

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

102.    SPEX PCT 4 includes, among other things, embodiments of a tool for removing material from a target, wherein the tool comprises a propellant that is ignited to form combustion products that are directed along at least one tool flow path.  The tool flow path(s) can be selectively opened or closed, such that upon exiting the tool flow path(s), the combustion products interact with a target causing the material to be removed.

103.    SPEX PCT 4 also includes figures showing the nozzle configurations and patterns for directing the combustion products along the tool flow path(s), which are the same as MCR's nozzle patterns and configurations for directing a stream of combustion products (*e.g.*, MCR's thermite combustion products) along MCR's cutter tool's flow paths and out toward the targeted conduit. This technology is shown and described in MCR's Licensed Patents and contained within MCR's Licensed Technology.

104.    SPEX PCT 4 further discusses a solid propellant that can comprise layers for different burn rates, and the direction of the combustion products that can be varied or deflected with respect to the tool. This technology is shown and described in MCR's Licensed Patents and contained within MCR's Licensed Technology.

105.    Below is a comparison of SPEX PCT 4 and MCR's related patent. This is just one example clearly demonstrating that the SPEX Patents were derived from MCR's Tools and intellectual property, in violation of the 2011 and 2014 License Agreements and 2015 Extension.

106.    SPEX 4A, 4B and 4C include, among other things, nozzle patterns and configurations for directing a flow of a stream of combustion products to cut or perforate downhole tubulars or other equipment. This technology, including the nozzle patterns, configurations and flow paths, is the same as or substantially similar to MCR's Licensed Technology, including

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 27

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

MCR's nozzle patterns and configurations and flow paths shown and described in MCR's Licensed Patents and contained within MCR's Licensed Technology.

107.    SPEX PCT 5 includes, among other things, embodiments of a tool for manipulating a tubular (cutting or removing sections) that includes a propellant, an ignition mechanism and at least one modifying agent (a metal). Upon ignition, the propellant, comprising the modifying agent, is adapted to deflagrate, creating a stream of combustion products that are directed to flow away from the outer surface of the propellant source and through nozzles to impact the tubular. This technology is taught and disclosed by, and directly related to, MCR's Licensed Patents, and substantially similar to MCR's Licensed Technology.

108.    SPEX 5A includes, among other things, embodiments relating to a propellant and modifying agent, wherein an "ignition mechanism causes the propellant to deflagrate rather than explode, producing a high pressure stream of products." The propellant may be provided in a single state and as a solid, and the modifying agent can be a metal. The high-pressure stream of products flow through nozzles to impact the targeted tubular. This technology is taught and disclosed by, and directly related to, MCR's Licensed Patents, and substantially similar to MCR's Licensed Technology.

109.    SPEX PCT 6 includes, among other things, embodiments of a tool that includes an ignition mechanism for igniting a propellant, and a propellant comprised of a metal oxidizer and particles of a metal modifying agent.  When ignited, the propellant is operable to deflagrate, creating a stream of combustion products that are directed through various outlets (nozzles) and towards a tubular to be manipulated. This technology is taught and disclosed by, and directly related to, MCR's Licensed Patents, and substantially similar to MCR's Licensed Technology.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 28

**Formatted:** Tab stops:  6", Right + Not at  6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

110.   SPEX 7 includes, among other things, embodiments of a tool that includes a propellant comprised of a metal oxidizer and particles of a metal modifying agent. When ignited, the propellant is operable to deflagrate, creating a stream of combustion products that are directed through various outlets (nozzles) and towards a tubular to be manipulated. Control of the propellant may be achieved by controlling the constitution of the propellant or changing it into a molten plasma, which may include the introduction of oxygen. This technology is taught and disclosed by, and directly related to, MCR's Licensed Patents, and substantially similar to MCR's Licensed Technology.

**J.     SPEX Services made false representations and breached numerous provisions of the 2011 License Agreement.**

111.   SPEX Services breached the 2011 License Agreement by falsely representing that it was not in the business of designing or developing thermite-based products, technology substantially similar to MCR's Licensed Products or Licensed Technology, or any competing technology, and that it had no intention of entering into any such business.[46] Based on the following, it is clear that SPEX Services was either actively engaged in such business or had an intention of entering into such business at the time it entered into the 2011 License Agreement:

- The filing of the SPEX Patents by SPEX Services, both directly and by and through its Directors;

- The content of the SPEX Patents, which are derived from MCR's Tools and intellectual property;

---

[46] Exhibit A at §§ 2.03, 2.05.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF          REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 29

**Formatted:** Tab stops:  6", Right + Not at  6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

- The assignment of the SPEX Patents from SPEX Services' Directors to SPEX Services, and from SPEX Services to SPEX Engineering UK; and

- The subsequent development of competing tools and products.[47]

112.    SPEX Services made this representation knowing it to be false and with the intention that MCR act and rely on it. In addition, SPEX Services made this false representation for the consideration bargained for in the 2011 License Agreement, including but not limited to access to and license to use MCR's valuable Tools and intellectual property in accordance with the terms of the agreement.

113.    SPEX Services breached the 2011 License Agreement by engaging and assisting in the testing, modifying, reverse engineering, and development of MCR's Tools and intellectual property, both directly and by cooperation with a third party.[48] Specifically, SPEX Services (both directly and by and through its Directors) tested, modified, reverse engineered, and developed MCR's Tools to develop competing tools and products and for use in the SPEX Patents, which were later assigned to SPEX Services. In addition, SPEX Services assisted and cooperated with SPEX Engineering UK and its Directors in testing, modifying, reverse engineering, and developing MCR's Tools and intellectual property by, among other things, assigning the SPEX Patents to SPEX Engineering UK.

114.    Moreover, because SPEX Services and the other SPEX Defendants share common officers and Directors, the knowledge obtained by SPEX Services' Directors (including Oag) through the testing, modifying, reverse engineering, and development of MCR's Tools and

---

[47] According to documents produced by the SPEX Defendants, they are continuing to develop competing tools and products. However, these documents have been designated Attorney's Eyes Only.

[48] Exhibit A at § 3.03.

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

intellectual property on behalf of SPEX Services, was imparted on the other SPEX Defendants and their Directors. These acts further establish cooperation with a third party in violation of the 2011 License Agreement.

115.    SPEX Services breached its agreement to use MCR's Tools and Licensed Technology only in strict accordance with the terms of the 2011 License Agreement.[49] In fact, SPEX Services used MCR's Licensed Technology, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools, to: (1) develop and design competing tools and products; (2) test, modify, reverse engineer, improve upon and develop MCR's Tools and intellectual property; (3) file the SPEX Patents through its Directors and affiliates in an attempt to rebrand MCR's technology as its own; and (4) cooperate with third parties in performing these wrongful acts.

116.    SPEX Services breached its agreement to provide MCR with prompt notice of any development of, and all information necessary to, practice any Improvement to MCR's intellectual property.[50] Instead of complying with this provision, SPEX Services concealed the improvements and modifications it made to MCR's Tools and intellectual property along with the design and development of competing tools and products. SPEX Services concealed this information from MCR in order to allow its affiliates and Directors to use the information to develop competing tools and products and file the SPEX Patents, which were later assigned to SPEX Services.

117.    SPEX Services breached its agreement that all rights, title and interest to any Improvements to MCR's intellectual property, specifically including MCR's Licensed Patents and

---

[49] Id.

[50] Id. at § 3.04.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 31

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

Licensed Technology, shall be exclusively owned by MCR.[51] SPEX Services concealed the improvements and modifications it made to MCR's Tools and intellectual property along with the design and development of competing tools and products. In addition, SPEX Services (by and through its Directors) filed the SPEX Patents, seeking protection and ownership of the Improvements in direct violation of the 2011 License Agreement. SPEX Services' Directors then assigned the SPEX Patents to SPEX Services, instead of MCR. Subsequently, SPEX Services assigned the SPEX Patents to SPEX Engineering UK, instead of MCR. SPEX Services, its affiliates and Oag now claim that the SPEX Patents are not Improvements, as that term is defined in the 2011 and 2014 License Agreements. In addition, the SPEX Defendants claim ownership of the SPEX Patents and have refused to assign or convey them to MCR.

118.   SPEX Services breached its agreement to assign or convey to MCR its entire right, title and interest to all Improvements, including all applicable intellectual property rights related to any Improvements.[52] SPEX Services concealed the improvements and modifications it made to MCR's Tools and intellectual property along with the design and development of competing tools and products. In addition, SPEX Services (by and through its Directors) filed the SPEX Patents, seeking protection and ownership of the Improvements in direct violation of the 2011 License Agreement. SPEX Services' Directors then assigned the SPEX Patents to SPEX Services, instead of MCR. Subsequently, SPEX Services assigned the SPEX Patents to SPEX Engineering UK, instead of MCR. SPEX Services, its affiliates and Oag now claim that the SPEX Patents are not Improvements, as that term is defined in the 2011 and 2014 License Agreements. In addition, the

---

[51] *Id.*

[52] *Id.*

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF    REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 32

SPEX Defendants claim ownership of the SPEX Patents and have refused to assign or convey them to MCR.

119.    SPEX Services breached the 2011 License Agreement by failing to promptly notify MCR of any third-party infringement or threatened infringement of MCR's Licensed Patents or Licensed Technology.[53] Although SPEX Services was aware of (and complicit in): (1) the filing and assignment of the SPEX Patents; (2) the testing, modifying, reverse engineering, and development of MCR's Tools and intellectual property; (3) the development of competing tools and products; and (4) the theft of MCR's trade secrets, it failed to notify MCR of such infringement or threatened infringement. SPEX Services also failed to notify MCR of the third-party infringement or threatened infringement by SPEX Engineering UK and its Directors, including Oag.

120.    SPEX Services breached its agreement to protect MCR's Confidential Information, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools, and to use it only for purposes of the 2011 License Agreement.[54] SPEX Services disclosed MCR's Confidential Information to its Directors, who then used the information to test, modify, reverse engineer, and improve upon MCR's Tools and intellectual property for the design and development of competing tools and technology. SPEX Services' Directors also used MCR's Confidential Information in applying for the SPEX Patents. Finally, SPEX Services disclosed MCR's Confidential Information to SPEX Engineering UK and its Directors, including Oag, who then used the information to test, modify, reverse engineer, and improve upon MCR's

---

[53] *Id.* at § 5.01.

[54] *Id.* at § 8.01.

Tools and intellectual property for the design and development of competing tools and technology and for use in applying for the SPEX Patents.

**K.     SPEX Offshore and Oag made false representations and SPEX Offshore breached numerous provisions of the 2014 License Agreement and 2015 Extension.**

121.    SPEX Offshore breached the 2014 License Agreement and 2015 Extension by falsely representing that it had not invented, designed, developed, or improved (nor contributed to inventing, designing, developing or improving) any technology or products for the perforating, consuming or cutting of downhole pipes using any part of MCR's Licensed Technology, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools.[55] In fact, SPEX Offshore (by and through its Directors and affiliates) was in the process of developing competing tools and technology derived from MCR's Tools and intellectual property, which SPEX Services (and its common officers and Directors) had gained access to through the 2011 License Agreement. At the time SPEX Offshore entered into the 2014 License Agreement and 2015 Extension, SPEX Offshore and Oag knew that SPEX Offshore was in the process of developing competing tools and technology and contributed to the development of competing tools and technology by its Directors and affiliates, including but not limited to SPEX Engineering UK and Oag.

122.    SPEX Offshore further breached the 2014 License Agreement and 2015 Extension by falsely representing that it was not aware of any person or entity having invented, designed, developed or improved (nor contributed to inventing, designing, developing or improving) any technology or products for the perforating, consuming or cutting of downhole pipes using any part

---

[55] Exhibit B at §§ 2.03, 2.05.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF        REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 34

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

of MCR's Licensed Technology, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools.[56] At the very least, SPEX Offshore knew of the activities of SPEX Services and its officers and Directors, including their: (1) development of competing tools and products; and (2) testing, modifying, reverse engineering, and development of MCR's Tools and intellectual property and improvements to MCR's Tools and intellectual property.

123.    SPEX Offshore breached the 2014 License Agreement and 2015 Extension by falsely representing that it was not in the business of designing or developing thermite-based products or technology substantially similar to or competitive with MCR's Licensed Products and Licensed Technology, and that it had no intention of entering into any such business.[57] In fact, SPEX Offshore (by and through its Directors and affiliates) were in the process of developing competing tools and products derived from MCR's Tools and intellectual property, which SPEX Services and Oag had gained access to through the 2011 License Agreement. SPEX Offshore and Oag knew that SPEX Offshore was in the process of developing competing tools and products and contributed to the development of competing tools and products by its Directors and affiliates, including but not limited to SPEX Engineering UK and Oag. Alternatively, SPEX Offshore and Oag knew that SPEX Offshore intended to enter into the business of designing or developing thermite-based products or technology substantially similar to or competitive with MCR's Licensed Products and Licensed Technology.

124.    SPEX Offshore and Oag made these representations knowing them to be false and with the intention that MCR act and rely on them. SPEX Offshore and Oag made these false

---

[56] *Id.* at § 2.05.

[57] *Id.*

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPAGE PLAINTIFF'S

PAGE 35

Formatted: Tab stops: 6", Right + Not at 6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

representations for the consideration bargained for in the 2014 License Agreement and 2015 Extension, including but not limited to access and license to use MCR's valuable Tools and intellectual property in accordance with the terms of the agreement.

125.    SPEX Offshore breached the 2014 License Agreement and 2015 Extension by engaging and assisting in the testing, modifying, reverse engineering, and development of MCR's Tools and intellectual property, both directly and by cooperation with a third party.[58] More specifically, SPEX Offshore engaged or assisted its affiliates and Directors, including but not limited to Oag, SPEX Services, and SPEX Engineering UK, in the testing, modifying, reverse engineering, and development of MCR's Tools. Specifically, SPEX Offshore (by and through its Directors) tested, modified, reverse engineered, and developed MCR's Tools for use in the SPEX Patents. SPEX Offshore also assisted and cooperated with SPEX Engineering UK, and its Directors, in testing, modifying, reverse engineering, and improving MCR's Tools and intellectual property to develop competing tools and products and for use in the SPEX Patents.

126.    Moreover, because SPEX Offshore and the other SPEX Defendants share common officers and Directors, the knowledge obtained by SPEX Offshore's Directors through the testing, modifying, reverse engineering, and developing MCR's Tools and intellectual property on behalf of SPEX Offshore, was imparted on the other SPEX Defendants and their Directors. These acts further establish cooperation with a third party in violation of the 2014 License Agreement and 2015 Extension.

127.    SPEX Offshore breached its agreement to use MCR's Tools and Licensed Technology, which is defined to include MCR's trade secrets, thermite-based technology and solid

---

[58] *Id.* at § 3.03.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 36

**Formatted:** Tab stops:  6", Right + Not at  6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

combustible charge-based tools, only in strict accordance with the terms of the agreement.[59] In fact, SPEX Offshore and Oag used MCR's Licensed Technology, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools, to: (1) develop and design competing tools and products; (2) test, modify, reverse engineer, improve on and develop MCR's Tools and intellectual property; (3) file the SPEX Patents through its Directors and affiliates in an attempt to rebrand MCR's technology as its own; and (4) cooperate with third parties in performing these wrongful acts.

128.    SPEX Offshore breached its agreement to provide MCR with prompt notice of any development of, and all information necessary to, practice any Improvement to MCR's intellectual property.[60] Instead of complying with this provision, SPEX Offshore concealed the improvements and modifications it had made to MCR's Tools along with its design and development of competing tools and products. SPEX Offshore concealed this information from MCR in order to allow its affiliates and Directors to use the information to develop competing tools and products and to file the SPEX Patents.

129.    SPEX Offshore breached its agreement that all rights, title and interest to any Improvements to MCR's intellectual property, specifically including MCR's Licensed Patents and trade secrets, shall be exclusively owned by MCR.[61] SPEX Offshore concealed the improvements and modifications it made to MCR's Tools along with the development of competing tools and products. In addition, SPEX Offshore (by and through its affiliates and Directors) filed the SPEX Patents, seeking protection and ownership of the Improvements in direct violation of the 2014

---

[59] *Id.*

[60] *Id.* at § 3.04.

[61] *Id.*

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF          REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEF Page PLAINTIFF'S

PAGE 37

Formatted: Tab stops:  6", Right + Not at  6.5"
Formatted: Font: 11 pt, Not Bold, Small caps
Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

License Agreement. SPEX Offshore, its affiliates and Oag now claim that the SPEX Patents are not Improvements, as that term is defined in the 2011 and 2014 License Agreements. In addition, the SPEX Defendants claim ownership of the SPEX Patents and have refused to assign or convey them to MCR.

130.    SPEX Offshore breached its agreement to assign and convey to MCR its entire right, title and interest to all Improvements, if any, including all applicable intellectual property rights related to any Improvements.[62] SPEX Offshore, its affiliates and Oag now claim that the SPEX Patents are not Improvements, as that term is defined in the 2011 and 2014 License Agreements. In addition, the SPEX Defendants claim ownership of the SPEX Patents and have refused to assign or convey them to MCR.

131.    SPEX Offshore breached the 2014 License Agreement by failing to promptly notify MCR of any third-party infringement or threatened infringement of MCR's Licensed Patents or Licensed Technology.[63] Although SPEX Offshore was aware of (and complicit in): (1) the filing and assignment of the SPEX Patents; (2) the testing, modifying, reverse engineering, and development of MCR's Tools and intellectual property; (3) the development of competing tools and products; and (4) the theft of MCR's trade secrets, it failed to notify MCR of such infringement or threatened infringement. SPEX Offshore also failed to notify MCR of the third-party infringement or threatened infringement by SPEX Services, SPEX Engineering UK and their Directors, including Oag.

---

[62] *Id.*

[63] *Id.* at § 5.01.

**Formatted:** Tab stops:  6", Right + Not at  6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

132.    SPEX Offshore breached its agreement to protect MCR's Confidential Information, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools, and to use it only for purposes of the 2014 License Agreement.[64] SPEX Offshore disclosed MCR's trade secrets to its Directors and affiliates, including but not limited to SPEX Engineering UK, for use in filing the SPEX Patents and developing competing tools and products.

6.1.    SPEX Offshore breached the 2014 License Agreement by failing.

7.1.    Defendant SPEX Offshore, Ltd. is an entity organized under the laws of the United Kingdom who may be served through the Texas Secretary of State using the Texas Long-Arm Statute by mailing a copy of the process along with a copy of this Petition to SPEX Offshore, Ltd. at its home or home office address: Dunnottar House, Howe Moss Drive, Kirkhill Industrial Estate, Aberdeen, Scotland, AB21 OFN. SPEX Offshore, Ltd. does not maintain a regular place of business in Texas and does not have a designated agent for service of process. Therefore, the Texas Secretary of State is the agent for service on SPEX Offshore, Ltd., which has engaged in business in Texas under TEX. CIV. PRAC. & REM. CODE 17.044(b) and 17.042. This lawsuit arises from SPEX Offshore, Ltd.'s doing business in Texas by executing the 2014 License Agreement with MCR.

8.1.    Defendant SPEX Services, Ltd. is an entity organized under the laws of the United Kingdom who may be served through the Texas Secretary of State using the Texas Long-Arm Statute by mailing a copy of the process along with a copy of this Petition to SPEX Services, Ltd. at its home or home office address: Dunnottar House, Howe Moss Drive, Kirkhill Industrial Estate,

---

[64] *Id.* at § 6.01.

Aberdeen, Scotland, AB21 OFN. SPEX Services, Ltd. does not maintain a regular place of business in Texas and does not have a designated agent for service of process. Therefore, the Texas Secretary of State is the agent for service on SPEX Services, Ltd., which has engaged in business in Texas under TEX. CIV. PRAC. & REM. CODE 17.044(b) and 17.042. This lawsuit arises from SPEX Services, Ltd.'s doing business in Texas by executing the 2009 and 2011 License Agreements with MCR.

9.      Defendant SPEX Engineering (UK) Ltd. in an entity organized under the laws of the United Kingdon, and may be served by agreement through Craig Dillard and Steven Lockhart, Gardere Wynne Sewell, LLP, 2021 McKinney Avenue, Suite 1600, Dallas, Texas 75201.

10.     Defendant SPEX Offshore (UK) Ltd. is an entity organized under the laws of the United Kingdom, and may be served by agreement through Craig Dillard and Steven Lockhart, Gardere Wynne Sewell, LLP, 2021 McKinney Avenue, Suite 1600, Dallas, Texas 75201.

11.     Defendant SPEX Group US LLC is a Texas limited liability company who has appeared in this case.

### JURISDICTION AND VENUE

12.     Texas State Court has jurisdiction over SPEX Offshore, Ltd. and SPEX Services, Ltd., based upon, *inter alia*, their signing of the 2009, 2011, and 2014 License Agreements and the 2015 Extension. Texas State Court further has jurisdiction over SPEX Offshore, Ltd. and SPEX Services, Ltd. pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE §17.041 and 17.042. Based upon the factual allegations contained throughout this Petition, and the allegations contained in Counts One, Three, Four, Five, Six and Seven, SPEX Offshore, Ltd. and SPEX Services, Ltd. has entered into contracts in Texas and committed torts in Texas.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 40

13.     Texas State Court has jurisdiction over SPEX Group US LLC because it is a Texas limited liability company that conducts business in Texas with its principal office in Texas.

14.     Texas State Court has jurisdiction over SPEX Engineering (UK), Ltd. and SPEX Offshore (UK) Ltd. pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE §17.041 and 17.042. Based upon the factual allegations contained throughout this Petition and the allegations contained in Counts Three, Four, Five, Six, Seven, and Eight, SPEX Engineering (UK) Ltd. has committed torts in Texas.

15.     Texas State Court has subject matter jurisdiction because the matter in controversy exceeds the jurisdictional limits of the proper Texas State Court.

16.     Venue is proper in Dallas County, Texas pursuant to Chapter 171 of the Texas Civil Practice and Remedies Code. Section 171.096 states that "[i]f the arbitration agreement provides that the hearing before the arbitrators is to be held in a county in this state, a party must file the initial application with the clerk of the court of that county." In this case, the arbitration provision in the 2014 License Agreement provides that the place of arbitration shall be Dallas, Texas. Therefore, venue is proper in Dallas County, Texas.

17.     Although the 2014 License Agreement contains an arbitration provision, Section 9.06 of the 2014 License Agreement states that MCR may apply to "any court of competent jurisdiction to preserve its intellectual property and its rights under this Agreement and to obtain injunctive relief." This suit seeks injunctive relief, among other things.

DISCOVERY AND RULE 47 STATEMENT

18.     Discovery shall be conducted under Level 2 of Rule 190 of the Texas Rules of Civil Procedure.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF          REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 41

Formatted: Tab stops: 6", Right + Not at 6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

19.     Plaintiff seeks monetary relief over $1,000,000 and non-monetary relief. Plaintiff further seeks all other relief to which it is entitled.

20.     **NOTICE OF USE OF PRODUCED DOCUMENTS.**  Pursuant to Texas Rule of Civil Procedure 193.7, Defendants are hereby notified that any and all documents and tangible things produced or delivered to the parties in this matter will be used by Plaintiff in all pre-trial, trial, and post-trial matters regarding this litigation.

**FACTUAL SUMMARY**

21.     In 2014, MCR licensed the use of its Licensed Technology (more specifically its thermite tools, thermite-based technology, and solid combustible charge-based tools) to SPEX Offshore Ltd. through the 2014 License Agreement, and the 2015 Extension, for use in the oilfield industry.[65]  At that time, SPEX affirmatively represented that it owned no patents, trade secrets, or intellectual property related to thermite tools, thermite-based technology or solid combustible charge-based tools.  As set forth above, SPEX Services, Ltd., made similar representations when it entered into License Agreements with MCR in 2009 and 2011.

SPEX CONTRACTUAL REPRESENTATIONS

22.     Pursuant to the 2009, 2011, and 2014 License Agreements, SPEX Offshore Ltd. and SPEX Services, Ltd., made numerous promises and representations related to MCR's Licensed Technology. SPEX breached the following contractual representations from the 2014 License Agreement:

---

[65] Exhibits 1 and 3.

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

a. ~~SPEX Offshore Ltd. agreed to keep the Licensed Technology confidential and to use it only in strict accordance with the terms of the agreement;[66]~~

b. ~~SPEX Offshore Ltd. acknowledged that it had not invented, designed, developed, or improved any technology or products related to MCR's Licensed Technology;[67]~~

c. ~~SPEX Offshore Ltd. also represented that it knew of no entity which was developing or improving MCR's tools or technology;[68]~~

d. ~~SPEX agreed that MCR owned all rights, title and interest in any SPEX created improvements or modifications to MCR's Licensed Technology;[69] and~~

133. ~~e.    SPEX agreed~~ to cease all activities concerning and all use of ~~the Licensed Technology~~MCR's Licensed Technology, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools, upon expiration of the agreement, and to return the Licensed Technology to MCR~~, upon termination of the agreement.[70]~~ .[71] SPEX Offshore (by and through its Directors and affiliates, including Oag) continues to use MCR's Licensed Technology to develop competing tools and products and in prosecuting the SPEX Patents.

~~23.    As set forth above, SPEX Services, Ltd., made similar promises and representations when it entered into License Agreements with MCR in 2009 and 2011~~

---

~~[66] Exhibit 1 at §3.03.~~
~~[67] Exhibit 1 at §2.03.~~
~~[68] Exhibit 1 at §2.05.~~
~~[69] Exhibit 1 at §3.04.~~
~~[70] Exhibit 1 at §7.05.~~
[71] *Id.* at § 7.05.

24.   In addition to the representations listed above, SPEX agreed to assign to MCR all SPEX created rights, title and interest in any improvements or modifications to MCR's Licensed Technology. [72] This provision is to serve as the final safeguard of MCR's intellectual property.

SPEX FILES PATENTS IN BREACH OF CONTRACT

25.   Almost immediately after entering into the 2014 License Agreement, SPEX began committing numerous material breaches of the agreement, without notice to MCR. Most notably, SPEX used MCR's Confidential Information, [73] trade secrets, Licensed Patents, Licensed Technology and Licensed Products in numerous patent applications filed by SPEX in its own name and for its own benefit ("SPEX Patents").

26.   Numerous of these patents were filed in the name of SPEX Services, Ltd. SPEX's CEO Jamie Oag (the signatory to the 2014 License Agreement) named himself as co-inventor on the SPEX Patents. [74] SPEX filed the patents overseas, presumably to avoid detection by MCR. [75] The SPEX Patents include, but are not limited to, the following: [76]

- UK Patent No. GB1506265.6: *Improved Tool:* Filed April 13, 2015 and terminated prior to grant, with related UK Patents, including:
    - UK Patent No. GB2532609: Granted
    - UK Patent No. GB2544616: Granted – Divisional of GB2532609

---

[72] Exhibit 1 at §3.04.

[73] MCR's Confidential Information is defined in Section 1.01 of the 2014 License Agreement. Pursuant to Section 1.06, MCR's Licensed Technology includes its Confidential Information.

[74] *See, e.g.,* Exhibit 2.

[75] *See, e.g.,* Exhibit 2. SPEX used vague language in the SPEX Patents in an effort to conceal its theft of MCR's trade secrets and replication of MCR's technology. For instance, SPEX referred to "the tool body comprising a propellant" instead of MCR's language for its thermite-based tool, "a torch body comprising a fuel load."

[76] Exhibit 2; Exhibit A at ¶ 6. MCR continues to discover SPEX patents that were filed in breach of the 2014 License Agreement and 2015 Extension. MCR intends to amend its petition to include additional breaches as they are discovered.

Formatted: Tab stops: 6", Right + Not at 6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

- o UK Patent No. GB2537749: Granted

- PCT Application No. PCT/GB2016/051032: *Improved Tool,* filed April 13, 2016, with national phase entry (30 month due October 13, 2017) into the following countries:

  - o Australia: Australian Patent No. 2016247742: Pending

  - o Canada: Canadian Patent No. 2982254: Pending

  - o Europe: European Patent No. 16724446.6: Pending

- UK Patent No. GB 1420491.1: *Downhole Tool With Propellant Charge:* Filed November 18, 2014 and terminated prior to grant.

- PCT Application No. PCT/GB2015/053507: *Downhole Tool With A Propellant Charge:* Filed November 18, 2015, with national phase entry (30 month due May 18, 2017) into the following countries:

  - o Australia: Australian Patent No. 2015348102: Pending

  - o Australia: Australian Patent No. 2016100791: Granted (Divisional)

  - o Canada: Canadian Patent No. 2967742: Pending

  - o Europe: European Patent No. 3221550: Pending

- UK Patent No. GB 1503608.0: *A Tool For Severing Or Assisting In The Severing Of A Conduit:* Filed March 3, 2015 and terminated before grant with related UK Patents, including:

  - o UK Patent No. GB2538346: Granted

- PCT Application No. PCT/GB2016/050562: *A Tool For Severing Or Assisting In The Severing Of A Conduit:* Filed March 3, 2016, with national phase entry (30 month due September 3, 2017) into the following countries:

  - o Australia: Australian Patent No. 2016227492: Pending

  - o Canada: Canadian Patent No. 2978388: Pending

  - o Europe: European Patent No. 16715036.6: Pending

  - o United Kingdom: UK No. 1714728.1: Pending

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 45

**Formatted:** Tab stops: 6", Right + Not at 6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

- UK Patent No. GB 1416720.9: *Improved Plug*: Filed September 22, 2014 and terminated before grant.

- PCT Application No. PCT/GB2015/052738: *Improved Plug*: Filed September 22, 2015, with national phase entry (30 month due March 22, 2017) into the following countries:

  - Australia: Australian Patent No. 2015323575: Pending

  - Canada: Canadian Patent No. 2961996: Pending

  - Europe: European Patent No. 3198111: Pending

- UK Patent No. GB2550691: Granted

- PCT Application No. PCT/GB2017/051390: "Tool for Severing A Downhole Tubular By A Stream Of Combustion Products," with national phase due by November 18, 2018.

- UK Patent No. GB2546630: Granted

- PCT Application No. PCT/GB2017/050129: "Tool With Propellant Sections," with national phase due by July 19, 2018.

27.     The SPEX Patents were assigned and are currently held by Defendant SPEX Engineering (UK) Ltd.[77]  SPEX Offshore Ltd. has interlocking directors with SPEX Engineering (UK) Ltd.  There can be no doubt that the 2014 License Agreement signatory, SPEX Offshore, Ltd., knew of the patent activity of SPEX Engineering (UK) Ltd.  This establishes the conspiracy and is a breach of, *inter alia*, §2.05 of the 2014 License Agreement.

28.     The SPEX Patents are derived from MCR's trade secrets embodied in MCR's Confidential Information, Licensed Patents and Licensed Technology, as those terms are defined in Sections 1.01, 1.04 and 1.06 of the 2014 License Agreement.[78]  Specifically, the SPEX Patents

---

[77] Exhibit 2.

[78] Exhibit A at ¶ 9 and as defined in prior License Agreements.

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

llyally

relate to MCR's radial cutting torches, thermite technology, thermite-based tools and solid combustible charge-based tools.[79] In fact, in several of the SPEX Patents, SPEX disclosed MCR's patents as prior art.[80]

29.   In addition, the SPEX Patents are considered Improvements on MCR's Confidential Information, Licensed Patents and Licensed Technology, as those terms are defined in Sections 1.01, 1.02, 1.04 and 1.06 of the 2014 License Agreement.[81] Specifically, the SPEX patents relate to alleged Improvements to MCR's radial cutting torches, thermite technology, thermite-based tools and solid combustible charge-based tools.[82]

30.   Finally, the SPEX Patents relate to the MCR's Licensed Products, as defined in Section 1.05 and listed in Appendix B of the 2014 License Agreement.[83] Specifically, the SPEX Patents purport to be improvements to or derivations on prior art of MCR's radial cutting torches, thermite technology, thermite-based tools, solid combustible charge-based tools and related tools and systems.[84]

31.   In filing these patents, SPEX misappropriated MCR's trade secrets and Licensed Technology for its own benefit and breached numerous provisions of the 2014 License Agreement, resulting in immediate and irreparable harm to MCR.[85]

---

[79] Exhibit A at ¶ 9.

[80] See, e.g., Exhibit 2 at p. 383.

[81] Exhibit A at ¶ 10 and as defined in prior License Agreements.

[82] Exhibit A at ¶ 10.

[83] Exhibit A at ¶ 11 as defined in prior License Agreements.

[84] Exhibit A at ¶ 11.

[85] Pursuant to Section 7.06 of the 2014 License Agreement, all material terms related to the licensing and use of MCR's tools and technology survived termination of the agreement.

Formatted: Tab stops:  6", Right + Not at  6.5"
Formatted: Font: 11 pt, Not Bold, Small caps
Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

32. MCR specifically designed Article II of the 2014 License Agreement titled "Representations and Acknowledgements" to protect MCR from the exact type of wrongful conduct and treacherous behavior that SPEX has engaged in.[86] Within Article II are seven specific sections (Sections 2.01 through 2.07) in which SPEX represented that MCR holds all rights, title and interest in thermite-based cutting tools and technology and solid combustible charge-based tools, that it is not in the process of developing its own tools, and that it knows of no basis to challenge MCR's patents.[87] described above. **SPEX Offshore** Ltd. has interlocking directors with SPEX Engineering (UK) Ltd. and SPEX Offshore (UK) Ltd.[88] SPEX's activities in filing the SPEX Patents violate many of the provisions under Article II, including Sections 2.03, 2.04, 2.05 and 2.06.[89]

33. In the event of a violation of the protections found in Article II, the 2014 License Agreement provides that SPEX must assign any intellectual property allegedly owned by SPEX to MCR.[90] To protect MCR's intellectual property and trade secrets, SPEX contractually agreed to assign all rights, title, or interest in any improvements or modifications to MCR's tools or technology, but SPEX has breached and not done so. Rather, SPEX has used MCR's trade secrets and confidential, proprietary information for its own benefit, as shown in the SPEX Patents.[91]

---

[86] Exhibit A at ¶ 7.

[87] Exhibit 1.

[88] See Exhibit 4 regarding interlocking boards of directors.

[89] Exhibit A at ¶ 7.

[90] Exhibit 1 at §3.04.

[91] Exhibit A at ¶ 8.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 48

34.     In the 2015 Extension (signed June 1, 2015), the parties agreed to extend the terms of the 2014 License Agreement for one year, until May 21, 2016.[92] The 2015 Extension specifically provided that "[e]xcept as specifically and explicitly amended by the terms set forth above, no other terms of the License shall be affected by this extension."[93] In other words, SPEX understood and agreed that *all* provisions in the 2014 License Agreement related to the use and confidentiality of MCR's Licensed Technology remained in full force and effect.

35.     At the time SPEX signed the 2015 Extension, it was well aware that, in applying for numerous patents, it was claiming that it had invented, designed, developed, and improved thermite-based tools and technology and solid combustible charge-based tools and technology (*i.e.*, technology belonging to MCR). Yet, SPEX failed to disclose this fact to MCR, another clear violation of the 2014 License Agreement.[94] Until recently, MCR was completely unaware that SPEX had breached the 2014 License Agreement and 2015 Extension, and misappropriated MCR's trade secrets and Licensed Technology for use in SPEX's patent applications.

36.     Moreover, by failing to assign its purported thermite-based and solid combustible charge-based tool patents and technology to MCR, SPEX breached Section 3.04 of the 2014 License Agreement, which states as follows:[95]

Section 3.04 Improvements: Licensee acknowledges and agrees that all rights, title, and interest in and to any Improvements under the Licensed Patents or the Licensed Technology, including any intellectual property represented thereby or therein,

---

[92] Exhibit 3.

[93] Exhibit 3.

[94] Exhibit 1 at §2.03.

[95] Exhibit 1 at §1.02 ("'Improvements' means any improvement and/or modification of a device, product, method or process belonging to MCR or its licensor(s). Any and all future improvements and/or modification, as set forth above, whether conceived and/or developed independently by MCR or Licensee, or jointly by MCR and Licensee, will be owned by MCR pursuant to the provisions of Section 3.04 below.").

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 49

---

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

including without limitation, **any and all patents and trade secrets, are and shall be owned exclusively by MCR.** Licensee shall provide prompt notice to MCR of the development of any Improvement, including information necessary to practice the Improvement. **Licensee hereby irrevocably assigns, conveys, and sells to MCR its entire right, title, and interest in and to all Improvements, if any, including all applicable intellectual property rights thereto.** Licensee shall in good faith cooperate in executing or causing to have executed by its officers, employees, agents, and/or legal representatives, declarations, affidavits, powers of attorney, and other instruments, and in doing all other acts and things as may be reasonably necessary and/or needed to effect a transfer of Licensee's rights, title, and interest in and to any and all Improvements, as set forth above.

37.    In addition to SPEX Offshore Ltd.'s multiple breaches of the 2014 License Agreement, and SPEX Services, Ltd.'s multiple breaches of the prior License Agreements, and theft of MCR's confidential, proprietary and trade secret information, on information and belief, SPEX has been using MCR's stolen technology to test and develop technology and tools in Texas. Upon information and belief, SPEX has used Jet Research Center to assist in these efforts in Texas. MCR has learned that SPEX has also been working with third parties to develop the use of tools in foreign locations using MCR's Licensed Technology. SPEX's cooperation with these third parties violates Section 3.03 of the 2014 License Agreement, which prohibits SPEX from "directly or by cooperation with a Third Party, engag[ing] or assist[ing] in any testing, modifying, reverse engineering, or development" of MCR's Licensed Technology.

38.    Attached as Exhibit B is the declaration of Robert McKay, a former SPEX Offshore employee of SPEX. As shown in his declaration, Robert McKay recently spoke with a member of SPEX's operations team.[96]   This declaration provides facts confirming~~confirmed~~ that SPEX has~~Offshore~~ violated and is in current violation of~~continues to violate~~ the 2014 License Agreement and the 2015 Extension. McKay's declaration states as follows:

---

[96] Exhibit B.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF                REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 50

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

a.   ABased on a conversation with SPEX representative told, McKay learned that the SPEX isDefendants are currently replicating MCR's technology through development of its own tools.[97]

b.134.  Thedeveloping a non-explosive cutter to cut pipe downhole. In other words, the SPEX representative also told McKay that SPEX believed it had the rightDefendants are currently attempting to replicate MCR's technology notwithstanding MCR'sTools and intellectual property rights and the termsthrough development of the 2014 License Agreement.[98]competing tools and products.

135.   Finally, MCR has also been advisedlearned that SPEX representatives of the SPEX Defendants recently met at theSPEX Group's office of Defendant SPEX Group US LLC in Houston, Texas to finalize the development of a thermite-based or solid combustible charge-based tool or product, which SPEXthey plan to launch at or near the beginning of 2018. As shown in the SPEX Patents, [99] SPEX developed in 2018. Upon information and belief, the SPEX Defendants sent agents to Texas and are utilizing a research center in Texas to assist in the testing and development of these competing tools or products.[100]

**L.     Numerous facts demonstrate unity between the SPEX Defendants and their utter disregard for the corporate form.**

**The SPEX Defendants share common stock ownership.**

---

[97] Exhibit B.

[98] Exhibit B.

[99] Exhibit 2.

[100] Based on documents produced by the SPEX Defendants, MCR has discovered the identity and location of the research center. However, these documents have been designated Attorney's Eyes Only.

136.    When SPEX Offshore was incorporated, it listed SPEX Services as its sole initial shareholder. All of SPEX Offshore's annual returns list SPEX Services as its sole shareholder.

137.    In SPEX Offshore UK's 2013, 2014, 2015 and 2016 annual returns, it disclosed SPEX Services as its sole shareholder.[101] SPEX Offshore UK did not disclose any new assets in its financial statements until the end of 2016. According to SPEX Offshore UK's 2016 financial statement, its immediate and ultimate parent company is SPEX Holdings.

138.    On May 5, 2016, SPEX Services transferred its 100% ownership of SPEX Offshore UK to SPEX Holdings.

139.    In its Annual Return dated February 2, 2016, SPEX Engineering UK listed SPEX Services as its shareholder.

140.    On or about April 25, 2016, SPEX Holdings became the parent company of SPEX Engineering UK "following a share for share transfer" with SPEX Services.

~~39.~~141.       In its 2016 annual report, SPEX Holdings disclosed that it owned 100% of SPEX Engineering UK, SPEX Offshore UK, and SPEX Engineering, Ltd. In that same return, SPEX Holdings also disclosed that it had disposed of its ~~tools and technology using MCR's stolen tools, technology and confidential and proprietary information, and replicating information in MCR's patents.[102] If SPEX is allowed to proceed with the launch of its product, MCR will suffer immediate and irreparable harm.~~ 100% ownership of SPEX Offshore, SPEX Services, and SPEX Production, Ltd.

---

[101] SPEX Offshore UK was formerly known as Hot Forge, Ltd. until its name change on June 30, 2016.

~~[102] MCR's patents are attached hereto as Exhibit 5.~~

40.    ~~Regarding MCR's contractual right to protect its valuable intellectual property, SPEX expressly agreed in Section 9.06 of the 2014 License Agreement that MCR may apply to "any court of competent jurisdiction to preserve its intellectual property and its rights under this Agreement and to obtain any injunctive relief to which it may be entitled."[103] Additionally, in Section 9.07, SPEX agreed that any breach of the 2014 License Agreement "would irreparably harm MCR, that damages would be an inadequate remedy," and that injunctive relief would be appropriate to protect MCR's proprietary rights in its Licensed Technology and Licensed Products.[104] Finally, in Section 9.07, SPEX waived any objection on procedural or fairness grounds to MCR's right to injunctive relief.[105]~~

142.    ~~In addition to the strong language of Section 9.07 of the 2014 License Agreement, SPEX has possession of MCR's trade secrets. And when a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed. *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (~~When SPEX Corporate Holdings was incorporated, it listed SPEX Holdings as an initial shareholder. SPEX Holdings is the parent/shareholder of SPEX Corporate Holdings, SPEX Engineering UK and SPEX Offshore UK. In addition, SPEX Engineering UK is the parent/shareholder of SPEX Group.

143.    In SPEX Holdings' March 3, 2017 confirmation statement, Oag, Strachan and Younger are disclosed as shareholders. In addition, Oag is listed as a Person with Significant Control.

---

[103] ~~Exhibit 1 at §9.06.~~
[104] ~~Exhibit 1 at §9.07.~~
[105] ~~Exhibit 1 at §9.07.~~

144. In SPEX Holdings' March 5, 2018 confirmation statement, Oag, Strachan, Younger, Johnston and Mahjoub are disclosed as shareholders.

**The SPEX Defendants share common officers and Directors.**

145. There is complete and total overlap between the officers and Directors of the SPEX Defendants:

| | Jamie Oag | Nadir Mahjoub | Ryan Strachan |
|---|---|---|---|
| **SPEX Group** | Chief Executive Officer<br><br>President | Chief Executive Officer | Manager<br><br>Secretary |
| **SPEX Services** | Director | Director | Director |
| **SPEX Offshore** | Chief Executive Officer<br><br>Director | Director | Director |
| **SPEX Engineering UK** | Chief Executive Officer<br><br>Director | Director | Director |
| **SPEX Offshore UK** | Chief Executive Officer<br><br>Director | Director | Director |
| **SPEX Holdings** | Director | Director | Director |
| **SPEX Corporate Holdings** | Director | Director | Director |

146. In addition, Oag, Mahjoub and Strachan are Directors of all other entities in the SPEX corporate enterprise, including but not limited to SPEX Engineering, Ltd., SPEX Oil and Gas, Ltd., SPEX Oilfield, Ltd. and SPEX Saudi Arabia, LLC.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 54

Formatted: Tab stops: 6", Right + Not at 6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

**The SPEX Defendants share financial statements.**

147.    On June 12, 2014, SPEX Services filed its "Annual Report and Consolidated Financial Statements for the Year Ended 31 December 2013." In the corporate registration records, it is labeled as "Group of companies' accounts made up to 31 December 2013."

148.    Likewise, on June 12, 2014, SPEX Offshore filed the same document — SPEX Services' "Annual Report and Consolidated Financial Statements for the Year Ended 31 December 2013." In the corporate registration records, it is labeled as "Consolidated accounts of parent company for subsidiary company period ending 31/12/13."

149.    On October 1, 2015, SPEX Services filed its "Annual Report for the Year Ended 31 December 2014." In the corporate registration records, it is labeled as "Group of companies' accounts made up to 31 December 2014." The report includes SPEX Services' consolidated financial statements.

150.    Likewise, on October 1, 2015, SPEX Offshore filed the same document — SPEX Services' "Annual Report for the Year Ended 31 December 2014." In the corporate registration records, it is labeled as "Consolidated accounts of parent company for subsidiary company period ending 31/12/14."

151.    On September 13, 2016, SPEX Services filed its "Annual Report and Financial Statements for the Year Ended 31 December 2015." In the corporate registration records, it is labeled as "Group of companies' accounts made up to 31 December 2015."

152.    Likewise, on September 16, 2016, SPEX Engineering UK filed the same document — SPEX Services' "Annual Report for the Year Ended 31 December 2015." In the corporate registration records, it is labeled as "Consolidated accounts of parent company for subsidiary company period ending 31/12/15."

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 55

**Formatted:** Tab stops: 6", Right + Not at 6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

153.    According to SPEX Offshore UK's 2016 financial statement, its statements are consolidated into the financial statements of SPEX Holdings.

**The SPEX Defendants' corporate email practice further demonstrates a blending of identities and disregard of the separation between corporate entities.**

154.    A mere cursory review of the SPEX Defendants' email practice, both internally and with MCR, demonstrates unity between the SPEX Defendants. It also demonstrates that their daily operations are not kept separate between and among affiliates.

155.    For example, on April 25, 2016, Barry Chapman, Operations Director of SPEX Offshore, sent an email to MCR regarding setting up a meeting between MCR, Oag and Mahjoub. Chapman sent the email from a SPEX Group email address (barry.chapman@spex-group.com) to other SPEX Group employees, along with JJ Welsh, a SPEX Engineering UK employee, at his SPEX Engineering UK email address (jj.welsh@spex-engineering.com).

156.    As a second example, on April 25, 2016, Mahjoub sent an internal email from his First Organization email address (nadir_mahjoubf4f@first_organization.com) to other SPEX Group employees regarding "MCR license."[106] The signature block on Mahjoub's email from his First Organization email account states his title as Chief Operating Officer of SPEX Group.

157.    As a third example, on June 3, 2016, Chapman sent an email to MCR and SPEX Group employees regarding "Return of MCR confidential information." Although Chapman sent the email from his SPEX Group email address, the signature block states his title as Operations Director of SPEX Offshore (licensee to the 2014 License Agreement and 2015 Extension). SPEX Group employee Steven McPhee, Logistics and Materials Coordinator of SPEX Holdings, responded to Chapman's email confirming delivery details.

---

[106] SPEX Offshore was dissolved into First Organization.

**Formatted:** Tab stops:  6", Right + Not at  6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

158.   As a fourth example, on May 17, 2016, SPEX Group employee Craig Lowe sent an email to MCR regarding "our obligations to our current license with MCR…" Lowe's signature block states his title as Global Operations Manager of SPEX Offshore. Although the email pertained solely to SPEX Offshore's alleged fulfillment of certain licensee obligations to MCR, Lowe used his SPEX Group email address (craig.lowe@spex-group.com) and copied four other SPEX Group employees with SPEX Group email addresses.

159.   As a fifth example, in a string of emails between July 26, 2016 and August 18, 2016, several SPEX Group and SPEX Engineering UK employees discuss the return of MCR inventory pursuant to the obligations set forth in the 2014 License Agreement and 2015 Extension between MCR and SPEX Offshore. However, no SPEX Offshore employee email addresses are included in the email string. Moreover, SPEX Group employee Andy Eaton's email address changes from andy.eaton@spex-group.com to andy.eaton@spex-engineering.com within the same email string.

160.   As a final example, on April 27, 2017, Chapman used his SPEX Offshore email address (barry.chapman@spex-offshore.com) instead of his SPEX Group email address to send an email regarding "MCR Casing Removal Tool Patent" to SPEX Engineering UK employee John Fox (john.fox@spex-engineering.com) and SPEX Group employee Andrew Pettitt (andrew.pettitt@spex-group.com).

161.   Once discovery continues, MCR will support these contentions, allegations and claims with additional detailed facts.

41.   MCR pleads all ~~Tex. App.—Fort Worth 2005, no pet.)~~; *T. N. T Motorsports, Inc. v. Hennessey Motorsports,* 965 S.W.2d 18, 24 (Tex.App.—Houston [1st Dist.] 1998, no pet.) (holding that appellant possessed confidential information and was in a position to use it; thus,

Formatted: Small caps

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Tab stops: 6", Right + Not at 6.5"

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

~~appellant was likely to use information to former employer's detriment). The threatened disclosure of trade secrets constitutes irreparable injury as a matter of law. *Bell Helicopter*, 160 S.W.3d at 200; *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 471 (Tex.App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (citing *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 503 (5th Cir.1982)).~~

~~42.     The facts set forth in this Petition are supported by the verification of Michael C. Robertson, the Affidavit of Michael C. Robertson attached as Exhibit A, and the Declaration of Robert McKay attached as Exhibit B.~~

~~43.~~162.     ~~All~~ claims herein ~~are pled~~ in the alternative.

> **Formatted:** Indent: First line:  0.5"

## COUNT ONE – BREACH OF CONTRACT

~~44.~~163.     MCR <u>repeats, realleges, and</u> incorporates by reference each ~~of the facts~~<u>and every fact and allegation</u> set forth above ~~as if fully set forth in support of its claim for breach of contract.~~.

> **Formatted:** Indent: First line:  0.5", Don't keep with next

~~45.~~164.     ~~SPEX Offshore, Ltd. and SPEX Services, Ltd.~~<u>MCR</u> entered into valid, binding contracts with ~~MCR.~~<u>SPEX Offshore and SPEX Services.</u> All necessary and material terms were agreed to<u> by the parties.</u> MCR fully performed its obligations under the ~~contract~~<u>contracts</u>. Alternatively, MCR's performance was excused by the acts of SPEX Offshore ~~, Ltd.~~ and SPEX Services ~~, Ltd~~.

> **Formatted:** Indent: First line:  0.5"

~~46.~~165.     SPEX Offshore ~~, Ltd.~~ and SPEX Services ~~, Ltd~~ breached and have failed to perform their obligations under the contracts<u>, and are continuing to do so.</u> As a result of these ~~breachs of contract~~<u>breaches</u>, MCR has suffered actual, consequential, and incidental damages, as

> **Formatted:** Font: 11 pt, Not Bold, Small caps
> **Formatted:** Tab stops: 6", Right + Not at  6.5"
> **Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

~~PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND~~ <u>THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF</u>

~~REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage~~ <u>PLAINTIFF'S</u> PAGE 58

well as attorney's fees and costs of court. In addition to direct and actual damages, MCR seeks

recovery of its out-of-pocket expenses, loss of use, lost profits, and pre-judgment interest.

47.166.      All conditions precedent necessary for MCR to recover in this action have

been performed, occurred, or have been waived.

48.167.      Pursuant to TEX. CIV. PRAC. & REM. Texas Civil Practice & Remedies

CODE §_38.001, MCR is entitled to recover its reasonable and necessary attorney's fees for the

investigation and prosecution of this action, including all trials and appeals.


**COUNT TWO** – DECLARATORY JUDGMENT – **SPECIFIC PERFORMANCE**

168.    MCR repeats, realleges, and incorporates by reference each of the facts and every

fact and allegation set forth above as if fully.

169.    SPEX Offshore and SPEX Services entered into valid, binding contracts with

MCR. All necessary and material terms were agreed to by the parties. MCR did not repudiate or

materially breach the contracts and has clean hands in the transactions.  MCR was ready, willing

and able to timely perform its obligations under the contracts and did perform its obligations under

the contracts. Alternatively, MCR's performance was excused by the acts of SPEX Offshore and

SPEX Services.

170.    There is no adequate remedy at law to compensate MCR for its loss and it cannot

be fully compensated through the remedy of damages. MCR is therefore entitled to specific

performance of SPEX Offshore and SPEX Services' obligation to assign, convey and transfer the

SPEX Patents and all Improvements, as that term is defined in the contracts, to MCR.

**COUNT THREE - DECLARATORY JUDGMENT**

**Formatted:** Tab stops:  6", Right + Not at  6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

49.171.    MCR repeats, realleges, and incorporates by reference each and every fact and allegation set forth in support of request for a declaratory judgmentabove.

50.172.    A dispute has arisen regarding the rights, responsibilities and obligations between the parties. Specifically, MCR claims that it is the rightful owner of all products, engineering, drawings, trade secrets, confidential information, and any other information related in any way to any thermite tool, thermite-based technology or solid combustible charge-based tool invented, developed, modified, or improved by or on behalf of the SPEX Defendants. Therefore, pursuant to 28 U.S.C.A. § 2201(a), MCR requests an order declaring that is the rightful owner of all products, engineering, drawings, trade secrets, confidential information, and any other information related in any way to any thermite tool, thermite-based technology or solid combustible charge-based tool invented, developed, modified, or improved by or on behalf of the SPEX Defendants.

173.    Pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE §37.009, In addition, MCR claims that the SPEX Patents constitute Improvements, as that term is defined in the 2011 and 2014 License Agreements. The SPEX Defendants dispute that the SPEX Patents constitute Improvements and, as such, have been unwilling to assign, transfer or convey the SPEX Patents to MCR pursuant to the terms of the 2011 and 2014 License Agreements and 2015 Extension. Therefore, pursuant to 28 U.S.C.A. § 2201(a), MCR requests an order declaring that the SPEX Patents constitute Improvements as defined in the 2011 and 2014 License Agreements and 2015 Extension.

174.    MCR's request for declaratory relief is supported by numerous underlying, viable causes of actions and judicially remediable rights, including claims for breach of contract,

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF    REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 60

misappropriation of trade secrets, fraud and fraudulent inducement, tortious interference with contract and unfair competition.

~~51.~~175.    MCR is entitled to recover its reasonable and necessary attorney's fees for the investigation and prosecution of this action, including all trials and appeals.

> Formatted: Indent: First line: 0.5"

## COUNT ~~THREE - TEXAS STATUTORY~~FOUR - MISAPPROPRIATION OF TRADE SECRETS UNDER THE TEXAS UNIFORM TRADE SECRETS ACT

~~52.~~176.    MCR repeats, realleges, and incorporates by reference each ~~of the facts~~and every fact and allegation set forth above ~~as if fully set forth in support of its claim for statutory misappropriation of trade secrets~~.

> Formatted: Indent: First line: 0.5"

177.    MCR owns valuable trade secrets ~~and confidential, proprietary information.~~. MCR uses its trade secrets ~~and confidential, proprietary information~~ in its business to obtain an advantage over competitors ~~who do not know or use~~. MCR's trade secrets ~~The trade secrets and confidential, proprietary information unlawfully appropriated, downloaded, transferred, used and disclosed by SPEX is not~~ derive independent actual and potential value because they are not generally known or readily ~~available to the public.~~ ascertainable by proper means by other persons who can obtain economic value from their disclosure or use.

178.    MCR takes active measures to protect the secrecy of its trade secrets ~~and confidential, proprietary information by~~ by limiting access to, and the disclosure of ~~, such information~~ its trade secrets, limiting access to its offices, files, computers, and taking other security measures. ~~Although~~MCR also requires its customers to enter into license agreements containing confidentiality provisions, which MCR has invested substantial time and resources developing and strengthening over the years.

> Formatted: Font color: Black

> Formatted: Font: 11 pt, Not Bold, Small caps
> Formatted: Tab stops: 6", Right + Not at 6.5"
> Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

## A.   The **SPEX** ~~obtained access to~~ **Defendants misappropriated** **MCR's** trade secrets by acquiring them through improper means.

179.   The SPEX Defendants acquired MCR's trade secrets by improper means, which is defined as "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, to limit use, or to prohibit discovery of a trade secret, or espionage through electronic or other means." TEX. CIV. PRAC. & REM. ~~information under~~CODE § 134A.

### SPEX Services

180.   In the 2011 License Agreement, SPEX Services falsely represented that it was not in the business of designing or developing thermite-based products or technology substantially similar to or competitive with MCR's Licensed Products and Licensed Technology, and that it had no intention of entering into any such business. SPEX Services made these false representations in order to acquire MCR's trade secrets by improper means. MCR acted and relied on these false representations in disclosing and licensing the use of its trade secrets to SPEX Services.

181.   In the 2011 License Agreement, SPEX Services agreed to maintain the secrecy of MCR's trade secrets. SPEX Services breached this duty by, among other things, disclosing MCR's trade secrets to its Directors and affiliates, including but not limited to Oag, Younger, Johnston, and the other SPEX Defendants.

182.   SPEX Services also agreed to limitations on the use of MCR's trade secrets. SPEX Services breached its duty to limit its use of MCR's trade secrets by, among other things, reverse engineering, developing, improving and modifying MCR's Tools for the benefit of SPEX Services and its Directors and affiliates, and the other SPEX Defendants, and filing patents for competing or substantially similar tools and products derived from MCR's trade secrets.

**SPEX Offshore**

183.    In the 2014 License Agreement, ~~SPEX then unlawfully refused to return the information to MCR. SPEX also~~ and 2015 Extension, SPEX Offshore falsely represented that it had not invented, designed, developed, or improved (nor contributed to inventing, designing, developing or improving) any technology or products for the perforating, consuming or cutting of downhole pipes using any part of MCR's Licensed Technology, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools. SPEX Offshore also falsely represented that it was not aware of any person or entity having done so.

184.    SPEX Offshore also falsely represented that it was not in the business of designing or developing thermite-based products or technology substantially similar to or competitive with MCR's Licensed Products and Licensed Technology, and that it had no intention of entering into any such business. SPEX Offshore made these false representations in order to acquire MCR's trade secrets by improper means. MCR acted and relied on these false representations in disclosing and licensing the use of its trade secrets to SPEX Offshore.

185.    In the 2014 License Agreement and 2015 Extension, SPEX Offshore agreed to maintain the secrecy of MCR's trade secrets. SPEX Offshore breached this duty by, among other things, disclosing MCR's trade secrets to its Directors and affiliates, including but not limited to Oag, Younger, Johnston, and the other SPEX Defendants.

186.    SPEX Offshore also agreed to limit its use of MCR's trade secrets. SPEX Offshore breached its duty to limit its use of MCR's trade secrets by, among other things, reverse engineering, developing, improving and modifying MCR's Tools for the benefit of SPEX Offshore and its Directors and affiliates, including the other SPEX Defendants.

~~PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND~~ THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

~~REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage~~ PLAINTIFF'S
PAGE 63

**Jamie Oag**

187.   In the 2014 License Agreement and 2015 Extension, Oag falsely represented that SPEX Offshore had not invented, designed, developed, or improved (nor contributed to inventing, designing, developing or improving) any technology or products for the perforating, consuming or cutting of downhole pipes using any part of MCR's Licensed Technology, which is defined to include MCR's trade secrets, thermite-based technology and solid combustible charge-based tools. Oag also falsely represented that SPEX Offshore was not aware of any person or entity having done so.

188.   In addition, Oag falsely represented that SPEX Offshore was not in the business of designing or developing thermite-based products or technology substantially similar to or competitive with MCR's Licensed Products and Licensed Technology, and that it had no intention of entering into any such business. Oag made these false representations in order to acquire MCR's trade secrets by improper means. MCR acted and relied on these false representations in disclosing and licensing the use of its trade secrets to Oag and SPEX Offshore.

189.   In the 2014 License Agreement and 2015 Extension, Oag agreed to maintain the secrecy of MCR's trade secrets. Oag breached this duty by, among other things, disclosing MCR's trade secrets to SPEX Offshore's Directors and affiliates, including but not limited to Younger, Johnston, and the other SPEX Defendants.

190.   Oag also agreed, on behalf of SPEX Offshore, to limit SPEX Offshore's use of MCR's trade secrets. Oag breached this duty to limit SPEX Offshore's use of MCR's trade secrets by, among other things, reverse engineering, developing, improving and modifying MCR's Tools for the benefit of SPEX Offshore and its Directors and affiliates, and the other SPEX Defendants.

**SPEX Group, SPEX Offshore UK and SPEX Engineering UK**

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 64

Formatted: Tab stops: 6", Right + Not at 6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

191.   SPEX Group, SPEX Offshore UK and SPEX Engineering UK induced SPEX Services, SPEX Offshore and Oag to breach their duties to maintain secrecy and to limit their use of MCR's trade secrets. In addition, at the time SPEX Group, SPEX Offshore UK and SPEX Engineering UK acquired MCR's trade secrets, they knew or had reason to know that SPEX Services, SPEX Offshore and Oag had acquired MCR's trade secrets through improper means.

**SPEX Holdings and SPEX Corporate Holdings**

192.   SPEX Holdings and SPEX Corporate Holdings induced SPEX Services, SPEX Offshore and Oag to breach their duties to maintain secrecy and to limit their use of MCR's trade secrets. In addition, at the time SPEX Holdings and SPEX Corporate Holdings acquired MCR's trade secrets, they knew or had reason to know that SPEX Services, SPEX Offshore and Oag, and the other SPEX Defendants, had acquired MCR's trade secrets through improper means.

**B.     The SPEX Defendants misappropriated MCR's trade secrets by using or disclosing them without MCR's consent.**

**SPEX Services**

193.   As set forth above, SPEX Services acquired knowledge of MCR's trade secrets by improper means. SPEX Services disclosed and used MCR's trade secrets without consent by, among other things: (a) disclosing MCR's trade secrets to its affiliates and other persons, including but not limited to Oag, Younger, Johnston, and the other SPEX Defendants; (b) using MCR's trade secrets to reverse engineer, develop, improve and modify MCR's Tools for the benefit of SPEX Services and its Directors and affiliates, and the other SPEX Defendants; (c) using MCR's trade secrets to develop competing tools and products; and (d) using MCR's trade secrets to file patents for competing or substantially similar tools and products either directly or through its Directors and affiliates.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 65

Formatted: Tab stops: 6", Right + Not at 6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

194.    At the time SPEX Services disclosed or used MCR's trade ~~secret and confidential, proprietary information for its own commercial benefit to develop products to compete with MCR. SPEX also~~ secrets without consent, it knew that its knowledge of MCR's trade secrets was: (a) derived from or through a person who had used ~~MCR's trade secret and confidential, proprietary information to obtain patents and intellectual property rights in SPEX's~~ improper means to acquire the trade secrets; (b) acquired under circumstances giving rise to a duty to maintain secrecy and limit use; or (c) derived from or through a person who owed a duty to maintain the secrecy or limit use of MCR's trade secrets.

**SPEX Offshore**

195.    As set forth above, SPEX Offshore acquired knowledge of MCR's trade secrets by improper means. SPEX Offshore disclosed and used MCR's trade secrets without MCR's consent by, among other things: (a) disclosing MCR's trade secrets to its affiliates and other persons, including but not limited to Oag, Younger, Johnston, and the other SPEX Defendants; (b) using MCR's trade secrets to reverse engineer, develop, improve and modify MCR's Tools for the benefit of SPEX Services and its Directors and affiliates, and the other SPEX Defendants; (c) using MCR's trade secrets to develop competing tools and products; and (d) using MCR's trade secrets to file patents for competing or substantially similar tools and products either directly or through its Directors and affiliates.

196.    At the time SPEX Offshore disclosed or used MCR's trade secrets without its consent, SPEX Offshore knew that its knowledge of MCR's trade secrets was: (a) derived from or through a person who had utilized improper means to acquire the trade secrets; (b) acquired under circumstances giving rise to a duty to maintain secrecy and limit use; or (c) derived from or through a person who owed a duty to maintain secrecy or limit use of MCR's trade secrets.

**Jamie Oag**

197.    As set forth above, Oag acquired knowledge of MCR's trade secrets by improper means. Oag disclosed and used MCR's trade secrets without MCR's consent by, among other things: (a) disclosing MCR's trade secrets to the SPEX Defendants and their Directors, including but not limited to Younger, Johnston, and the other SPEX Defendants; (b) using MCR's trade secrets to reverse engineer, develop, improve and modify MCR's Tools for his personal benefit and the benefit of the SPEX Defendants and their Directors, and the other SPEX Defendants; (c) using MCR's trade secrets to develop competing tools and products; and (d) using MCR's trade secrets to file patents for competing or substantially similar tools and products.

198.    At the time Oag disclosed or used MCR's trade secrets without its consent, he knew that his knowledge of MCR's trade secrets was: (a) derived from or through a person who had utilized improper means to acquire the trade secrets; (b) acquired under circumstances giving rise to a duty to maintain secrecy and limit use; or (c) derived from or through a person who owed a duty to maintain secrecy or limit use of MCR's trade secrets.

**SPEX Group, SPEX Offshore UK and SPEX Engineering UK**

199.    As set forth above, SPEX Group, SPEX Offshore UK and SPEX Engineering UK acquired knowledge of MCR's trade secrets by improper means. SPEX Group, SPEX Offshore UK and SPEX Engineering UK disclosed and used MCR's trade secrets without MCR's consent by, among other things: (a) disclosing MCR's trade secrets to its affiliates and other persons, including but not limited to Oag, Younger, Johnston, SPEX Holdings and SPEX Corporate Holdings; (b) using MCR's trade secrets to reverse engineer, develop, improve and modify MCR's Tools for their own benefit or the benefit of their Directors and affiliates, and the other SPEX Defendants; (c) using MCR's trade secrets to develop competing tools and products; and (d) using

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 67

**Formatted:** Tab stops: 6", Right + Not at 6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

MCR's trade secrets to file patents for competing or substantially similar tools and products either directly or through their Directors and affiliates.

200.   At the time SPEX Group, SPEX Offshore UK and SPEX Engineering UK disclosed or used MCR's trade secrets without its consent, SPEX Group, SPEX Offshore UK and SPEX Engineering UK knew that their knowledge of MCR's trade secrets was: (a) derived from or through a person who had utilized improper means to acquire the trade secrets; (b) acquired under circumstances giving rise to a duty to maintain secrecy and limit use; or (c) derived from or through a person who owed a duty to maintain secrecy or limit use of MCR's trade secrets.

**SPEX Holdings and SPEX Corporate Holdings**

201.   As set forth above, SPEX Holdings and SPEX Corporate Holdings acquired knowledge of MCR's trade secrets by improper means. SPEX Holdings and SPEX Corporate Holdings disclosed and used MCR's trade secrets without MCR's consent by, among other things: (a) disclosing MCR's trade secrets to its affiliates and other persons, including but not limited to Oag, Younger, and Johnston; (b) using MCR's trade secrets to reverse engineer, develop, improve and modify MCR's Tools for their own ~~name and for its~~ benefit or the benefit of their Directors and affiliates, and the other SPEX Defendants; (c) using MCR's trade secrets to develop competing tools and products; and (d) using MCR's trade secrets to file patents for competing or substantially similar tools and products either directly or through their Directors and affiliates.

202.   At the time SPEX Holdings and SPEX Corporate Holdings disclosed or used MCR's trade secrets without its consent, SPEX Holdings and SPEX Corporate Holdings knew that their knowledge of MCR's trade secrets was: (a) derived from or through a person who had utilized improper means to acquire the trade secrets; (b) acquired under circumstances giving rise to a duty

~~PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND~~ THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

~~REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage~~ PLAINTIFF'S

PAGE 68

to maintain secrecy and limit use; or (c) derived from or through a person who owed a duty to maintain secrecy or limit use of MCR's trade secrets.

**Jamie Oag**

~~53.~~203.     As set forth above, Oag acquired knowledge of MCR's trade secrets by improper means. Oag disclosed and used MCR's trade secrets without MCR's consent by, among other things: (a) disclosing MCR's trade secrets to the SPEX Defendants and their Directors, including but not limited to Younger, Johnston, and the other SPEX Defendants; and (b) using MCR's trade secrets to reverse engineer, develop, improve and modify MCR's Tools for his own benefit ~~Due to SPEX's conduct, MCR brings a claim against SPEX for statutory misappropriation of trade secrets under~~ and that of the SPEX Defendants and their Directors and affiliates ~~the Texas Uniform Trade Secrets Act~~ (TUTSA), TEX. ~~CIV. PRAC. & REM. CODE § 134A~~.

204.     At the time Oag disclosed or used MCR's trade secrets without its consent, Oag knew that his knowledge of MCR's trade secrets was: (a) derived from or through a person who had utilized improper means to acquire the trade secrets; (b) acquired under circumstances giving rise to a duty to maintain secrecy and limit use; or (c) derived from or through a person who owed a duty to maintain secrecy or limit use of MCR's trade secrets.

**C.     Damages and injunctive relief.**

205.     MCR requests that the Court order the SPEX Defendants to pay all damages for actual loss, lost profits, unjust enrichment, head-start damages or, in lieu of damages measured by other methods, imposition of a reasonable royalty for the SPEX Defendants' unauthorized disclosure and use of MCR's trade secrets.

~~PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND~~ THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF     ~~REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage~~ PLAINTIFF'S

PAGE 69

54.   The SPEX Defendants' conduct in misappropriating MCR's trade secrets was willful and malicious. As a result, MCR is entitled to an award of exemplary damages. Tex. Civ. Prac. & Rem. Code § 134A SPEX breached the contractual duty owed by it to MCR by improperly, and without authorization, transferring, using and/or disclosing MCR's confidential, proprietary, and trade secret information, with the intention of entering into competition with MCR and to MCR's detriment.  MCR's trade secrets include, but are not limited to, MCR's methods, and/or business information, the products, patents, patent applications, engineering, drawings, confidential information, know-how, and any other information and/or documents related in any way to the 2014 License Agreement, or any thermite-based tool or technology or solid combustible charge-based tool developed by, or on behalf of SPEX, and such related trade secret and confidential information. Such acts of misappropriation and/or theft of MCR's trade secrets by SPEX were willful, malicious, and caused injury and/or damages to MCR, in an amount to be proven at trial, and/or benefitted SPEX by providing it access to information SPEX was contractually bound to safeguard, maintain confidentiality of, and return to MCR upon termination of the 2014 License Agreement. In addition to damages, MCR will be irreparably harmed if SPEX is allowed to continue or further benefit from its unlawful acts. Accordingly, SPEX must be restrained or enjoined, and is liable for damages, pre- and post-judgment interest, costs and attorney's fees.

206.   Pursuant to Texas Civil Practice & Remedies .004(b).

207.   In addition to damages, MCR will be irreparably harmed if the SPEX Defendants are allowed to continue or further benefit from their unlawful acts. Pursuant to Tex. Civ. Prac. & Rem. Code § 134A.004(a), MCR requests that the SPEX Defendants be enjoined from disclosing or using, or further disclosing or using, MCR's trade secrets.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND Third Amended Complaint and Application for Preliminary and Permanent Injunctive Relief       REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEF Page Plaintiff's

PAGE 70

55. 208.    Pursuant to TEX. CIV. PRAC. & REM. CODE §134A.005, MCR is entitled to recover its reasonable and necessary attorney's fees for the investigation and prosecution of this action, including all trials and appeals.

COUNT ~~FOUR – COMMON LAW~~ FIVE – MISAPPROPRIATION OF TRADE SECRETS UNDER THE DEFEND TRADE SECRETS ACT

209.    MCR repeats, realleges, and incorporates by reference each ~~of the facts~~ and every fact and allegation set forth above ~~as if fully set forth~~.

210.    MCR owns valuable trade secrets related to a product or service used in ~~support~~ interstate or foreign commerce. MCR has invested considerable time, effort, and financial resources to develop and protect its trade secrets. MCR has treated the information as confidential and has protected the information from discovery by third parties. The information gives MCR a competitive advantage over others in the marketplace who do not know ~~of its claim for common law~~ or how to use it.

211.    The SPEX Defendants have misappropriated and wrongfully exploited MCR's trade secrets in violation of the Defend Trade Secrets Act, 18 U.S.C. § 1832, *et seq.* The SPEX Defendants have, without MCR's authorized consent, used or intended to use MCR's trade secrets in interstate or foreign commerce.

212.    MCR requests that the Court order the SPEX Defendants to pay all damages for actual loss, any unjust enrichment not addressed in computing damages for actual loss, head-start damages or, in lieu of damages measured by other methods, damages measured by imposition of a reasonable royalty for the SPEX Defendants' unauthorized disclosure and use of MCR's trade secrets.

~~PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND~~ THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

~~REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage~~ PLAINTIFF'S

PAGE 71

213.   The SPEX Defendants' actions in misappropriating MCR's trade secrets were willful and malicious, entitling MCR to exemplary damages under 18 U.S.C. § 1836(3)(C) and an award of reasonable attorney's fees under 18 U.S.C. § 1836(3)(D).

214.   Pursuant to 18 U.S.C. § 1836(3), MCR requests that the SPEX Defendants be enjoined from disclosing or using, or further disclosing or using, MCR's trade secrets and confidential information. MCR further requests an injunction requiring the SPEX Defendants to take all necessary affirmative actions to ensure protection of MCR's trade secrets.

56.215.      Wrongful acts in furtherance of the SPEX Defendants' misappropriation under the Defend Trade Secrets Act were committed in the United States.

### ~~MCR~~ COUNT SIX - UNFAIR COMPETITION UNDER TEXAS LAW

216.   MCR repeats, realleges, and incorporates by reference each and every fact and allegation set forth above.

57.   MCR owns valuable confidential and proprietary information and know-how. MCR created ~~and developed~~its confidential and proprietary information and know-how through extensive time, labor, ~~effort,~~ skill and money.

58.217.      The SPEX ~~wrongfully~~Defendants misappropriated and used MCR's confidential and proprietary information and know-how in competition with MCR ~~and gained,~~ thereby gaining a special advantage in that competition (i.e., a "free ride") because the SPEX ~~was not~~Defendants were burdened with little or none of the expense ~~of years of research and development, trial and error, and experimentation~~incurred by MCR.

59.   As a result of SPEX's The SPEX Defendants' misappropriation ~~SPEX has profited from and, unless such conduct is enjoined by this Court, will continue to profit by misappropriating the time and money that MCR invested in establishing the reputation and goodwill of MCR.~~

60.   As a result of SPEX's misappropriation, MCR has suffered and, unless SPEX is enjoined by this Court, will continue to suffer injury and damages for which they are entitled.

61.   SPEX's conduct was malicious and done with an intentional disregard of MCR's rights thereby entitling MCR to an award of punitive damages.

**COUNT FIVE - UNFAIR COMPETITION UNDER TEXAS LAW**

62.   MCR incorporates by reference each of the facts set forth above as if fully set forth in support and unauthorized use of its claim for unfair competition.

63.   SPEX's unauthorized use of MCR's intellectual property constitutes unfair competition under common law. SPEX's has conducted business contrary to honest practice in industrial or commercial matters. In addition, SPEX's conductMCR's confidential and proprietary information and know-how has violated the law and the legal rights of MCR.

64.218.      As a result of SPEX's unfair competition, MCR has sufferedcaused MCR actual, consequential, and incidental damages, as well as attorney's fees and costs of court. In addition to direct and actual damages, MCR seeks recovery of its out-of-pocket expenses, loss of use, lost profits, and pre-judgment interest.

65.219.      Moreover, SPEX's usethe SPEX Defendants' misappropriation of MCR's confidential, and proprietary, and trade secret information constitutes unfair competition that has had and know-how will continue to have a significant negative effect on MCR's business. MCR believes that SPEX's use of MCR's trade secrets and confidential and proprietary information and know-how will continue unless restrained and enjoined order of the Court. Thus, MCR is entitled to temporarytherefore requests a preliminary and permanent injunctive reliefinjunction due to the irreparable harm caused by SPEX's currentthe misappropriation and potentially future unlawful conduct. use of MCR's confidential and proprietary information and know-how.

---

Formatted: Indent: First line: 0.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Tab stops: 6", Right + Not at 6.5"

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

### COUNT ~~SIX~~ SEVEN – COMMON-LAW FRAUD AND FRAUDULENT INDUCEMENT[107]

~~66.~~220.　　　MCR repeats, realleges, and incorporates by reference each ~~of the facts~~and every fact and allegation set forth above ~~as if fully set forth in support of its claims for common-law fraud and fraudulent inducement~~.

221.　　~~SPEX's conduct, as discussed above, constitutes fraudulent inducement. By executing~~At the time the ~~2009, parties entered into the~~ 2011~~,~~ and 2014 License Agreements~~, and the~~ 2015 Extension, SPEX ~~made all of the representations and acknowledgements in Article 2 of the~~ Services, SPEX Offshore and Oag made material misrepresentations and omissions to MCR, which were false, and which were known to be false when made or were asserted recklessly or without knowledge of their truth. SPEX Services, SPEX Offshore and Oag intended MCR to act and rely upon these misrepresentations, and MCR did act and rely on these misrepresentations in entering into the 2011 and 2014 License ~~Agreement. As described in detail above, SPEX made this material representations knowing that they were intended for MCR to act on it.~~Agreements and 2015 Extension, causing MCR injury. It was reasonable for MCR to ~~do so, as it was a~~act and rely on these misrepresentations, as they were part of the express ~~terms of the~~ agreement in ~~the 2011 and~~ 2014 License Agreements ~~and 2015. Relying on SPEX's intentional~~ Extension.

222.　　SPEX Services, SPEX Offshore and Oag made these material misrepresentations~~,~~ in order to induce MCR ~~entered~~to enter into ~~the~~ 2011 and 2014 License Agreements and 2015 Extension, and to benefit from MCR's performance of the agreements ~~in 2014 and 2015.~~ . MCR

---

[107] MCR recognizes that fraudulent inducement and common law fraud are separate causes of action. MCR has elected to plead them together solely for purposes of identifying the fraudulent representations and omissions for purposes of complying with Federal Rule of Civil Procedure 9(b) and to avoid any further challenge by the SPEX Defendants through yet another motion to dismiss.

~~PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND~~ THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

~~REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage~~ PLAINTIFF'S PAGE 74

would not have entered into the 2011 and 2014 orLicense Agreements and 2015 agreementExtension had it known that the representations were false or that SPEX Services, SPEX Offshore and Oag did not intend to bind itselfthemselves to the terms and therefore reasonably relied on SPEX's statements. SPEX'sof the agreement.

223.   MCR has sufficiently alleged the time, place and contents of the false representation(s), as well as the identity of the person making the misrepresentation(s) and what that person or entity obtained by making the misrepresentation(s).

224.   Moreover, the acts by SPEX Services, SPEX Offshore and Oag post-execution of the 2011 and 2014 License AgreementAgreements and 2015 Extension indicate that itthey never intended to comply with either agreement. SPEXthe terms of the agreements. Instead, SPEX Services, SPEX Offshore and Oag used the 2014 License Agreementlicense agreements merely as a vehicle to stealmisappropriate MCR's technology and use ittrade secrets and confidential and proprietary information for SPEX'stheir own benefit– and for the benefit of the other SPEX Defendants.

67.225.   MCR washas been damaged as a result of the SPEX Services, SPEX Offshore, and Oag's fraud and fraudulent inducement and is entitled to damages, pre- and post-judgment interest, costs and attorney's fees.

**C**OUNT **S**EVEN**EIGHT** – **T**ORTIOUS **I**NTERFERENCE WITH AN EXISTING CONTRACT

226.   MCR repeats, realleges, and incorporates by reference each of the facts and allegationsevery fact and allegation set forth above as if fully set forth in support of its tortious.

68.   MCR had contracts with SPEX Offshore and SPEX Services, in the form of license agreements, subject to interference claim.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 75

**Formatted:** Indent: First line: 0.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Tab stops: 6", Right + Not at 6.5"

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

227.   By engaging in the activity set out above, SPEX Services, Ltd. Oag, SPEX Group US LLC, SPEX Offshore (UK) Ltd., and, SPEX Engineering (UK), Ltd., SPEX Holdings, and SPEX Corporate Holdings willfully and intentionally interfered with the contracts proximately causing injury to MCR. As a result of the interference by Oag, SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings, MCR has suffered actual damages or loss.

### COUNT NINE – ALTER EGO/PIERCING THE CORPORATE VEIL

228.   MCR repeats, realleges, and incorporates by reference each and every fact and allegation set forth above.

69.229.   By forming SPEX Offshore, SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings for the specific purpose of: (1) testing, modifying, reverse engineering, and developing of MCR's Tools and intellectual property in violation of the 2011 License Agreement, 2014 License Agreement between MCR and SPEX Offshore, Ltd., and induced SPEX Offshore, Ltd. to breach the 2014 License Agreement, proximately causing damage to MCRand 2015 Extension, both directly and by cooperation with affiliates; and (2) filing, assigning, and holding the SPEX Patents, SPEX Services, SPEX Offshore and Oag used the corporate form as an unfair device to achieve an inequitable result; specifically, theft of MCR's trade secrets, development of competing tools and products, and ownership of all Improvements and the SPEX Patents.

230.   SPEX Offshore, SPEX Services and Oag also used the corporate form to evade or avoid their legal obligations. SPEX Services, SPEX Offshore and Oag had, among other obligations, a duty to protect MCR's trade secrets and confidential information, and to use MCR's Tools and intellectual property in strict accordance with the terms of the respective license

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF   REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S PAGE 76

agreements. Instead of fulfilling these duties, SPEX Services, SPEX Offshore and Oag—through affiliates and common officers and Directors—created sham entities, changed corporate names, diverted corporate assets, and dissolved corporate entities to escape legal and contractual liabilities. In doing so, SPEX Services, SPEX Offshore and Oag deceived and violated confidences owed to MCR.

231.    As affiliates of SPEX Services and SPEX Offshore, SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings, and those in common and majority control of these entities (including Oag), used the corporate form for the purpose of perpetrating an actual fraud on MCR for the direct benefit of Oag, SPEX Services and SPEX Offshore, their common officers and Directors, and the other SPEX Defendants.

232.    The conduct of SPEX Services, SPEX Offshore and Oag involved dishonesty of purpose, actual fraud and intent to deceive. The corporate form should be disregarded because SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings are alter egos of SPEX Services, SPEX Offshore and Oag. The corporate form of SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings should be disregarded because these entities were organized and operated by SPEX Services, SPEX Offshore and Oag as mere tools or business conduits, or alter egos of themselves, by those in common and majority ownership and control of both entities. As affiliates of each other, with common majority owners, the SPEX Defendants have or had a direct financial interest in each other.

233.    Moreover, there is such a unity between the SPEX Defendants and a blurring of identities that the separateness of SPEX Services, SPEX Offshore and Oag on the one hand, and SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings, SPEX Corporate

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 77

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

Holdings and Oag, on the other hand, never existed or has ceased to exist. Holding only SPEX Services and SPEX Offshore liable for their contractual obligations would result in an injustice in that SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings, SPEX Corporate Holdings and Oag would be allowed to reap the benefits of SPEX Services and SPEX Offshore's wrongful conduct, escape or avoid liability, and walk away with MCR's intellectual property rebranded as their own.

234.    The SPEX Defendants, and each of them, used assets of each of the other SPEX Defendants for their own purposes as though the assets were their own, and caused assets to be transferred between them or to entities they controlled. In addition, the SPEX Defendants each directly and indirectly controlled each other. Each of the SPEX Defendants also has or had direct and indirect control of the other, including the power to direct or cause the direction of the management and polices of the other. Finally, the SPEX Defendants exercised active control over the day-to-day affairs of each other.

235.    For these reasons, SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings, SPEX Corporate Holdings and Oag may be held liable for the tortious acts and fraudulent conduct of SPEX Services, SPEX Offshore and Oag, in as much as these persons or entities are alter egos of SPEX Services, SPEX Offshore and Oag. Given that the two contractually-bound entities purposefully changed names and diverted all assets prior to their dissolution, holding only SPEX Services and SPEX Offshore liable would result in an injustice.

236.    Conversely, SPEX Services and SPEX Offshore may be held liable for the tortious acts and fraudulent conduct of Oag, SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings, in as much as these entities are alter egos of Oag, SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 78

Holdings. Holding only Oag, SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings for their conduct would result in an injustice.

237.    In addition, MCR alleges that because SPEX Services, SPEX Offshore and Oag perpetrated an actual fraud on MCR, Oag, SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings should be held liable for the existing legal and contractual obligations of SPEX Services and SPEX Offshore. Adherence to the fiction of the separate existence of SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings as entities distinct from SPEX Services, SPEX Offshore and Oag would permit an abuse of the corporate privilege, sanction fraud and promote injustice.

238.    Because this action involves assets located in Texas and transactions that took place in Texas, this action is brought pursuant to Texas law, including the Texas Business Corporations Act, TEX. BUS. ORGS. CODE § 21.001 *et seq.*

**COUNT EIGHTTEN – DENUDING THE CORPORATION**

239.    MCR repeats, realleges, and incorporates by reference each and every fact and allegation set forth above.

240.    The SPEX Defendants deliberately stripped SPEX Services and SPEX Offshore of their assets prior to dissolution. In addition, the SPEX Defendants engaged in conduct to divert company assets between and among affiliates that are within control of the SPEX Defendants, including Oag. This rendered SPEX Services and SPEX Offshore incapable of paying their debts. Therefore, the SPEX Defendants denuded the corporations and are liable for damages resulting from the MCR's claims against SPEX Services and SPEX Offshore.

**COUNT ELEVEN - CONSPIRACY**

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 79

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

241.    MCR repeats, realleges, and incorporates by reference each of the facts and allegations every fact and allegation set forth above as if fully set forth in support of its.

242.    The SPEX Defendants, through a combination of two or more persons, sought to accomplish an unlawful objective. The SPEX Defendants reached a meeting of the minds to achieve their unlawful objective and committed numerous overt acts in pursuit of their objective.

70.    The objective of the SPEX Defendants' conspiracy claim.

71.    Defendants entered into a conspiracy to misappropriate MCR's trade secrets and confidential information.

72.243.    The objective of this conspiracy was to modify, improve, and develop MCR's trade secrets and confidential information into competing tools and technology, by acquiring access to and using was to: (1) gain access to MCR's trade secrets, Licensed Technology, Licensed Patents, Licensed Products and confidential and proprietary information; (2) reverse engineer, modify, improve, and develop MCR's trade secrets and confidential and proprietary information into competing tools and products; and (c) apply for and obtain patents using MCR's trade secrets, Licensed Technology, Licensed Patents, Licensed Products and confidential and proprietary information, all without MCR's detection.

73.    Defendants and their agents and employees have aided and abetted each other in these tortious acts. As a result of their conduct, conspiracy and scheme, each Defendant is jointly and severally liable for the damages that MCR has sustained.

74.244.    As a direct and proximate result of the SPEX Defendants' conduct, Defendants injured MCR has suffered damages and the SPEX Defendants have been unjustly enriched. MCR further seeks an award of attorney's fees, interest and court costs.

Formatted: Indent: First line:  0.5"

Formatted: Indent: First line:  0.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Tab stops: 6", Right + Not at 6.5"

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

75. 245.      The SPEX Defendants' conduct was malicious and done with an intentional disregard of MCR's rights, thereby entitling MCR to an award of punitive damages.

~~COUNT NINE – ALTER EGO/PIERCING THE CORPORATE VEIL~~

~~76.     MCR incorporates by reference each of the facts and allegations set forth above as if fully set forth herein.~~

~~77.     SPEX Offshore, Ltd. and SPEX Services, Ltd.'s use of SPEX Group US LLC, SPEX Offshore (UK) Ltd., and SPEX Engineering (UK), Ltd. was a sham to perpetrate a fraud. SPEX Group US LLC, SPEX Offshore (UK) Ltd., and SPEX Engineering (UK), Ltd. were organized and operated as mere tools or business conduits of SPEX Offshore, Ltd., and SPEX Group US LLC, SPEX Offshore (UK) Ltd., and SPEX Engineering (UK), Ltd. were formed to evade SPEX Offshore, Ltd.'s and SPEX Services Ltd.'s existing legal and contractual obligations, for the direct benefit of SPEX Offshore, Ltd. Upon information and belief, Jamie Oag, the CEO or President of each of these entities simply voluntarily dissolves one SPEX entity and creates a new one time and time again for no other purpose than to escape SPEX's legal and contractual liabilities.~~

~~78.     Accordingly, SPEX Group US LLC, SPEX Offshore (UK) Ltd., and SPEX Engineering (UK), Ltd. are alter egos of SPEX Offshore, Ltd. and SPEX Services, Ltd., and the corporate fiction of SPEX Group US LLC, SPEX Offshore (UK) Ltd., and SPEX Engineering (UK), Ltd. was used for an illegitimate purpose, with the intent to deceive.~~

~~79.     Therefore, the corporate form has been used as part of an unfair device to achieve an unfair result, and holding only SPEX Offshore, Ltd. or SPEX Services, Ltd. liable would result in injustice. SPEX Group US LLC, SPEX Offshore (UK) Ltd., and SPEX Engineering (UK), Ltd.~~

PLAINTIFF'S SECOND AMENDED PETITION,
AND APPLICATION FOR TEMPORARY AND
THIRD AMENDED COMPLAINT AND APPLICATION FOR
PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER
PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 81

**Formatted:** Tab stops:  6", Right + Not at  6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

~~should be held liable for SPEX Offshore, Ltd.'s and SPEX Services, Ltd.'s, existing legal and contractual obligations set forth herein.~~

246.  The SPEX Defendants and their officers, directors, agents and employees aided and abetted each other in these tortious acts. As a result of their conduct, conspiracy and scheme, each SPEX Defendant is jointly and severally liable for MCR's damages.

**APPLICATION FOR ~~TEMPORARY RESTRAINING ORDER,~~ ~~TEMPORARY INJUNCTION,~~ PRELIMINARY AND PERMANENT INJUNCTION**

~~80.~~247.        MCR repeats, realleges, and incorporates by reference each ~~of the facts~~ and ~~allegations~~every fact and allegation set forth above ~~as if fully set forth in support of its request for temporary restraining order~~.

248.  ~~The purpose of a temporary restraining order is to preserve the status quo—the last peaceable, non-contested status~~Pursuant to Section 12.07 of the 2011 License Agreement, SPEX Services acknowledged that ~~preceded the controversy. The issuance of a restraining order will preserve the status quo in this matter. Furthermore, pursuant~~any breach of the agreement would irreparably harm MCR, that damages would be an inadequate remedy, and that injunctive relief would be appropriate to protect MCR's rights in its Licensed Technology, which includes MCR's confidential and proprietary information, trade secrets, thermite-based technology and solid combustible charge-based tools.

249.  Pursuant to Section 9.07 of the 2014 License Agreement, SPEX Offshore~~, Ltd. and Oag~~ acknowledged that any breach of the agreement would irreparably harm MCR, that damages would be an inadequate remedy, and that injunctive relief would be appropriate to protect MCR's

~~PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND~~ THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

~~REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage~~ PLAINTIFF'S

PAGE 82

**Formatted:** Indent: First line: 0.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Tab stops: 6", Right + Not at 6.5"

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

proprietary rights in its Licensed Technology.[108]  SPEX Offshore, Ltd. also waived procedural, which includes MCR's trade secrets, confidential and fairness objections to injunctive relief.[109] Furthermore, proprietary information, thermite-based technology and solid combustible charge-based tools.[110]

81.250.    MCR will suffer immediate irreparable injury if SPEX isServices, SPEX Offshore and Oag are allowed to continue using MCR's valuable confidential and proprietary information, trade secrets, and intellectual property, either directly or through their affiliates, including SPEX Group, SPEX Engineering UK, SPEX Holdings, SPEX Corporate Holdings and SPEX Offshore UK. As a result of SPEX'sthe actions of SPEX Services, SPEX Offshore and their affiliates, and Oag, MCR will be irreparably harmed due to SPEX'sSPEX Services and SPEX Offshore's breaches of the 2011 and 2014 License AgreementAgreements and its2015 Extension and their use and disclosure of MCR's valuabletrade secrets and confidential and proprietary information, trade secrets, and intellectual property.

82.251.    MCR has demonstrated through this pleading and evidencebelieves that it will likely succeed on the merits of this case and that it will suffer immediate and irreparable injury if the SPEX is not immediately enjoined from further wrongful acts. It is believed that SPEX intendsDefendants intend to continue using MCR's valuable trade secrets, confidential and proprietary information, trade secrets, and intellectual property. It is clear that the SPEX hasDefendants have no regard for the promises itand agreements SPEX Services, SPEX Offshore

---
[108] Exhibit 1 at §9.07.

[109] Exhibit 1 at §9.07.

[110] In the 2015 Extension, SPEX Offshore agreed that no other terms shall be affected except as "specifically and explicitly amended." Exhibit C. The parties did not amend the terms of Section 9.07.

and Oag made in the 2011 and 2014 License AgreementAgreements and 2015 Extension. It is also clear that the SPEX intendsDefendants intend to use theMCR's valuable trade secrets, confidential and proprietary information, trade secrets, and intellectual property it stole from MCR for SPEX'stheir own benefit.

83.   MCR respectfully requests that the Court enter a Temporary Restraining Order extended for an additional 14 days, under Texas Rule of Civil Procedure 680 for good cause due to difficulty obtaining documents and service immediately restraining SPEX and all persons or entities in active concert or participation with SPEX, to be commanded to immediately desist and refrain from:

a.   "All activities concerning and all use of MCR's Licensed Patents and Licensed Technology,"[111] as those terms are defined in Sections 1.01, 1.04, 1.05 and 1.06 of the 2014 License Agreement;

b.   "Engage or assist in any testing, modifying, reverse engineering, or development, with respect to the Licensed Patents, the Licensed Technology, MCR's Confidential Information, or the Licensed Products," as those terms are defined in Sections 1.01, 1.04, 1.05 and 1.06 of the 2014 License Agreement.[112]

c.   "Invent[ing], design[ing], develop[ing], or improv[ing] any technology or products for the perforating, consuming and/or cutting of downhole pipes and/or tubulars and equipment using all or any part of the Licensed Products or Licensed Technology or thermite-based technology substantially similar thereto";[113]

---

[111] Exhibit 1 at §7.05.

[112] Exhibit 1 at §3.03.

[113] Exhibit 1 at §2.03.

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF        REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 84

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

d.   Manufacturing, producing, marketing or selling any thermite tools, thermite-based technology or solid combustible charge-based tools related in any way to MCR's Licensed Patents, Licensed Technology, Licensed Products or Confidential Information, as those terms are defined in Sections 1.01, 1.04, 1.05 and 1.06 of the 2014 License Agreement.

84.   The Court finds that if the commission of these acts is not restrained immediately, MCR will suffer irreparable injury based on the dishonesty implicit in the theft of MCR's trade secrets and the blatant violation of numerous provisions of the 2014 License Agreement. SPEX's continued use, or threat of future use, of MCR's valuable trade secret, confidential, proprietary information will result in immediate and irreparable harm to MCR, causing damages that cannot be measured with certainty. In addition, SPEX Offshore, Ltd.'s continued breaches of the 2014 License Agreement will result in immediate and irreparable harm to MCR, causing damages that cannot be measured with certainty.

**REQUEST FOR TEMPORARY INJUNCTION AND PERMANENT INJUNCTION**

85.   MCR incorporates by reference each of the facts and allegations set forth above as if fully set forth in support of its request for a temporary and permanent injunction.

252.   ~~There~~Moreover, there is no adequate remedy at law to compensate MCR for the damage inflicted by ~~SPEX's breach of duties in the 2014 License Agreement,~~ among other unlawful acts, SPEX Services and SPEX Offshore's numerous breaches of the 2011 and 2014 License Agreements and 2015 Extension, the SPEX Defendants' misappropriation ~~or theft~~ of MCR's trade secrets and confidential ~~business~~and proprietary information, ~~or~~and the disclosure or use of such information by ~~SPEX's~~the SPEX Defendants in competition with MCR. ~~Accordingly, unless SPEX~~

Formatted: Tab stops: 6", Right + Not at 6.5"
Formatted: Font: 11 pt, Not Bold, Small caps
Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

253.    In addition to the strong language of Section 12.07 of the 2011 License Agreement and Section 9.07 of the 2014 License Agreement, SPEX has possession of MCR's trade secrets and confidential and proprietary information. And when a defendant possesses trade secrets and is in a position to use them, harm to the trade secret owner may be presumed.[114]

254.    Under circumstances like these, where the SPEX Defendants' entire corporate enterprise was built upon the theft of MCR's trade secrets and confidential and proprietary information, and where the stolen trade secrets are "inextricably intertwined" with the SPEX Defendants' business operations, an injunction prohibiting the SPEX Defendants from using those trade secrets is appropriate and warranted. There is no way for the SPEX Defendants to "unlearn" or divorce their knowledge of the misappropriated trade secrets from future business operations to which those trade secrets relate or concern.

255.    MCR is ~~temporarily~~ substantially likely to prevail on the merits of its claims. The injury to MCR greatly outweighs any injury to the SPEX Defendants that the requested injunction may cause. The balance of hardships tips strongly in favor of MCR. Finally, the injunction will not disserve the public interest. Therefore, MCR is entitled to preliminary and permanent injunctive relief against the SPEX Defendants as set forth more fully herein.

~~86.~~256.        Unless the SPEX Defendants are preliminarily and permanently enjoined ~~by this tribunal~~, MCR will be irreparably harmed. Therefore, MCR requests that after a hearing is

---

[114] *IAC, Ltd. v. Bell Helicopter Textron, Inc.*, 160 S.W.3d 191, 200 (Tex. App.—Fort Worth 2005, no pet.); *T–N–T Motorsports, Inc. v. Hennessey Motorsports*, 965 S.W.2d 18, 24 (Tex. App.—Houston [1st Dist.] 1998, no pet.) (holding that appellant possessed confidential information and was in a position to use it; thus, appellant was likely to use information to former employer's detriment). The threatened disclosure of trade secrets constitutes irreparable injury as a matter of law. *Bell Helicopter*, 160 S.W.3d at 200; *Williams v. Compressor Eng'g Corp.*, 704 S.W.2d 469, 471 (Tex. App.—Houston [14th Dist.] 1986, writ ref'd n.r.e.) (citing *FMC Corp. v. Varco Int'l, Inc.*, 677 F.2d 500, 503 (5th Cir.1982)).

~~PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND~~ THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF     ~~REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage~~ PLAINTIFF'S

PAGE 86

set, a ~~temporary~~preliminary injunction be awarded and after final trial on the merits, MCR be

awarded a permanent injunction ordering as follows:

    a.   The SPEX Defendants, and anyone in concert with ~~it~~them, shall immediately cease the development, marketing or sale of any thermite-based tools or products, solid combustible charge-based tools or products, or any tools or products related in any way to thermite-based technology or solid combustible charge-based technology;

    b.   The SPEX Defendants, and anyone in concert with them, shall immediately return and cease the use and disclosure of all MCR's trade ~~secret~~secrets, confidential~~,~~ and proprietary ~~business~~ information and all MCR's products or any documents or products related to thermite~~-~~based technology or solid combustible charge-based tools or products in their possession;

    c.   ~~SPEX, and anyone in concert with it~~The SPEX Defendants, and anyone in concert with them, shall immediately return and cease the use and disclosure of all notes, memorandums, or copies of MCR's trade secrets, confidential and proprietary information that relate to the 2011 License Agreement, or to any thermite-based technology or solid combustible charge-based tools or products developed by, or on behalf of, any of the SPEX Defendants;

    d.   The SPEX Defendants, and anyone in concert with them, shall immediately return and cease the use and disclosure of all notes, memorandums, or copies of MCR's trade ~~secret~~secrets, confidential~~,~~ and proprietary ~~business~~ information that relate to the 2014 License Agreement, or to any thermite~~-~~based technology or solid combustible charge-based tools or products developed by, or on behalf of, any of the SPEX Defendants;

    e.   The SPEX Defendants, and anyone in concert with ~~it~~them, shall not use, disclose or transfer to any third party any records, communications, documents, and/or electronic data, or records, documents, and electronic data that belongs to MCR, relates to ~~MCR's~~MCR's trade ~~secret~~secrets, confidential~~,~~ and ~~proprietary~~ ~~business~~ information or the ~~2014~~2011 License Agreement, or any thermite~~-~~based technology or solid combustible charge-based tools or products developed by, or on behalf of, the SPEX Defendants or was in any way derived from ~~MCR's~~MCR's trade ~~secret,~~secrets or confidential~~,~~ and proprietary~~business~~ information, that is in their possession, for any purpose other than its return to MCR;

    f.   ~~SPEX, and anyone in concert with it~~The SPEX Defendants, and anyone in concert with them, shall not use, disclose or transfer to any third party any records, communications, documents, and/or electronic data, or records, documents, and electronic data that belongs to MCR, relates to MCR's trade secrets or confidential and proprietary information or the 2014 License Agreement, or any thermite-based technology or solid combustible charge-based tools or products developed by, or

~~PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND~~ THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

~~REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEF~~PLAINTIFF'S

PAGE 87

Formatted: Font color: Auto

Formatted: Indent: Left: 0.75"

Formatted: No widow/orphan control

Formatted: Font color: Black

Formatted: Indent: Left: 0.5", Hanging: 0.25"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Tab stops: 6", Right + Not at 6.5"

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

on behalf of, the SPEX Defendants or was in any way derived from MCR's trade secrets or confidential and proprietary information, that is in their possession, for any purpose other than its return to MCR;

g. The SPEX Defendants, and anyone in concert with them, shall not destroy, delete, hide, secret, or otherwise remove from the jurisdiction of this Court any communications, documents, records, discs, drawings, photographs, or any other written or electronic documents or media which contains or describes any MCR records, documents, and/or electronic data, or relates to ~~MCR's~~MCR's trade ~~secret,~~secrets or confidential, and proprietary ~~business~~ information, or any records, documents, and electronic data that was derived from MCR's records, documents, and/or electronic data, or relates to ~~MCR's~~MCR's trade ~~secret,~~secrets or confidential, and proprietary ~~business~~ information;

**Formatted:** Indent: Left:  0.5", Hanging:  0.25"

h. The SPEX Defendants, and anyone in concert with ~~it~~them, shall return all documents containing MCR's trade ~~secret,~~secrets or confidential, and proprietary ~~business~~ information and all copies of such information;

**Formatted:** Indent: Left:  0.5", Hanging:  0.25"

i. The SPEX Defendants, and anyone in concert with ~~it~~them, shall destroy all electronically recorded or stored copies of MCR's trade ~~secret,~~secrets and confidential, and proprietary ~~business~~ information including such information stored on mobile phones, personal computers, or from any other device owned or controlled by the SPEX Defendants, with a statement under oath from an officer of each of the SPEX Defendants that such action has been completed;

**Formatted:** Indent: Left:  0.5", Hanging:  0.25"

j. The SPEX Defendants, and anyone in concert with ~~it~~them, shall immediately cease obtaining, downloading, using or disclosing MCR's trade secrets and confidential, and proprietary ~~business~~ information ~~and trade secrets~~;

**Formatted:** Indent: Left:  0.5", Hanging:  0.25"

k. The SPEX Defendants, and anyone in concert with ~~it~~them, shall immediately cease manufacturing any thermite technology, thermite-based tools or products or solid combustible charge-based tools or products;

**Formatted:** Indent: Left:  0.5", Hanging:  0.25"

l. The SPEX Defendants shall immediately execute all necessary documents to fully comply with the terms of the 2011 and 2014 License ~~Agreement~~Agreements and 2015 Extension.

## TOLLING OF LIMITATIONS - DISCOVERY RULE

257. MCR repeats, realleges, and incorporates by reference each and every fact and allegation set forth above.

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Tab stops: 6", Right + Not at  6.5"

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

258.    To the extent necessary, MCR affirmatively pleads the discovery rule. The SPEX Defendants' wrongful conduct was both inherently undiscoverable and objectively verifiable. As such, MCR claims are not precluded by the statute of limitations.

259.    MCR did not know, and through the exercise of due diligence, could not have known, of the SPEX Defendants' wrongful conduct giving rise to MCR's claims and damages. The matters themselves were objectively verifiable, but the failure of the SPEX Defendants to provide information such that MCR could know of the events and the injury means that limitations were tolled until such time as MCR knew or using reasonable diligence could have known of the facts giving rise to its claims. MCR is entitled to application of the discovery rule, whereby a cause of action accrues either when the injury is discovered or when facts giving rise to its claims might reasonably be discovered through reasonable diligence.

### TOLLING OF LIMITATIONS – FRAUDULENT CONCEALMENT

260.    MCR repeats, realleges, and incorporates by reference each and every fact and allegation set forth above.

261.    To the extent necessary, MCR affirmatively pleads fraudulent concealment, whereby the statute of limitations is tolled when the actions of a defendant prevent the plaintiff from discovering the facts giving rise to its claims. The SPEX Defendants knew of the facts giving rise to MCR's claims and had a duty to disclose these material facts to MCR. The SPEX Defendants knew that MCR was unaware of the facts and lacked an equal opportunity to discover such facts, but the SPEX Defendants were deliberately silent when they had a duty to speak. Instead of disclosing their wrongful conduct to MCR, the SPEX Defendants actively made misrepresentations and took measures to conceal it. Any applicable statutes of limitation have been

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 89

Formatted: Tab stops:  6", Right + Not at  6.5"

Formatted: Font: 11 pt, Not Bold, Small caps

Formatted: Font: 11 pt, Not Bold, English (United States), Small caps

tolled by the knowing and active concealment and denial of material facts known by the SPEX Defendants when they had a contractual or other duty to disclose those facts.

262.    The SPEX Defendants are estopped from asserting a statute of limitations defense due to their failure to disclose, among other things, the following: (1) Improvements made to MCR's Tools and intellectual property; (2) the development of competing tools and products; (3) the filing of the SPEX Patents; (4) breach of the 2011 and 2014 License Agreements and 2015 Extension; (5) the unauthorized use and misappropriation of MCR's trade secrets and confidential and proprietary information.

263.    The SPEX Defendants are further estopped from asserting a statute of limitations defense due to their fraud, which they committed through affirmative misrepresentations and omissions. As a result of the SPEX Defendants' fraudulent concealment, MCR was unaware and could not have known through reasonable diligence that the SPEX Defendants had committed the wrongful conduct giving rise to MCR's claims.

### CONDITIONS PRECEDENT

87.264.    All conditions precedent to MCR's claims for relief have been performed or have occurred.

[Formatted: Indent: First line: 0.5"]

### REQUEST FOR JURY TRIAL

88.265.    Pursuant to TEX. R. CIV. P. 216, MCR requests a trial by jury on all triable issues and has paid the required fee.

[Formatted: Indent: First line: 0.5"]
[Formatted: Not Small caps]

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff respectfully requests that Defendants SPEX Offshore, Ltd., SPEX Services, Ltd., SPEX Group US, LLC, SPEX Offshore (UK) Ltd., and SPEX Engineering (UK), Ltd., SPEX Group Holdings, Ltd., SPEX Corporate

[Formatted: Font: 11 pt, Not Bold, Small caps]
[Formatted: Tab stops: 6", Right + Not at 6.5"]
[Formatted: Font: 11 pt, Not Bold, English (United States), Small caps]

Holdings, Ltd., and Jamie Oag be cited to appear and answer, and that upon a final hearing of the

cause, judgment be entered for Plaintiff and against Defendants as follows:

a. ~~A temporary restraining order and temporary~~A preliminary and permanent injunction restraining Defendants from the actions described above;

b. All damages suffered by Plaintiff;

c. Specific performance;

~~c.~~d. All pre-judgment and post-judgment interest as allowed by law;

~~d.~~e. Costs of court;

~~e.~~f. Attorney's fees; and

~~f.~~g. Such other and further relief, at law or in equity, to which Plaintiff may show itself to be justly entitled.

Dated: ~~March 19~~August 30, 2018.

Respectfully submitted,

/s/ Blake L. Beckham
Blake L. Beckham
State Bar No. 02016500
Blake@beckham-group.com
Jose M. Portela
State Bar No. 90001241
Jose@beckham-group.com
THE BECKHAM GROUP P.C.
3400 Carlisle, Suite 550
Dallas, Texas 75204
214-965-9300 (tel.)
214- 965-9301 (fax)

Frank Hill
State Bar No. 09632000
fhill@hillgilstrap.com
Frank Gilstrap
State Bar No. 07964000

fgilstrap@hillgilstrap.com
Hill Gilstrap, PC
1400 W. Abram
Arlington, Texas 76013
(817) 261-2222 (tel.)
(817) 861-4685 (fax)

***ATTORNEYS FOR PLAINTIFF***
***MCR OIL TOOLS, LLC***

**Formatted:** Font: Times New Roman, Underline, Font color: Blue, French (France)

**Formatted:** Font: Italic, No underline, Small caps, Not All caps

**Formatted:** Tab stops: Not at  0" +  1.5" +  2" +  2.5" +  3" +  3.5" +  4" +  4.5" +  5" +  5.5" +  6" +  6.5"

**Formatted:** Font: 11 pt, Not Bold, Small caps

**Formatted:** Tab stops:  6", Right + Not at  6.5"

**Formatted:** Font: 11 pt, Not Bold, English (United States), Small caps

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of the above and foregoing document has been delivered to the following parties, pursuant to Fed. R. Civ. P. counsel as follows on this 19th day of March, 2018. 5(b)(2)(E), through the ECF system on August 30, 2018.

Craig D. Dillard                                  *Via: cdillard@gardere.com*
Steven Lockhart                                   *Via: slockhart@gardere.com*
Gardere Wynne Sewell LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201

*Attorneys for Defendants*


                                    /s/ Blake L. Beckham
                                    Blake L. Beckham


I:\MCR Oil Tools\SPEX\Pleadings\2nd3rd Amended Petition 031418Complaint.doc

PLAINTIFF'S SECOND AMENDED PETITION, AND APPLICATION FOR TEMPORARY AND THIRD AMENDED COMPLAINT AND APPLICATION FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

REQUEST FOR TEMPORARY RESTRAINING ORDER PERMANENT INJUNCTIVE RELIEFPage PLAINTIFF'S

PAGE 93