**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **MCR OIL TOOLS LLC,** *Plaintiff,* | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **SPEX OFFSHORE LTD., SPEX SERVICES LTD., SPEX OFFSHORE (UK) LTD., SPEX GROUP US LLC, SPEX ENGINEERING (UK) LTD., SPEX GROUP HOLDINGS, LTD., SPEX CORPORATE HOLDINGS, LTD., AND JAMIE OAG** *Defendants.* | § | **CIVIL ACTION NO. 3:18-CV-00731-M** |

# SPEX ENGINEERING (UK) LTD & SPEX GROUP US LLC'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS

Scotland-based Defendant SPEX Engineering (UK) Ltd. ("Engineering UK") and Defendant SPEX Group US LLC ("Group US") (collectively, "Movants") submit this reply in support of their Rule 8, 9(b), and 12 Motion to Dismiss and brief ("Dismissal Motion") (Doc. 126, 127) and in opposition to Plaintiff MCR Oil Tools, LLC's ("MCR")'s Response to the Dismissal Motion ("Response") (Doc. 148).

Respectfully submitted,

*/s/ Steven C. Lockhart*
**Steven C. Lockhart**
Texas State Bar No. 24036981
slockhart@foley.com
**Robert T. Slovak**
Texas State Bar No. 24013523
rslovak@foley.com
**Rachel Kingrey O'Neil**
Texas State Bar No. 24068616
rkoneil@foley.com
FOLEY GARDERE
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Tel: 214-999-4668
Fax: 214-999-3668

**Craig D. Dillard**
Texas State Bar No. 24040808
cdillard@foley.com
**Terrell Miller**
Texas State Bar No. 24046446
tmiller@foley.com
**Jason P. Sharp**
Texas State Bar No. 24039170
jsharp@foley.com
FOLEY GARDERE
1000 Louisiana, Suite 2000
Houston, Texas 77002
Tel: 713-276-5500
Fax: 713-276-5555

**Attorneys for Defendants
SPEX Engineering (UK) Ltd and SPEX Group US, LLC**

# Table of Contents


**TABLE OF AUTHORITIES** .......... III

**RECENT PROCEDURAL DEVELOPMENTS** .......... 1

**ARGUMENT & AUTHORITY** .......... 1

A. MCR'S PROCEDURAL ARGUMENTS LACK MERIT. .......... 1

1. The Dismissal Motion was timely filed. .......... 1

2. Movants have standing to assert the lack of capacity defense. .......... 1

3. The lack of capacity defense was not waived. .......... 3

B. ALL CLAIMS AGAINST THE DISSOLVED CORPORATIONS MUST BE DISMISSED. .......... 4

1. Scottish law prevents the Dissolved Corporations from being sued in this Court. .......... 4

2. Because the Dissolved Corporations lack the capacity to be sued, claims against them and derived from them must be dismissed. .......... 5

C. MCR TACITLY CONCEDES ITS FAILURE TO FOLLOW THE PLEADING RULES BECAUSE IT CANNOT CONNECT EACH CLAIM TO EACH DEFENDANT, SO MCR EMPLOYS THE MUSKETEER MANTRA: "ALL FOR ONE AND ONE FOR ALL." .......... 6

D. MCR'S "ALTER EGO/VEIL PIERCING" THEORY IS LEGALLY UNSOUND AND SHOULD BE DISMISSED. .......... 6

1. MCR's 'alter ego/veil piercing" theory cannot be applied to the Scottish Defendants. .......... 6

2. Because Scottish law does not recognize alter ego liability under these circumstances, repleading under Scottish law is futile. .......... 7

3. Even under Texas law, MCR's alter ego and veil piercing theories fail. .......... 7

E. MCR'S REMAINING CLAIMS ARE BARRED ON LEGAL AND FACTUAL GROUNDS. .......... 9

1. MCR's declaratory judgment action fails as a matter of law. .......... 9

2. MCR has not stated a TUTSA claim against Group US or Offshore UK. .......... 10

3. MCR's tortious interference and unfair competition claims are preempted by TUTSA. .......... 11

4. MCR has not pled nonconclusory factual allegations to support its claims for unfair competition, tortious interference, conspiracy, DTSA, or denuding. .......... 12

5. MCR's "discovery rule" and "fraudulent concealment" allegations do not save its TUTSA, unfair competition, tortious interference and conspiracy claims from the statutes of limitations. .......... 13

**CONCLUSION** .......... 15

# Table of Authorities

## Cases

*Allan v. Am. Family Mut. Ins. Co.*,
No. 2:13–CV–00031–RCJ–PAL,
2013 WL 1104776 (D. Nev. Mar. 12, 2013) .......... 14

*AMID, Inc. v. Medic Alert U.S. Inc.*,
241 F. Supp. 788 (S.D. Tex. 2017) .......... 16

*Architettura Inc. v. DSGN Assocs. Inc.*,
No. 3:16–CV–3021–S,
2018 WL 3428705 (N.D. Tex. July 13, 2018) .......... 11

*Autry v. Dearman*,
933 S.W.2d 182
(Tex. App.—Houston [14th Dist.] 1996, writ denied) .......... 21

*Beavers v. Metro. Life Ins. Co.*,
566 F.3d 436 (5th Cir. 2009) .......... 20, 21

*Brown v. Barrett Burke Wilson Castle Daffin & Frappier, LLP*,
No. 3:06-CV-0363-G,
2007 WL 628057 (N.D. Tex. Feb. 28, 2007) .......... 4

*CBF Industria de Gusa S/A v. Steel Base Trade AG*,
No. 14-CV-3034,
2015 WL 1191269 (S.D.N.Y. Mar. 16, 2015) .......... 6, 8

*Childs v. Haussecker*,
*974 S.W.2d 31(Tex. 1998)* .......... 19

*Coates v. Brazoria County Tex.*,
894 F. Supp. 2d 966 (S.D. Tex. 2012) .......... 7

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
918 S.W.2d 453 (Tex. 1996) .......... 19

*Dole Food Co. v. Patrickson*,
538 U.S. 468 (2003) .......... 11

*DuFour v. Be, LLC*,
No. C 9–3770 CRB,
2010 WL 431972 (N.D. Cal. Feb. 2, 2010) .......... 14

*Earnest v. Lowentritt*,
690 F2d 1198 (5th Cir. 1982) .......... 14

*Embarcadero Techs, Inc. v. Redgate Software, Inc.*,
No. 1:17–CV–444–RP,
2018 WL 315753 (W.D. Tex. Jan. 5, 2018) ..... 15, 17

*Gentry v. Credit Plan Corp. of Houston*,
528 S.W.2d 571 (Tex. 1975) ..... 12

*Gurganus v. Furniss*,
No. 3:15-CV-03964-M,
2016 WL 3745684 (N.D. Tex. July 13, 2016) ..... 9

*Hamadah v. Sannoufi*,
No. SACV1700132CJCJCGX,
2018 WL 1407045 (C.D. Cal. Jan. 25, 2018) ..... 3

*Hargrave v. Fibreboard Corp.*,
710 F.2d 1154 (5th Cir. 1983) ..... 12

*Holmes v. Chesapeake Appalachia, LLC*,
5:11CV123,
2012 WL 3647674 (N.D. W. Va. Aug. 23, 2012) ..... 14

*Hosein v. Gonzales*,
452 F.3d 401 (5th Cir. 2006) ..... 13

*Interactive Toybox, LLC v. The Walt Disney Company*,
No. 1:17–CV–1137–RP,
2018 WL 5284625 (W.D. Tex. Oct. 24, 2018) ..... 11, 12

*Johnson v. Abbey*,
737 S.W.2d 68
(Tex. App.—Houston [14th Dist.] 1987, no writ) ..... 20

*Karibjanian v. Thomas Jefferson Univ. Hosp.*,
No. 89–1891,
1989 WL 89078 (E.D. Penn. 1989) ..... 2, 3

*Licea v. Curacau Drydock Co.*,
627 Fed. App'x 343 (5th Cir. 2015) ..... 11, 12

*Marlowe v. Outdoorsman Sports Gear, LLC*,
No. 1:14CV410–LG–RHW,
2015 WL 12564946 (S.D. Miss. Apr. 1, 2015) ..... 3

*McMahan v. Greenwood*,
108 S.W.3d 467
(Tex. App.—Houston [14th Dist.] 2003, pet. denied) ..... 21

*MCW, Inc. v. Badbusinessbureau.com, L.L.C.*,
No. 3:02-CV-2727-G,
2004 WL 833595 (N.D. Tex. Apr. 19, 2004) ............ 5

*Metroplex Mailing Servs., LLC v. RR Donnelley & Sons Co.*,
410 S.W.3d 889 (Tex. App.—Dallas 2013, no pet.) ............ 13

*Nationwide Bi–Weekly Admin., Inc. v. Belo Corp.*,
512 F.3d 137 (5th Cir. 2007) ............ 5

*Parker v. Bill Melton Trucking, Inc.*,
No. 3:15–CV–2528–G,
2015 WL 6157321 (N.D. Tex. Oct. 19, 2015) ............ 3

*Ponder v. Brice & Mankoff*,
889 S.W.2d 637
(Tex. App.—Houston [14th Dist.] 1994, writ denied) ............ 21

*Richardson v. St. Philips Coll.*,
No. SA-10-CV-0447 FB NN,
2010 WL 4236933 (W.D. Tex. Oct. 20, 2010) ............ 8

*Rowan Cos., Inc. v. Griffin*,
876 F.2d 26 (5th Cir. 1989) ............ 13

*S.V. v. R.V.*,
933 S.W.2d 1(Tex.1996) ............ 19

*Seureau v. ExxonMobil Corp.*,
274 S.W.3d 206
(Tex. App.—Houston [14th Dist.] 2008, no pet.) ............ 18, 19, 20, 21

*Smith v. Bexar Cty. Sheriff's Office*,
No. SA-15-CA-8-RP,
2015 WL 3540440, (W.D. Tex. Apr. 23, 2015),
report and recommendation approved,
No. 5:15-CV-008-RP, 2015 WL 3557205 (W.D. Tex. June 4, 2015) ............ 7

*Smithfield Ham and Prods. Co., Inc. v. Portion Pac, Inc.*,
905 F. Supp. 346 (E.D. Va. 1995) ............ 16

*Steves & Sons, Inc, v. JELD-WEN, Inc.*,
No. 3:16–CV–545,
2018 WL 1796293 (E.D. Va. Apr. 16, 2018) ............ 16, 17

*Sturgis v. Suffolk Cnty. Jail*,
12-CV-5263,
2013 WL 245052 (E.D.N.Y. Jan. 22, 2013) ............ 4

*Tex. Cent. Bus. Lines Corp. v. City of Midlothian*,
669 F.3d 525 (5th Cir. 2012) .......... 13

*Tornado Bus Co. v. Bus & Coach Am. Corp.*,
No. 3:14-CV-3231-M,
2015 WL 5164731 (N.D. Tex. Sept. 2, 2015) .......... 4

*Trueblue, Inc. v. Deruby*,
No. 3:18–CV–0192–M,
2018 WL 1784523 (N.D. Tex. Apr. 13, 2018) .......... 16

*Venuto v. Jackson Cnty.*,
No. 1:13cv198LG–JCG,
2014 WL 5280963 (S.D. Miss. Oct. 15, 2014) .......... 3

*Via Net v. TIG Ins. Co.*,
211 S.W.3d 310 (Tex. 2006) .......... 20

*Wagner & Brown, Ltd. v. Horwood*,
58 S.W.3d 732 (Tex. 2001) .......... 20

*Wilmington Tr. Co. v. Hellas Telecomm., S.à.r.l.*,
No. 12-CV-8686 (JPO),
2016 WL 7339112 (S.D.N.Y. Aug. 4, 2016) .......... 5, 8

*World Broad. Sys., Inc. v. Bass*,
328 S.W.2d 863 (Tex. 1959) .......... 18

**Statutes**

Tex. Bus. Org. Code § 21.223 .......... 12, 13

Tex. Bus. Orgs. Code § 21.001 .......... 9

**Rules**

Fed. R. Civ. P. 10 .......... 7

Fed. R. Civ. P. 12 .......... 9

Fed. R. Civ. P. 8 .......... 9

Fed. R. Civ. P. 9 .......... 9

Fed. R. Evid. 201 .......... 7

**Other Authorities**

5A Charles Alan Wright & Arthur R. Miller,
FEDERAL PRACTICE AND PROCEDURE
§ 1294 (3d ed. 2004) ........ 7

*Gore Brown on Companies* 45th Edition ........ 5

## Recent Procedural Developments

On October 16, 2018, the Court determined that Scottish law applies to the determination of whether corporations organized under Scottish law have the capacity to be sued. (Doc. 146 at 5). Further, the Court decided that it will apply the general rule that liability under an alter ego or veil-piercing theory is determined by the law of the state or country in which the entity was incorporated as to each corporate party on each claim. (Doc. 146 at 6). By way of the Dismissal Motion, Movants and Offshore UK request the Court apply its holding to the claims asserted against two Scottish corporations SPEX Offshore Ltd. ("Offshore") and SPEX Services Ltd. ("Services") (collectively, the "Dissolved Corporations"). Those defendants remain named defendants though they have not been served and are legally dissolved under the law of Scotland.

## Argument & Authority

### A. MCR's procedural arguments lack merit.

MCR incorrectly argues: (1) the Dismissal Motion was untimely, (2) Movants lack standing to seek dismissal of the Dissolved Corporations, and (3) Movants waived any challenge to the Dissolved Corporations' capacity to be sued by filing successive motions.

#### *1. The Dismissal Motion was timely filed.*

Under the Court's scheduling order, "[t]he deadline to file a response to an amended pleading is 21 days after the date the amended pleading is served . . . ." (Doc. 56 at 2). MCR filed its Third Amended Complaint ("TAC") on August 29, 2018. (Doc. 113). Twenty-one days later, on September 19, 2018, Movants filed their Dismissal Motion. (Doc. 126). The Dismissal Motion was timely filed.

#### *2. Movants have standing to assert the lack of capacity defense.*

Movants have standing to challenge MCR's claims against the Dissolved Corporations for two reasons. The first is as a defense to alter ego. MCR's claims are all predicated on the theory that the Dissolved Corporations are the alter ego of Movants and other defendants. (Doc.

113 at 66, ¶ 232) (alleging "SPEX Group, SPEX Offshore UK, SPEX Engineering UK, SPEX Holdings and SPEX Corporate Holdings are alter egos of [the Dissolved Corporations] and Oag."). Likewise, MCR seeks to hold all defendants, including Movants, liable for a contract to which they are not parties based again on the alter ego theory. (Doc. 113 at 66, ¶ 233). Movants are entitled to defend against these claims because their alleged alter egos, the Dissolved Corporations, lack capacity to be sued. None of the cases MCR cites deal with the capacity to be sued, so they are inapposite.

Second, even if this Court found Movants lack standing in the ordinary sense, it can and should still rule on the motion to dismiss. *See Karibjanian v. Thomas Jefferson Univ. Hosp.*, No. 89–1891, 1989 WL 89078, at *1 (E.D. Penn. 1989). In *Karibjanian,* the district court resolved the issue of standing to raise a dissolved co-defendant's lack of capacity and dismissed the dissolved corporation. *Id.* Defendant Tennessee Gas Pipeline Co. ("TGP") moved to dismiss Tenneco Resins, Inc. ("TRI") because TRI was dissolved and no longer had capacity to be sued. *Id.* Like MCR here, the plaintiff argued that TGP lacked standing to challenge TRI's lack of capacity. *Id.* The Court disagreed finding:

> **While TGP may have lacked standing in the ordinary sense to raise the legal capacity of TRI, I find the apparent result of plaintiff's reasoning absurd: since TRI has been dissolved, no one has standing to raise its lack of capacity. A corporate phantom, TRI would haunt this litigation, unable to redeem itself and beyond the reach of mortal succor.**

*Id*. (emphasis added). The *Karibjanian* court dismissed the dissolved corporation and this Court should do likewise. *Id*.

Finally, regardless of Movants' standing, the Court may dismiss the Dissolved Corporations *sua sponte* for lack of capacity. *See Parker v. Bill Melton Trucking, Inc.,* No. 3:15–CV–2528–G, 2015 WL 6157321, at *2 (N.D. Tex. Oct. 19, 2015) (dropping party from suit for lack of capacity to be sued); *see also Marlowe v. Outdoorsman Sports Gear, LLC*, No. 1:14CV410–LG–RHW, 2015 WL 12564946, at *2 (S.D. Miss. Apr. 1, 2015) (*sua sponte* dismissal for lack of capacity); *Venuto v. Jackson Cnty*., No. 1:13cv198LG–JCG, 2014 WL 5280963, at *1–2 (S.D.

Miss. Oct. 15, 2014) (same); *Hamadah v. Sannoufi*, No. SACV1700132CJCJCGX, 2018 WL 1407045, at *7 (C.D. Cal. Jan. 25, 2018) (same); *Sturgis v. Suffolk Cnty. Jail*, 12-CV-5263, 2013 WL 245052, *2 (E.D.N.Y. Jan. 22, 2013) (same). In sum, Movants have standing to assert that all claims against the Dissolved Corporations should be dismissed, but even if they did not, this Court should still dismiss them.

***3. The lack of capacity defense was not waived.***

A defendant may move to dismiss claims raised for the first time in an amended complaint filed after an initial motion to dismiss. *Brown v. Barrett Burke Wilson Castle Daffin & Frappier, LLP*, No. 3:06-CV-0363-G, 2007 WL 628057, at *3 n.* (N.D. Tex. Feb. 28, 2007) (Fish, Chief J.). MCR's TAC alleged various new theories and claims,[1] a fact the Court likely acknowledged when it determined Movants' initial dismissal motion was moot. (Doc. 120).

Moreover, a defendant does not waive its right to raise a dispositive issue merely because it was not broached in its first Rule 12 motion. *Tornado Bus Co. v. Bus & Coach Am. Corp.*, No. 3:14-CV-3231-M, 2015 WL 5164731, at *5 (N.D. Tex. Sept. 2, 2015) (Lynn, Chief J.) (citing *MCW, Inc. v. Badbusinessbureau.com, L.L.C.*, No. 3:02-CV-2727-G, 2004 WL 833595, at *5–6 (N.D. Tex. Apr. 19, 2004) ("Together, Rules 12(g) and (h)(2) operate to exempt a Rule 12(b)(6) defense from the consolidation requirement and to preserve that defense from waiver.")).

Finally, interests of efficiency and judicial economy are served by considering the merits of Movants' arguments at this stage in the litigation like this Court has done before. *See Tornado Bus*, 2015 WL 5164731, at *5 (citing *Nationwide Bi–Weekly Admin., Inc. v. Belo Corp.*, 512 F.3d 137, 141 (5th Cir. 2007) (district court did not abuse discretion by considering successive Rule

[1] Despite its contrary assertion, MCR's TAC alleged for the first time new theories and claims. Specifically, MCR contends the Dissolved Corporations: (1) breached the contracts at issue in numerous ways (Doc. 113 at 34, ¶¶ 111–33) and continue to breach contracts (Doc. 113 at 50, ¶ 165); (2) owe MCR specific performance (Doc. 113 at 50, ¶¶ 168–70); (3) should be subject to a declaratory judgment regarding alleged improvements (Doc. 113 at 51, ¶ 173); (4) violated TUTSA (Doc. 113 at 53, ¶¶ 180–86, 193–196); (5) violated the DTSA (Doc. 113 at 61, ¶¶ 209–15); (6) committed fraud (Doc. 113 at 63, ¶¶ 221–24); and (7) are liable as alter egos (Doc. 113 at 67, ¶ 236). Under these circumstances, Movants' motion to dismiss is not successive, but properly targeted to these new claims.

12(b)(6) motion)). Thus, the Dissolved Corporations' lack of capacity to be sued is properly before this Court.

**B. All claims against the Dissolved Corporations must be dismissed.**

***1. Scottish law prevents the Dissolved Corporations from being sued in this Court.***

The Court already determined that Scottish law governs whether entities organized under Scottish law have capacity to be sued. (Doc. 146). Under Scottish law, an entity dissolved in Scotland must be treated as dissolved everywhere and as having no existence. *Gore Brown on Companies* 45th Edition;[2] *see also* *Wilmington Tr. Co. v. Hellas Telecomm., S.à.r.l.*, No. 12-CV-8686 (JPO), 2016 WL 7339112, at *5 (S.D.N.Y. Aug. 4, 2016) (dismissing all claims related to parties with no capacity to be sued under English law); *CBF Industria de Gusa S/A v. Steel Base Trade AG*, No. 14-CV-3034, 2015 WL 1191269, at *3, 5 (S.D.N.Y. Mar. 16, 2015) (dismissing all claims related to party with no capacity to be sued under Swiss law). Here, the Dissolved Corporations were dissolved under Scots law and struck off the Companies House Register.[3] Under Scottish law, the Dissolved Corporations do not exist and thus **have no capacity to be sued in this Court**.[4]

While MCR concedes this fact (albeit, somewhat cryptically (Doc. 148 at 23–25, ¶¶ 49–52)), it nonetheless says that certain "issues" should be resolved before the Court dismisses the Dissolved Corporations. Specifically: (1) whether MCR had proper notice of the dissolutions; (2) whether there was adequate consideration for the transfer or alienation of any Dissolved Corporations' assets; (3) whether the Dissolved Corporations held any property in trust for MCR; and (4) MCR's recent pursuit of "proceedings" to restore the Dissolved Corporations. (Doc. 148 at 25, ¶ 52). All of MCR's "issues" concern what **may occur** in a future Scottish proceeding to reinstate the Dissolved Corporations, but not in this Court.

---

[2] *See* (Doc. 128-1 at 5, ¶ 22).

[3] *See* (Doc. 128-1 at 4, ¶ 13); (Doc. 128-1 at 22–24, dissolution notice).

[4] *See* (Doc. 128-1 at 6, ¶ 24).

### 2. *Because the Dissolved Corporations lack the capacity to be sued, claims against them and derived from them must be dismissed.*

"Whether a party has the capacity to sue or be sued is a **legal question** that may be decided at the Rule 12 stage." *Coates v. Brazoria County Tex.*, 894 F. Supp. 2d 966, 968–969 (S.D. Tex. 2012) (emphasis added) (citing 5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1294 (3d ed. 2004)). MCR misses the relevant part of section 1294. It states that "**if the lack of capacity, authority, or legal existence issue appears on the face of the pleadings or is discernible there from, the issue can be raised by a motion to dismiss for failure to state a claim for relief**." 5A Wright & Miller, § 1294 (emphasis added). Here, the Dissolved Corporations' lack of capacity is evident from the face of the TAC. See (Doc. 113 at 18, ¶¶ 72, 80–81, 91, 95).[5]

A party lacking capacity to be sued must be dismissed and the claims against the dismissed party naturally follow. *See, e.g., Smith v. Bexar Cty. Sheriff's Office*, No. SA-15-CA-8-RP, 2015 WL 3540440, at *7 (W.D. Tex. Apr. 23, 2015), report and recommendation approved, No. 5:15-CV-008-RP, 2015 WL 3557205 (W.D. Tex. June 4, 2015) (a lack of the capacity to be sued resulted in the dismissal of all claims); *Richardson v. St. Philips Coll.*, No. SA-10-CV-0447 FB NN, 2010 WL 4236933, at *2 (W.D. Tex. Oct. 20, 2010) (because defendant lacked capacity to be sued, all claims dismissed); *Wilmington*, 2016 WL 7339112, at *5 (dismissing all claims related to parties with no capacity to be sued under English law); *CBF Industria*, 2015 WL 1191269, at *3, 5 (dismissing all claims related to party with no capacity to be sued under Swiss law). As set forth *supra* at B.1, and *infra* at D.1–2, the Dissolved Corporations do not exist and lack capacity to be sued. Thus, all claims against the Dissolved Corporations, including the derivative alter ego/veil piercing theory must be dismissed.[6]

---

[5] Additionally, a motion under Rule 12(b)(6) can be based on information that is subject to proper judicial notice. Fed. R. Civ. P. 10(c). The Court can take judicial notice of the dissolutions in the record because they are public records. *See* Fed. R. Evid. 201; *see also* *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986).

[6] For example, MCR alleges breach of contract but the contracting parties, the Dissolved Corporations, lack capacity to be sued, so the contract claim must be dismissed. Absent a breach of contract claim, there is no specific performance remedy as a matter of law. Notably, MCR did not respond to Movants' arguments for dismissal of MCR's Specific Performance claim on the grounds that it fails

**C. MCR tacitly concedes its failure to follow the pleading rules because it cannot connect each claim to each defendant, so MCR employs the Musketeer mantra: "All for one and one for all."**

MCR founds its entire case on a single pervasive notion. Namely, that MCR need not allege specific facts in support of its claims against each defendant because the conduct of one of the "SPEX Defendants" is the same as every other. Not only is this "all for one and one for all" collective conduct theory convenient, its serves as the "glue" MCR relies on to hold together all of its claims. To its credit, MCR admits relying on group pleadings, and explains it would be "difficult" and "unreasonable" to require it to connect the dots for each defendant at this stage. (Doc. 148 at 41, ¶ 96).

The trouble for MCR, of course, is that the Federal Rules require more. Indeed, MCR *must* connect the dots now and do so with meaningful nonconclusory allegations. Fed. R. Civ. P. 8, 9, and 12. *Gurganus v. Furniss*, No. 3:15-CV-03964-M, 2016 WL 3745684, at *5 (N.D. Tex. July 13, 2016) (Lynn, J.) (conclusory allegations that certain defendants "called the shots" and "operated, controlled, and managed [a facility] are insufficient to allege a plausible theory of liability. This is especially true where, as here, a plaintiff is seeking to pierce the corporate veil based on allegations of actual or constructive fraud."). As shown time-and-again below, a careful assessment of MCR's claims reveals a common problem. MCR is unable to plead its claims—as it must—without relying on threadbare conclusions directed in the groups' general direction. Because the rules of pleading forbid MCR's "glue," its allegations do not support the weight of its claims and they must be dismissed.

**D. MCR's "alter ego/veil piercing" theory is legally unsound and should be dismissed.**

***1. MCR's 'alter ego/veil piercing" theory cannot be applied to the Scottish Defendants.***

MCR asserts an "alter ego/veil piercing" theory "pursuant to Texas law." (Doc. 113 at 68, ¶ 238) (citing Tex. Bus. Orgs. Code § 21.001 *et seq.*). As MCR concedes, all defendant corporations are incorporated in Scotland except for Group US. (Doc. 113 at 1–2, ¶¶ 2–4, 6–8). Because this Court has held liability under an alter ego or veil-piercing theory is determined by

---

because performance by the Dissolved Corporations is impossible, Dissolved Corporations have no obligations to perform, and there is no mutuality of remedy.

the law of the state or country in which the entity was incorporated (Doc. 146), MCR's Texas law "alter ego/veil piercing" theory as to all defendants save for Group US must be dismissed.

### 2. *Because Scottish law does not recognize alter ego liability under these circumstances, repleading under Scottish law is futile.*

MCR cites no Scottish legal authority (and Movants know of none) that allows for corporate veil piercing to interpose the liability of one subsidiary on another.[7] Indeed, the Scottish corporate veil piercing doctrine can only be invoked where a person: (1) is under an existing legal obligation or liability, or subject to an existing legal restriction; (2) which he deliberately evades or whose enforcement he deliberately frustrates; (3) by interposing a company under his control.[8] MCR fails to state a Scots law alter ego claim because it does not allege each of these elements as to any defendant.

Further, the alter ego theory fails under Scottish law because no defendant ***can have*** an existing legal obligation, liability, or be subject to an existing legal restriction as a matter of law since the Dissolved Corporations are dissolved. Nor can Mr. Oag have any existing legal obligations, liability, or be subject to an existing legal restriction as he was not a party to the license agreements in his individual capacity. The same rational applies to the other non-signatories: Group US, Offshore UK, Engineering UK, Group Holdings, and Corporate Holdings. Thus, the alter ego/veil piercing claim for all named defendants besides Group US fails as a matter of Scots law and repleading would be futile.

### 3. *Even under Texas law, MCR's alter ego and veil piercing theories fail.*

MCR's salient alter ego allegations are unremarkable. At bottom, MCR alleges the following:

- The corporate defendants are affiliated entities that utilize similar names (i.e., the "SPEX" brand) and are currently organized under a holding company;

[7] *See* (Doc. 128-2 at 3, ¶ 9); *see also* (Doc. 86, 87, 88), which are incorporated herein by reference. It appears the few instances where Scottish law has found an alter ego involve marital estates.

[8] *See* (Doc. 128-2 at ¶ 28).

- The corporate defendants share directors and officers (including Mr. Oag), as well as headquarters, and various administrative and overhead costs and services.[9]

At best, MCR successfully alleges some degree of common ownership, shared management, and consolidated financial reporting among the defendants. (Doc. 113 at 20, 45, 48). As a matter of law, these are not the type of allegations that could support alter ego liability in Texas. "A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities." *Dole Food Co. v. Patrickson*, 538 U.S. 468 (2003); *Architettura Inc. v. DSGN Assocs. Inc.*, No. 3:16–CV–3021–S, 2018 WL 3428705, at * 3 (N.D. Tex. July 13, 2018); *Interactive Toybox, LLC v. The Walt Disney Company*, No. 1:17–CV–1137–RP, 2018 WL 5284625, at *3 (W.D. Tex. Oct. 24, 2018) ("Settled law always presumes that corporations exist as separate entities.").

"To overcome this presumption, [a party] must provide 'clear evidence' showing that 'the parent possesses control over the subsidiary to a great[er] degree than that normally associated with common ownership.'" *Architettura*, 2018 WL 3428705, at * 3. This is a high bar. *Licea v. Curacau Drydock Co.*, 627 Fed. App'x 343, 347–48 (5th Cir. 2015) ("[t]o 'fuse' the parent company and its subsidiary . . . the degree of control the parent exercises must be greater than that normally associated with common ownership and directorship; the evidence must show that the two entities cease to be separate so that the corporate fiction should be disregarded to prevent fraud or injustice."). Indeed, "[e]ven 100% stock ownership and commonality of officers and directors are not alone sufficient to establish an alter ego relationship between two corporations." *Interactive Toybox*, 2018 WL 5284625, at *3 (citing *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154, 1160 (5th Cir. 1983)) (internal quotations omitted).

"[A] subsidiary corporation will not be regarded as the alter ego of its parent merely because of stock ownership, a duplication of some or all of the directors or officers, or an exercise of the control that stock ownership gives to stockholders." *Licea*, 627 Fed. App'x at at 348 (citing *Gentry v. Credit Plan Corp. of Houston*, 528 S.W.2d 571, 573 (Tex. 1975)). "There must be a 'plus' factor, something beyond the subsidiary's presence within the bosom of a corporate family." *Id.*

---

[9] (Doc. 148 at 17–19).

None of MCR's allegations describe any "plus factor" demonstrative of control beyond the type that ordinarily accompanies a corporate family. *See id.*

Even more fatal is MCR's wholesale failure to allege the type of *actual fraud* mandated by the Texas Legislature to support any alter ego or veil piercing liability. *See* Tex. Bus. Org. Code § 21.223(a). Instead, MCR alleges a "contort" of sorts. It claims the Dissolved Corporations and Mr. Oag, albeit implausibly, made contractual representations they did not keep and calls it "actual fraud." (Doc. 148 at 35, ¶ 81). What MCR fails to appreciate is the statutory fraud requirement is not met when the word "fraud" appears on the page of a complaint. Only when a corporate owner causes the corporation to be disregarded "to be used for the purpose of perpetrating and [in fact] did perpetrate an actual fraud" may the corporate shield be let down. § 21.223(b); *Metroplex Mailing Servs., LLC v. RR Donnelley & Sons Co.*, 410 S.W.3d 889, 896–97 (Tex. App.—Dallas 2013, no pet.) ("Evidence that a company was used as an alter ego does not, by itself create an issue regarding whether it was used to commit an actual fraud on the plaintiff for the defendant's personal benefit."). Here, MCR has failed to allege any facts to demonstrate Movants or Offshore UK used their corporate existence to perpetuate an actual fraud against it.

**E. MCR's remaining claims are barred on legal and factual grounds.**

***1. MCR's declaratory judgment action fails as a matter of law.***

In its Response, MCR did not carry its burden to establish by a preponderance of the evidence any actual controversy as to the Dissolved Corporations since those companies do not exist. *See Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006). Thus, any declaration against or involving the Dissolved Corporations is hypothetical, conjectural, conditional, and based on the possibility of something that may never happen—reinstatement to the Register of Companies in Scotland. Thus, there is no "actual controversy" under Fifth Circuit precedent. *Tex. Cent. Bus. Lines Corp. v. City of Midlothian*, 669 F.3d 525, 534 (5th Cir. 2012); *Rowan Cos., Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989). Further, the "actual controversy" does not relate to a claim upon which relief *could* be granted. *Earnest v. Lowentritt*, 690 F2d 1198, 1203 (5th Cir. 1982). Plainly,

MCR's declaratory judgment against the Dissolved Corporations fails as a matter of law and should be dismissed.

Because Movants, SPEX Offshore (UK) Ltd. ("Offshore UK"), SPEX Group Holdings, Ltd. ("Group Holdings"), SPEX Corporate Holdings, Ltd. ("Corporate Holdings"), and Jamie Oag ("Oag") are not parties to any license agreements with MCR, they lack the requisite obligations, legal interest, and a sufficient stake in any MCR license agreement to permit a declaratory judgment action to proceed. *See Holmes v. Chesapeake Appalachia, LLC,* 5:11CV123, 2012 WL 3647674, at *7 (N.D. W. Va. Aug. 23, 2012) (dismissing declaratory judgment action against defendant who was not party to the contract at issue); *Allan v. Am. Family Mut. Ins. Co.*, No. 2:13–CV–00031–RCJ–PAL, 2013 WL 1104776, at *2 (D. Nev. Mar. 12, 2013) ("declaratory relief fails against Warner, because it asks the Court to adjudicate the parties' rights under an insurance contract to which Warner is not alleged to be a party."); *DuFour v. Be, LLC*, No. C 9–3770 CRB, 2010 WL 431972, at *2 (N.D. Cal. Feb. 2, 2010) (dismissing declaratory judgment claim against non-contracting defendants since they were not parties to the contracts). Thus, MCR's declaratory judgment claim against Offshore UK, Movants, Group Holdings, Corporate Holdings, and Oag fails as a matter of law and should be dismissed.

***2. MCR has not stated a TUTSA claim against Group US or Offshore UK.***

The Dismissal Motion does not, as MCR complains, selectively ignore TAC paragraphs that describe in "painstaking detail specific allegations against each SPEX Defendant (including Movants)." (Doc. 148 at 28, ¶ 62) (citing (Doc. 113 at 52, ¶¶ 176–208)). No such special paragraphs exist. In fact, nowhere in the TAC are there any nonconclusory allegations specific to Group US or Offshore UK that reflect any disclosure or use of MCR's purported trade secrets. The only paragraph dedicated to describing Group US and Offshore UK's alleged misappropriation (Doc. 113 at 56, ¶ 191) is nothing more than generalized conclusory statements. (Doc. 113 at 56, ¶ 191) (claiming defendants "breached their duties to maintain secrecy and limit their use of MCR's trade secrets. In addition, at the time SPEX Group, SPEX Offshore UK and SPEX Engineering UK acquired MCR's trade secrets, they knew or had reason

to know that SPEX Services, SPEX Offshore and Oag had acquired MCR's trade secrets through improper means."). MCR has failed its burden of pleading. This claim should therefore be dismissed as to Offshore UK and Group US.

***3. MCR's tortious interference and unfair competition claims are preempted by TUTSA.***

MCR misapprehends the nature of TUTSA preemption with its contention that *certain claims* are not preempted. (Doc. 148 at 40, ¶ 95 n.129) (misreading *Embarcadero Techs, Inc. v. Redgate Software, Inc.*, No. 1:17–CV–444–RP, 2018 WL 315753, at *4 (W.D. Tex. Jan. 5, 2018) as holding "that unfair competition claims are not preempted by TUTSA"). As this Court has previously explained, "[t]he plain language of the [TUTSA] preemption provision indicates that the law was intended to prevent *inconsistent theories of relief for the same underlying harm* by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret." *Trueblue, Inc. v. Deruby*, No. 3:18–CV–0192–M, 2018 WL 1784523, at *1 (N.D. Tex. Apr. 13, 2018) (Lynn, J) (emphasis added) (citing *Smithfield Ham and Prods. Co., Inc. v. Portion Pac, Inc.*, 905 F. Supp. 346, 348 (E.D. Va. 1995)). Thus, it is not the title of the claim that determines whether a claim is preempted; but instead, whether the facts alleged in support of the claim are the same as those underlying a TUTSA claim. *Id.*; *see also Steves & Sons, Inc, v. JELD-WEN, Inc.*, No. 3:16–CV–545, 2018 WL 1796293, at *14 (E.D. Va. Apr. 16, 2018) ("The tortious interference claims might not be preempted if they also relied on some other factual predicate besides the taking of confidential information."). Here, MCR concedes its unfair competition claim is predicated on the "theft" of MCR's information.[10] (Doc. 148 at 40, ¶ 95). MCR's unfair competition claim is thus preempted.

---

[10] MCR characterizes its allegedly stolen information as "confidential" instead of "trade secret." It does this because it contends that TUTSA preempts the common law when it comes to statutorily defined "trade secrets," but that TUTSA does nothing to displace common law claims predicated on the exact same conduct so long as the information at issue is labeled as "confidential." (Doc. 148 at 40, ¶ 95, n.129) (citing *AMID, Inc. v. Medic Alert U.S. Inc.*, 241 F. Supp. 788, 825 (S.D. Tex. 2017)). This theory, that there are TUTSA claims for theft of trade secrets running parallel with separate classes of claims for theft of "confidential" information should be rejected by this Court as it has been by the majority of thoughtful courts in Texas and elsewhere. *See Embarcadero Techs.*, 2018 WL 315753, at *3 (collecting cases and explaining "TUTSA's preemption provision encompasses all claims based on the alleged taking of confidential business information."); *Steves & Sons, Inc.*, 2018 WL 1796293, at *13 ("[N]otwithstanding its specific reference to trade secrets, *Super Starr*, is properly understood as requiring preemption both

MCR defends its tortious interference claim from preemption by saying it is predicated on "SPEX's conduct in interfering with the license agreements entered into by MCR and Spex Offshore and Spex Services." (Doc. 148 at 40, ¶ 95) (citing MCR's superseded *Second Amended Petition* (Doc. 5 at 121)). In doing so, MCR offers nothing new. If anything, the crux of each of MCR's claims is the same—the alleged disclosure and misuse of its purported trade secrets. Misappropriation is the *only* basis asserted for the tortious interference claim. And regardless, of whether the Court considers MCR's superseded state court petition, or MCR's live complaint, the *only* reference to tortious interference is in the one paragraph section that sets forth the elements of the claim. (Doc. 113 at 64, ¶¶ 226–27, TAC); (Doc. 5 at 142, ¶¶ 69–69, 2nd Am. Pet.). In no case does MCR support its claim with facts, let alone the type of unique facts that would save the claim from TUTSA preemption. MCR's tortious interference claim must therefore give way to TUTSA.

***4. MCR has not pled nonconclusory factual allegations to support its claims for unfair competition, tortious interference, conspiracy, DTSA, or denuding.***

There is no need to address, one-by-one, MCR's responses in defense of its claims for unfair competition, tortious interference, conspiracy, DTSA, and denuding because each follows the same pattern. First, MCR places the specific deficiencies Movants identified in their Dismissal Motion in scare quotes, ostensibly to discredit them. *E.g.,* (Doc. 148 at 31, ¶¶ 67, 87). Next, MCR generously characterizes the TAC's factual allegations, contending they are actually "replete with detailed factual allegations." *E.g.*, (Doc. 148 at 32, ¶ 69). Yet, as if spotlighting its deficiencies, MCR fails to cite TAC allegations actually supporting the elements of each claim. *E.g.*, (Doc. 148 at 31, ¶¶ 68–69). Finally, MCR simply restates the elements of the claims adorned with nothing more than the same generalized, conclusory, and group allegations that appear throughout the TAC.

By way of specific example, and as detailed in Dismissal Motion (Doc. 126, 127), there are no TAC allegations supporting the second and third elements required to plead a denuding

---

where a tort claim depends on the misappropriation of trade secrets alone, and where such a claim is dependent on the misappropriation of either trade secrets or confidential information.").

claim. *See* (Doc. 127 at 30). MCR does not even dispute this fact.[11] (Doc. 148 at 37, ¶¶ 85–86). Instead, in a tacit admission of the TAC deficiencies, MCR invites the Court to consider extrinsic evidence. (Doc. 148 at 37, n.115). Because MCR failed to allege facts supporting these elements in its TAC or otherwise, its denuding claim fails as a matter of law. *See World Broad. Sys., Inc. v. Bass*, 328 S.W.2d 863, 864 (Tex. 1959). Likewise, MCR simply regurgitates its generalized pleading of the elements in support of its conspiracy (148 at 37, ¶¶ 87–88), unfair competition (148 at 31, ¶¶ 67-68), and tortious interference (148 at 31, ¶¶ 69–70) claims. The DTSA claim is worse because MCR references no single allegation in the TAC to suggest Offshore UK or Group US has ever filed a patent, let alone one after May 11, 2016. (Doc. 148 at 30, ¶ 65–66). As all of these claims are predicated on nothing more than generalized conclusory statements; they must be dismissed.

***5. MCR's "discovery rule" and "fraudulent concealment" allegations do not save its TUTSA, unfair competition, tortious interference and conspiracy claims from the statutes of limitations.***

MCR's claims are barred by the applicable statutes of limitations. *See* (Doc. 127 at 31). In hopes of escaping this result, MCR asserts, affirmatively, the discovery rule and fraudulent concealment.

To assess the application a statute of limitations to the claims at bar, courts first apply the "legal injury" rule to determine the accrual of a cause of action. *Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 226 (Tex. App.—Houston [14th Dist.] 2008, no pet.). "Under the legal-injury rule, a cause of action generally accrues when a wrongful act causes some legal injury, regardless of when the plaintiff learns of the injury, and even if all resulting damages have not yet occurred." *Id.* (citing *S.V. v. R.V.*, 933 S.W.2d 1, 4 (Tex.1996)). In other words, "a cause of action generally accrues when facts come into existence which authorize a claimant to seek a judicial remedy." *Id.* (*Trail Enters., Inc. v. City of Houston,* 957 S.W.2d 625, 631 (Tex. App.—Houston [14th Dist.]

---

[11] Instead, in its own words, MCR "seeks primarily to hold Oag liable under a denuding theory" and only suggests that Offshore UK, Engineering UK and Group US "may also be held liable for denuding under MCR's alter ego theory." (Doc. 148 at 37, ¶ 86). For the reasons stated in Section D *supra*, MCR's alter ego theory also fails as does the denuding claim.

1997, pet. denied)). When the defendant's conduct produces a legal injury, however slight, the cause of action accrues and the statute of limitations begins to run. *See Childs v. Haussecker,* 974 S.W.2d 31, 41 n.7 (Tex. 1998).

"In rare cases where the nature of the injury is inherently undiscoverable and evidence of the injury is objectively verifiable, courts have recognized the discovery rule as an exception to the general accrual rule." 274 S.W.3d at 228 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996)). The discovery rule is a "very limited exception" to limitations, is "construed strictly," and only applies to matters that are properly characterized as "inherently undiscoverable." *Johnson v. Abbey*, 737 S.W.2d 68, 69–70 (Tex. App.—Houston [14th Dist.] 1987, no writ). An injury is inherently undiscoverable if, by its very nature, it is unlikely to be discovered within the prescribed limitations period *despite the exercise of due diligence. See id.* at 227. Whether an injury is inherently undiscoverable is not determined on a case-by-case basis, but instead on a categorical basis, because such an approach "brings predictability and consistency to the jurisprudence." *Id.* Thus, the focus is on whether a *type* of injury, rather than a *particular* injury, was discoverable. *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006). "An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Beavers v. Metro. Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009) (citing *Wagner & Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001)). Neither in its TAC nor its Response does MCR meet its burden to identify the reason why the type of injuries it has allegedly suffered were, on a claim-by-claim basis, undiscoverable despite its diligence. It does not do this for good reason; it cannot. The Texas Supreme Court has applied the discovery rule to a variety of categories of injury, but injury from misappropriation of trade secrets is not one of them. *Beavers*, 566 F.2d at 439–40. Moreover,"no Texas court has found a breach of contract to qualify as inherently undiscoverable." *Id.*

The same is true for MCR's fraudulent concealment defense, to a greater degree. The fraudulent-concealment doctrine is an affirmative defense to limitations that resembles equitable estoppel. *Seureau*, 274 S.W.3d at 226 (citing *Autry v. Dearman*, 933 S.W.2d 182, 192 (Tex. App.—

Houston [14th Dist.] 1996, writ denied). This doctrine estops a defendant from relying on the defense of limitations if the defendant was under a duty to make a disclosure but fraudulently concealed the existence of a cause of action from the party to whom it belongs. *Ponder v. Brice & Mankoff*, 889 S.W.2d 637, 645 (Tex. App.—Houston [14th Dist.] 1994, writ denied). To prove fraudulent concealment, the plaintiff must demonstrate that the defendant had (1) actual knowledge that a wrong occurred, (2) a duty to disclose the wrong, and (3) a fixed purpose to conceal the wrong. *McMahan v. Greenwood*, 108 S.W.3d 467, 493 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). MCR does not allege in its TAC that Movants owed it any duties of disclosure, had actual knowledge of a wrong that occurred and a fixed purpose to conceal it. It is thus of little surprise MCR abandoned in its Response any mention of fraudulent concealment. For this reason, and others, the Court should apply the statute of limitations and bar MCR's TUTSA, unfair competition, tortious interference and conspiracy claims.

## Conclusion

Movants Engineering UK and Group US, as joined by Offshore UK, respectfully request the Court dismiss all claims against them pursuant to Federal Rule of Civil Procedure 8, 9(b), and 12(b)(6), with prejudice, and that it grant all such other and further relief to which they are justly entitled.

## CERTIFICATE OF SERVICE

The undersigned Counsel hereby certifies that the foregoing has been served via ECF on October 31, 2018 to:

Blake L. Beckham
Jose M. Portela
THE BECKHAM GROUP P.C.
3400 Carlisle, Suite 550
Dallas, TX 75204
214-965-9301 (fax)

Frank Hill
Frank Gilstrap
HILL GILSTRAP, PC
1400 W. Abram
Arlington, TX 76013
817-861-4685 (fax)

**ATTORNEYS FOR PLAINTIFF,
MCR OIL TOOLS, LLC**

*/s/ Rachel Kingrey O'Neil*
Rachel Kingrey O'Neil