**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **MCR OIL TOOLS LLC,** | § | |
| *Plaintiff,* | § | |
| | § | |
| **vs.** | § | **CIVIL ACTION NO. 3:18-CV-00731-M** |
| | § | |
| **SPEX OFFSHORE LTD.,** | § | |
| **SPEX SERVICES LTD.,** | § | |
| **SPEX OFFSHORE (UK) LTD.,** | § | |
| **SPEX GROUP US LLC,** | § | |
| **SPEX ENGINEERING (UK) LTD.,** | § | |
| **SPEX GROUP HOLDINGS, LTD.,** | § | |
| **SPEX CORPORATE HOLDINGS,** | § | |
| **LTD., AND JAMIE OAG** | § | |
| *Defendants.* | § | |

**NON-RESIDENT DEFENDANTS SPEX GROUP HOLDINGS, LTD., SPEX OFFSHORE (UK) LTD., SPEX CORPORATE HOLDINGS, LTD., AND JAMIE OAG'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**

Respectfully submitted,

*/s/ Craig D. Dillard*

| | |
|---|---|
| **Steven C. Lockhart** | **Craig D. Dillard** |
| Texas State Bar No. 24036981 | Texas State Bar No. 24040808 |
| slockhart@foley.com | cdillard@foley.com |
| **Robert T. Slovak** | **Terrell Miller** |
| Texas State Bar No. 24013523 | Texas State Bar No. 24046446 |
| rslovak@foley.com | tmiller@foley.com |
| **Rachel Kingrey O'Neil** | **Jason P. Sharp** |
| Texas State Bar No. 24068616 | Texas State Bar No. 24039170 |
| rkoneil@foley.com | jsharp@foley.com |
| FOLEY GARDERE | FOLEY GARDERE |
| FOLEY & LARDNER LLP | FOLEY & LARDNER LLP |
| 2021 McKinney Avenue, Suite 1600 | 1000 Louisiana, Suite 2000 |
| Dallas, Texas 75201 | Houston, Texas 77002 |
| Tel:      214-999-4668 | Tel:      713-276-5500 |
| Fax:     214-999-3668 | Fax:     713-276-5555 |

**ATTORNEYS FOR NON-RESIDENT DEFENDANTS**

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. LEGAL STANDARDS ................................................................................ 2

III. ARGUMENT AND AUTHORITY ............................................................. 3

   A. SPEX GROUP HOLDINGS, LTD. ....................................................... 3

      1. Background ..................................................................................... 3

      2. Group Holdings Must Be Dismissed For Lack Of Personal Jurisdiction ............... 4

         a. MCR Fails To Establish Group Holdings Has The Required Minimum Contacts With Texas Or That Its Claims Arise Out Of Or Are Related To Any Of Group Holdings' Connections To Texas. ................ 4

         b. Group Holdings Committed No Tort Directed At Texas Or Otherwise. ................................................. 6

            i. *No Factual Support For Effects Based Jurisdiction* ................................. 6

            ii. *Harmful Effects Are Insufficient For Personal Jurisdiction* ................... 7

            iii. *No Intentional Communication Of False Information Targeted At Texas* .............. 7

            iv. *No Allegations Of Death Or Serious Physical Harm* ............................. 8

         c. No Jurisdiction Over Group Holdings Under Veil Piercing Theory. .......... 9

            i. *No Comprehensible Veil Piercing Theory Of Jurisdiction Against Group Holdings* ........... 9

            ii. *Scots Law Controls The Veil Piercing Analysis For Personal Jurisdiction* .............. 10

            iii. *Scotland Veil Piercing Analysis Fails* .................................. 12

         d. The Exercise Of Jurisdiction Over Group Holdings Would Offend Traditional Notions Of Fair Play And Substantial Justice. ................ 13

   B. SPEX OFFSHORE (UK) LTD. ........................................................... 15

      1. Background ................................................................................... 15

      2. Offshore UK Must Be Dismissed For Lack Of Personal Jurisdiction ................ 15

         a. MCR Fails To Establish Offshore UK Has The Required Minimum Contacts With Texas. ................................ 15

         b. Offshore UK Committed No Tort Directed At Texas Or Otherwise. ........... 16

            i. *No Factual Support For Effects Based Jurisdiction* ................................. 16

            ii. *Harmful Effects Are Insufficient For Personal Jurisdiction* ................... 17

        *iii.* No Intentional Communication Of False Information Targeted At Texas ....................................................................................... 17

        *iv.* No Allegations Of Death Or Serious Physical Harm ............................ 17

    c.   No Jurisdiction Over Offshore UK Under Veil Piercing Theory. .............. 18

        *i.* No Comprehensible Veil Piercing Theory Of Jurisdiction Against Offshore UK .................................................................... 18

        *ii.* Scots Law Controls The Veil Piercing Analysis For Personal Jurisdiction .................................................................. 18

        *iii.* Scotland Veil Piercing Analysis Fails .................................................. 19

    d.   The Exercise Of Jurisdiction Over Offshore UK Would Offend Traditional Notions Of Fair Play And Substantial Justice. ......................... 19

**C.    SPEX CORPORATE HOLDINGS, LTD.** ................................................................. 20

   1.   Background ............................................................................................... 20

   2.   Corporate Must Be Dismissed For Lack Of Personal Jurisdiction ...................... 21

    a.   Plaintiff Fails to Establish Its Claims Arise Out Of Or Are Related To Corporate's Connections to Texas. ....................................................... 21

        *i.* TUTSA / DTSA ................................................................................ 22

        *ii.* Unfair Competition ....................................................................... 23

        *iii.* Tortious Interference ..................................................................... 24

        *iv.* Denuding The Corporation .................................................................. 25

    b.   Corporate Committed No Tort Directed At Texas Or Otherwise. .............. 25

        *i.* No Factual Support For Effects Based Jurisdiction ............................. 25

        *ii.* Harmful Effects Are Insufficient For Personal Jurisdiction ................. 26

        *iii.* No Intentional Communication Of False Information Targeted At Texas ....................................................................................... 26

        *iv.* No Allegations Of Death Or Serious Physical Harm ............................ 26

    c.   No Jurisdiction Over Corporate Under Veil Piercing Theory. ................... 26

        *i.* No Comprehensible Veil Piercing Theory Of Jurisdiction Against Corporate ...................................................................... 26

        *ii.* Scots Law Controls The Veil Piercing Analysis For Personal Jurisdiction .................................................................. 27

        *iii.* Scotland Veil Piercing Analysis Fails .................................................. 27

    d.   The Exercise Of Jurisdiction Over Corporate Would Offend Traditional Notions Of Fair Play And Substantial Justice. ......................... 28

**D.    JAMIE OAG** ................................................................................................... 28

   1.   Background ............................................................................................... 28

2.    Oag Must Be Dismissed For Lack Of Personal Jurisdiction ............................... 30

    a.    Plaintiff Fails To Establish Its Claims Arise Out Of Or Are Related To Oag's Individual Connections To Texas. .............................................. 30

        i.   *TUTSA / DTSA* ................................................................................. 31

        ii.  *Unfair Competition* ........................................................................ 31

        iii. *Tortious Interference* ..................................................................... 32

        iv. *Fraud And Fraudulent Inducement* ...................................... 32

        v.  *Denuding The Corporation* ........................................................ 34

    b.    Oag Committed No Tort Directed At Texas Or Otherwise. ....................... 34

        i.   *No Factual Support For Effects Based Jurisdiction* ............................. 34

        ii.  *Harmful Effects Are Insufficient For Personal Jurisdiction* ................. 35

        iii. *No Intentional Communication Of False Information Targeted At Texas* .................................................................................... 35

        iv. *No Allegations Of Death Or Serious Physical Harm*............................ 35

    c.    No Jurisdiction Over Oag Under Veil Piercing Theory. .............................. 35

        i.   *Scotland Veil Piercing Analysis Fails* ................................................... 35

    d.    The Exercise Of Jurisdiction Over Oag Would Offend Traditional Notions Of Fair Play And Substantial Justice. .............................................. 36

**IV. CONCLUSION** ................................................................................................. 36

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AllChem Performance Prod., Inc. v. Aqualine Warehouse, LLC*,
   878 F. Supp.2d 779 (S.D. Tex. 2012) ...................................................................... 9, 17

*Allred v. Moore & Peterson*,
   117 F.3d 278 (5th Cir. 1997) ..................................................................................... 7

*Asahi Metal Indus. Co. v. Superior Court*,
   480 U.S. 102 (1987) ............................................................................................ 13, 14

*Breckenridge Enters., Inc. v. Avio Alternatives, LLC*,
   No. 3:08-cv-1782-M, 2009 WL 1469808 (N.D. Tex. May 27, 2009) (Lynn,
   C.J.) ......................................................... 2, 6, 7, 17, 18, 21, 26, 31, 33, 34

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
   137 S. Ct. 1773 (2017) ........................................................................................ 2, 33

*Bullion v. Gillespie*,
   895 F.2d 213 (5th Cir. 1990) ..................................................................................... 3

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462, 475 (1985) .................................................................................... 24, 33

*Cable Elecs., Inc. v. N. Am. Cable Equip., Inc.*,
   2010 WL 1541504 (N.D.Tex.2010) ......................................................................... 23

*Calder v. Jones*,
   465 U.S. 783 (1984) ......................................................................................... 7, 8, 9

*CMMC v. Salinas*,
   929 S.W.2d 435 (Tex. 1996) ............................................................................... 23, 32

*Cunningham v. CBC Conglomerate LLC*,
   No. 417CV00793ALMCAN, 2018 WL 4039729 (E.D. Tex. July 27, 2018) .............................. 5

*Davaco, Inc. v. AZ3, Inc.*,
   No. 3:07-CV-803, 2008 WL 2243382 (N.D. Tex. May 30, 2008) ............................. 10

*Diebold Election Sys., Inc. v. AI Tech., Inc.*,
   562 F. Supp.2d 866 (E.D. Tex. 2008) ....................................................................... 7

*Dodd v. Savino*,
   426 S.W.3d 275 (Tex. App.–Houston [14th Dist.] 2014, no pet.) ..................... 6, 16, 31

*Fairchild v. Barot*,
    946 F. Supp. 2d 573 (N.D. Tex. 2013) (Lynn, C.J.) ............................................................ 24, 25

*Fiduciary Network, LLC v. Buehler*,
    No. 3:15-CV-0808, 2015 WL 2165953 (N.D. Tex. May 8, 2015) ................................. 9, 11

*First Metro. Church of Hous. v. Genesis Grp.*,
    616 F. App'x 148 (5th Cir. 2015) ............................................................................................ 6

*Francis v. Beaudry*,
    733 S.W.2d 331 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) ......................................... 25

*Guidry v. U.S. Tobacco Co., Inc.*,
    188 F.3d 619 (5th Cir. 1999) ................................................................................. 7, 8, 9, 17

*Gurganus v. Furniss*,
    No. 3:15-cv-03964-M, 2016 WL 3745684 (N.D. Tex. July 13, 2016) (Lynn, J.) ............. 9, 10, 11

*Holt Oil & Gas Corp. v. Harvey*,
    801 F.2d 773 (5th Cir.1986) ................................................................................................. 33

*House v. 22 Texas Servs., Inc.*,
    60 F. Supp.2d 602 (S.D. Tex. 1999) .................................................................................... 11

*Ingenious Investments, Inc. v. Bombart*,
    No. 4:05-CV-535-A, 2006 WL 1582080 (N.D. Tex. Jan. 20, 2006) .......................... 10

*Kisiel v. RAS Sec. Corp.*,
    No. 3:01-CV-294-X, 2001 WL 912425 (N.D. Tex. Aug. 9, 2001) ............................. 11

*Lemann v. Midwest Recovery Fund, LLC*,
    No. CV 15-3329, 2016 WL 6092539 (E.D. La. Oct. 19, 2016) .................................... 5

*Level 10 Promotions, LLC v. Wilkes-Barre Motors, Inc.*,
    No. CIVA 07-6480, 2008 WL 2781534 (E.D. La. July 14, 2008) ......................... 9, 17

*Lewis v. Fresne*,
    252 F.3d 352 (5th Cir. 2001) ................................................................................................... 3

*McFadin v. Gerber*,
    587 F.3d 753 (5th Cir. 2009) ........................................................................... 6, 7, 26, 34

*Michiana Easy Livin' Country, Inc. v. Holten*,
    168 S.W.3d 777 (Tex. 2005) ......................................................................................... 23, 32

*Moncrief Oil Intern., 332 S.W.3d at 13–14 (Tex. App.—Fort Worth 2010, pet. granted)* ................................................................................................................................. 24

*Moncrief Oil Intl., Inc. v. OAO Gazprom*,
    481 F.3d 309 (5th Cir. 2007) ................................................................................................... 7

*Olympia Capital Assoc., L.P. v. Jackson*,
  247 S.W.3d 399 (Tex. App.–Dallas 2008, no pet.) ...................................................... 33

*Panda Brandywine Corp. v. Potomac Elec. Power Co.*,
  253 F.3d 865 (5th Cir. 2001) ....................................................................................... 2

*In re Parkcentral Global Litigation*,
  No. 3:09–CV–0765–M, 2010 WL 3119403 (N.D. Tex. Aug. 5, 2010) (Lynn, J.) ..................... 10

*Patin v. Thoroughbred Power Boats Inc.*,
  294 F.3d 640 (5th Cir. 2002) ....................................................................................... 11

*Peavy v. Striebel*,
  No. CIV.A. G-06-443, 2007 WL 528184 (S.D. Tex. Feb. 14, 2007) ........................................ 11

*Prest v Petrodel Resources Ltd.*,
  [2013] ....................................................................................................................... 12

*Prudential Ins. Co. v. Fin. Review Servs., Inc*,
  29 S.W.3d 74 (Tex. 2000) ............................................................................................ 24

*S-Line LLC v. B2B Supply*,
  No. 3:14-CV-2284-M, 2015 WL 4745069 (N.D. Tex. Aug. 10, 2015) (Lynn, J.) ..................... 11

*Shopf v. Griggers*,
  No. CV 17-10958, 2018 WL 1453214 (E.D. La. Mar. 23, 2018) ............................................. 8

*Stroman Realty, Inc. v. Wercinski*,
  513 F.3d 476 (5th Cir. 2008) ....................................................................................... 13

*Tilton v. Marshall*,
  925 S.W.2d 672 (Tex. 1996) ............................................................................... 6, 16, 31

*U.S. v. First Nat'l City Bank*,
  379 U.S. 378 (1965) ................................................................................................... 13

*Walden v. Fiore*,
  571 U.S. 277 (2014) ............................................................................................. 7, 8, 24

*Wellogix, Inc. v. Accenture, L.L.P.*,
  716 F.3d 867 (5th Cir. 2013) ....................................................................................... 22

*Western Oil and Gas JV*,
  91 Fed. App'x ........................................................................................................... 16

*Western Oil and Gas JV, Inc. v. Griffiths*,
  91 Fed. App'x 901 (5th Cir.2003) .................................................................................. 6

*Wolf v. Summers-Wood, L.P.*,
  214 S.W.3d 783 (Tex. App.—Dallas 2007, no pet.) ......................................................... 34

*Wolsey v. Tactical Med. Sols., LLC*,
   No. CV WDQ-08-0546, 2008 WL 11363373 (D. Md. July 2, 2008) ...................................23, 32

*World Broadcasting Systems, Inc. v. Bass*,
   328 S.W.2d 863 (Tex. 1959) ......................................................................................................25

**Statutes**

18 U.S.C. § 1836(b)(1) ..................................................................................................................22

Defend Trade Secrets Act ("DTSA")...............................................................................6, 16, 22, 31

Tex. Civ. Prac. & Rem. Code § 134A.002 ....................................................................................22

Texas Uniform Trade Secrets Act ("TUTSA")................................................................6, 16, 22, 31

**Other Authorities**

*Adams v Cape Industries plc,* [1990] Ch 433.................................................................................12

Fed. R. Civ. P. 8 ...........................................................................................................................10

Fed. R. Civ. P. 12(b)(2) ....................................................................................................1, 2, 3, 36

Non-resident Scottish-based Defendants SPEX Group Holdings, Ltd., SPEX Offshore (UK) Ltd., SPEX Corporate Holdings, Ltd., and Scottish citizen Jamie Oag (collectively, "Non-resident Defendants") respectfully request that the Court dismiss all claims asserted against them by Plaintiff MCR Oil Tools, LLC ("MCR") in its Third Amended Complaint (the "TAC")[1] for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## I.      INTRODUCTION

For the reasons detailed in their Motion to Dismiss, and set forth below, this Court lacks personal jurisdiction over the Non-resident Defendants. MCR does not attempt to suggest that this Court has general jurisdiction over the Non-resident Defendants because they do not have the continuous and systematic contacts to essentially render them at home in Texas. Thus, settled principles regarding specific jurisdiction control this case. However, MCR fails to establish the minimum contacts with Texas in order for this Court to exercise personal jurisdiction over the Non-resident Defendants and MCR's claims do not arise out of or are related to the Non-resident Defendants' connections to Texas, if any. Unrebutted sworn testimony conclusively establishes that no personal jurisdiction exists over the Non-resident Defendants. Also, MCR makes no effort to establish specific jurisdiction for each claim alleged as it must do and its argument for effects-based tort jurisdiction is without merit. Further, MCR's attempt to bootstrap personal jurisdiction over the Non-resident Defendants based on a piercing the corporate veil theory fails under applicable Scots law and because MCR cannot meet its evidentiary burden. Finally, even if the Court finds that MCR has made a *prima facie* showing that the Non-resident Defendants are subject to personal jurisdiction (which it has not), it would be unreasonable for the Court to exercise personal jurisdiction over the Non-resident Defendants because it would offend traditional notions of fair play and substantial

---

[1] [Doc. 113].

justice. Thus, the Court should dismiss all claims asserted against the Non-resident Defendants in TAC for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

## II.      LEGAL STANDARDS

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident defendant if the long-arm statute of the forum confers personal jurisdiction over that defendant, and the exercise of such jurisdiction by the forum is consistent with due process. *Breckenridge Enters., Inc. v. Avio Alternatives*, *LLC*, No. 3:08-cv-1782-M, 2009 WL 1469808, at *2 (N.D. Tex. May 27, 2009) (Lynn, C.J.) (internal citations omitted). The Texas long-arm statute reaches to the limits of due process, and therefore a court need only determine whether the exercise of personal jurisdiction over the moving defendant is consistent with due process. *Id*. The due process clause permits the exercise of personal jurisdiction over a nonresident defendant when (1) that defendant has purposefully availed itself of the benefits and protections of the forum state by establishing "minimum contacts" with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial justice." *Id*. (citing *Panda Brandywine Corp. v. Potomac Elec. Power Co*., 253 F.3d 865, 867 (5th Cir. 2001)).

For specific jurisdiction to exist, the plaintiff's claim must arise out of or be related to the defendant's connections to the state. *Breckenridge*, *supra*. For this reason, "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1780 (2017). When, as here, no such connection exists, specific jurisdiction is lacking. *Id*. at 1781. In determining whether specific jurisdiction exists, the Court must conduct the minimum contacts analysis separately for each cause of action. *Breckenridge*, *supra*. The Court is not required to credit conclusory allegations even if they are uncontroverted. *Panda Brandywine*, 253 F.3d at 869.

The Court must dismiss an action when it lacks personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). When a non-resident defendant moves to dismiss for lack of personal jurisdiction, the resident plaintiff has the burden of establishing a *prima facie* showing that the defendant is subject to personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001); *see also Bullion v. Gillespie*, 895 F.2d 213, 216–17 (5th Cir. 1990).

## III.   ARGUMENT AND AUTHORITY

## A.   SPEX GROUP HOLDINGS, LTD.

### 1.   Background

Non-resident Defendant SPEX Group Holdings Ltd. ("Group Holdings") is a private company limited by shares incorporated and domiciled in Scotland.[2] The registered office is Blackwood House, Union Grove Lane, Aberdeen, AB10 6XU.[3] Group Holdings' registration number is SC528327 and it was incorporated on March 1, 2016.[4]

Group Holdings is a holding company with no activities other than providing management support and other support services to its subsidiaries.[5] Group Holdings owns 100% of the ordinary share capital of four subsidiaries: (1) SPEX Engineering (UK) Ltd., (2) SPEX Engineering Ltd., (3) SPEX Corporate Holdings Ltd., and (4) SPEX Offshore (UK) Ltd.[6] Group Holdings is not a shareholder in SPEX Offshore Ltd. ("Offshore") or SPEX Services Ltd. ("Services") (and those corporations have been dissolved and are no longer in existence).[7]

Group Holdings has never entered any contract with a customer (it has no customers) and its only suppliers are generally UK-based companies that provide facilities or other support services.[8] Group Holdings maintains no offices, headquarters, property, records, or bank accounts in Texas or

---

[2] Exhibit **1** – Declaration of Ryan Strachan, ¶ 4, App.001.
[3] *Id.*
[4] *Id.*
[5] *Id.*, ¶ 5, App.001.
[6] *Id.*
[7] *Id.*, ¶ 6, App.001.
[8] *Id.*, ¶ 7, App.002.

any other location in the United States.[9] Group Holdings does not maintain a designated agent for service in Texas.[10] The employees, officers and directors of Group Holdings have never traveled to Texas to conduct business on behalf of Group Holdings.[11] Group Holdings has never contracted with MCR.[12] Group Holdings has never sent agents to Texas to test and develop competing tools or products.[13] While Group Holdings engaged in a letter of intent to explore the possibility of entering into a business arrangement with Halliburton Energy Services, Inc. ("Halliburton") which was governed by Texas law, no transaction or business arrangement was ever consummated.[14] Under the letter of intent, the proposed transaction was to be governed by Scots law.[15]

> **2.      Group Holdings Must Be Dismissed For Lack Of Personal Jurisdiction**
>
> > **a.      MCR Fails To Establish Group Holdings Has The Required Minimum Contacts With Texas Or That Its Claims Arise Out Of Or Are Related To Any Of Group Holdings' Connections To Texas.**

First, MCR's bald allegations that Group Holdings "engaged in business in Texas, directed substantial communications to MCR representatives in Texas, and sent agents to Texas to test and develop competing tools or products"[16] defies reality. These foregoing allegations are conclusory, directly contradicted[17], and there is no conflicting evidence otherwise.[18]

Second, while Group Holdings is mentioned in the TAC, many mentions fail to allege ***any acts occurred in Texas***. Moreover, these mere mentions are conclusory, directly contradicted[19], and there is no conflicting evidence otherwise.[20]

---

[9] *Id.*, ¶ 8, App.002.
[10] *Id.*
[11] *Id.*, ¶ 9, App.002.
[12] *Id.*, ¶¶ 7, App.002.
[13] *Id.*, ¶ 9, App.002.
[14] *Id.*, ¶ 10, App.002.
[15] *Id.*
[16] [Doc. 113 at 2–3, 5 ¶¶ 7, 14].
[17] Exhibit **1**, ¶¶ 7-9. 11, App.002.
[18] Exhibit **8** - Insufficient Minimum Contacts Chart For Group Holdings, at rows1-3, 17-19, 34, App.546-552.
[19] Exhibit **1**, ¶¶ 7-9. 11, App.002.
[20] Exhibit **8,** at rows 4-16, 20-33, 35-36, App.546-552.

Third, the substance of the TAC is that all defendants breached the license agreements by publishing patents. However, publishing international patents has no connection to acts performed in Texas, nor is publishing international patents directed at Texas.

Fourth, MCR's aggregation of all defendants collectively fails to establish personal jurisdiction over Group Holdings.[21] MCR cannot satisfy the constitutional requirement that personal jurisdiction be established over every defendant by simply resting on the use of the collective term, "SPEX Defendants," in the TAC. *See Cunningham v. CBC Conglomerate LLC,* No. 417CV00793ALMCAN, 2018 WL 4039729, at *6 (E.D. Tex. July 27, 2018); *Lemann v. Midwest Recovery Fund, LLC*, No. CV 15-3329, 2016 WL 6092539, at *3–4 (E.D. La. Oct. 19, 2016) ("it is not enough to simply rest on the use of the collective term, 'Defendants,' in the allegations.") (quoting *Lemann v. Midwest Recovery Fund, LLC*, CV 15-3329, 2015 WL 7306442, at *5 (E.D. La. Nov. 19, 2015) (citing *Rush v. Savchuk*, 444 U.S. 320, 332-22 (1980) (holding that aggregating the defendant into a collective of "defending parties" did not satisfy federal due process))). Plainly, MCR fails to demonstrate any individualized conduct by Group Holdings in Texas. Instead, MCR lumps all the named defendants—corporate and individual together—without any allegations of individualized conduct. Jurisdiction over Group Holdings cannot be predicated upon aggregate factual allegations concerning multiple defendants. Further, these "collective" allegations are conclusory, directly contradicted[22], and there is no conflicting evidence otherwise.[23]

Fifth, facts alleged in the TAC do not establish jurisdiction as to Group Holdings because MCR's claims do not arise out of or are not related to the connections alleged therein. While Group Holdings communicated via e-mail with MCR in 2016, those communications regarded ***only*** the return of the tools and stocks to MCR (akin to a third-party logistics provider), none of which form

---

[21] Exhibit **8,** at rows 17-24, App.548-550.
[22] Exhibit **1**, ¶¶ 7-9. 11, App.002.
[23] Exhibit **8,** at rows 17-24, App.548-550.

the basis of any claims[24] against Group Holdings in this lawsuit.[25] Communications related to contract performance are not enough to show specific personal jurisdiction. *First Metro. Church of Hous. v. Genesis Grp.*, 616 F. App'x 148, 149 (5th Cir. 2015) ("Negotiating and closing a contract with a forum resident by sending communications into the forum state is insufficient to establish specific personal jurisdiction for a breach of contract claim, at least if the contract does not contemplate a long-term relationship with continuing obligations and wide-reaching contacts.").

For the reasons stated above, MCR's first theory for personal jurisdiction fails because MCR does not establish Group Holdings' minimum contacts with Texas or MCR's claims do not arise out of or are related to Group Holdings' minor connections to Texas.

> **b.      Group Holdings Committed No Tort Directed At Texas Or Otherwise.**

MCR's claim that this Court can exercise specific jurisdiction over Group Holdings because it "committed and continue[s] to commit intentional torts expressly aimed at Texas, causing serious harm to MCR in Texas"[26] is insufficient and without merit for a number of reasons.

> ***i.      No Factual Support For Effects Based Jurisdiction***

The rote statement that Group Holdings engaged in "intentional torts outside of but expressly aimed at Texas" is unsupported by the TAC, which is devoid of any non-conclusory allegations sufficient to meet MCR's *prima facie* burden to establish specific jurisdiction, much less on a claim-by-claim basis as MCR must. *See McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009); *Breckenridge,* 2009 WL 1469808, at *2 (requiring a separate minimum contacts analysis for each

---

[24] MCR alleges the following claims against Group Holdings: (1) violations of the Texas Uniform Trade Secrets Act ("TUTSA"); (2) violations of the Defend Trade Secrets Act ("DTSA"); (3) Unfair Competition; (4) Tortious Interference; and (5) Denuding the Corporation. Alter ego/piercing the corporate veil and conspiracy are derivative claims, not direct claims. *See Western Oil and Gas JV, Inc. v. Griffiths*, 91 Fed. App'x 901, 903–04 (5th Cir.2003) ("[A]lter ego ... is an equitable remedy and not a cause of action. Absent a cognizable cause of action this remedy is unavailable."); *see also Dodd v. Savino*, 426 S.W.3d 275, 291 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("Alter ego, or piercing the corporate veil, is not an independent cause of action, but is instead a means of imposing liability for an underlying cause of action"); *see Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996) ("conspiracy … might be called a derivative tort").; *see also* Exhibit **8**.

[25] *See* Exhibit **1,** ¶ 10, App.002.

[26] [Doc. 113, 5 ¶¶ 7, 14].

cause of action). But even if MCR's allegations were sufficient to state a tort claim against Group Holdings at all (which they are not), there are no non-conclusory allegations in the TAC to suggest that any acts *occurred in Texas*.

### ii.      Harmful Effects Are Insufficient For Personal Jurisdiction

The Fifth Circuit has pointed out that "the effects test is not a substitute for a nonresident's minimum contacts" in the Due Process analysis and is rarely appropriate. *Allred v. Moore & Peterson*, 117 F.3d 278, 286 (5th Cir. 1997); *Moncrief Oil Intl., Inc. v. OAO Gazprom*, 481 F.3d 309, 314 (5th Cir. 2007). Thus, it is of no import that the TAC allegations can be read to say that MCR felt the purported harm in Texas because "harmful effects felt within Texas are insufficient for the assertion of personal jurisdiction over an intentional tort claim" in the Fifth Circuit. *See Breckenridge*, 2009 WL 1469808, at *9 (internal citation omitted). Such effects-based jurisdiction is rarely appropriate. *See Diebold Election Sys., Inc. v. AI Tech., Inc.*, 562 F. Supp.2d 866, 875 (E.D. Tex. 2008) (citing *Moncrief, supra*). The Fifth Circuit has held that "[f]oreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum." *McFadin*, 587 F.3d at 762. "Otherwise, a defendant would be susceptible to service in any state in which a plaintiff alleged a legally cognizable injury without regard to the defendant's contacts with the forum." *Diebold, supra*.

### iii.      No Intentional Communication Of False Information Targeted At Texas

Unlike *Calder* (libel) and *Guidry* (fraud and misrepresentation), here there is no evidence or non-conclusory allegations that Group Holdings' actions were specifically targeted at Texas. Moreover, *Guidry* pre-dates *Walden v. Fiore*, 571 U.S. 277 (2014), which emphasizes that the Court should focus on the defendant's contacts with the forum that the defendant himself creates, not the defendant's contacts with persons who reside in the forum.

In *Calder*, the "effects" caused by the defendants' article—*i.e.*, the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to

California, not just to a plaintiff who lived there. *Calder v. Jones*, 465 U.S. 783 (1984). That connection, combined with facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction. *Id.* In *Guidry*, the tobacco manufacturer defendants intentionally communicated false information to plaintiffs in Louisiana concerning tobacco products being sold by them in the state via articles or ads in national publications sold in Louisiana and national network television programs broadcast in Louisiana. *Guidry v. U.S. Tobacco Co., Inc.*, 188 F.3d 619, 626 (5th Cir. 1999).

The holdings of *Calder* and *Guidry* demonstrate that ***the jurisdictional hook takes hold when the communication of false information into the forum itself causes injury to the plaintiff in the forum***. *Shopf v. Griggers*, No. CV 17-10958, 2018 WL 1453214, at *3 (E.D. La. Mar. 23, 2018) (plaintiff was not similarly situated to the plaintiffs in *Calder* and *Guidry*) (emphasis added). In such a situation, some part of the tortious conduct upon which the tort cause of action is based has occurred in the forum even though the tortfeasor was not physically present in the forum when he launched his tortious communications. *Walden*, 571 U.S. at 288.

MCR is not similarly situated to the plaintiffs in *Calder* and *Guidry* whose tort injuries arose out of the communication itself that was transmitted to their forum. Again, while Group Holdings communicated with MCR via e-mail, those communications regarded only the return of tools and stocks to MCR, none of which form the basis of any claims or injury in this lawsuit. Moreover, there is no evidence nor allegation that those fortuitous communications contained false information, and MCR makes no such argument in support of specific personal jurisdiction. Regardless, there is no conflicting evidence otherwise.

### iv.    *No Allegations Of Death Or Serious Physical Harm*

Unlike *Calder* and *Guidry*, here there is no evidence nor non-conclusory allegations that the harm MCR has allegedly suffered in Texas is the type of harm or rises to the level of harm *Calder*

and *Guidry* found to support specific jurisdiction. In *Guidry*, the Fifth Circuit expanded the reach of the *Calder* effects test beyond libel to intentional and unintentional torts that caused **death or serious physical harm** to the plaintiff in the forum state. *Guidry*, 188 F.3d at 629. The Fifth Circuit noted that the defendants were not sued for "mere untargeted negligence endangering only economic or reputational interests," but instead with acts that would potentially have a "devastating physically harmful impact" on the plaintiffs. *Id.* at 630.

Here, MCR fails to allege that Group Holdings' alleged tortious actions caused serious physical injury or death. *AllChem Performance Prod., Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp.2d 779, 793 (S.D. Tex. 2012) (*Guidry* inapplicable where plaintiff failed to allege that Defendants' actions caused serious physical injury or death); *Level 10 Promotions, LLC v. Wilkes-Barre Motors, Inc.*, No. CIVA 07-6480, 2008 WL 2781534, at *5 (E.D. La. July 14, 2008) (*Guidry* did not apply where the harm caused was solely monetary, rather than physical). Thus, MCR's second theory for personal jurisdiction fails.

### c.   No Jurisdiction Over Group Holdings Under Veil Piercing Theory.

Unable to establish grounds for personal jurisdiction over Group Holdings directly, MCR asks the Court to disregard corporate formalities and impute the conduct of two separate, non-existent, legal entities and one natural person to Group Holdings to bridge the gaps in its pleadings. MCR's attempt to establish jurisdiction over Group Holdings under a piercing the corporate veil theory fails.

### i.   *No Comprehensible Veil Piercing Theory Of Jurisdiction Against Group Holdings*

It is MCR's burden to plead a cognizable veil piercing theory. *Gurganus v. Furniss*, No. 3:15-cv-03964-M, 2016 WL 3745684, at *5 (N.D. Tex. July 13, 2016) (Lynn, J.); *see Fiduciary Network, LLC v. Buehler*, No. 3:15-CV-0808, 2015 WL 2165953, at *4 (N.D. Tex. May 8, 2015). MCR's veil piercing allegations are all over the map. Specifically, MCR contends: (a) Group Holdings is the

"alter ego" of Offshore, Services, and Oag[27]; (b) that personal jurisdiction exists over Group Holdings because the contacts of its subsidiary are imputed to Group Holdings as its alter ego[28]; (c) Group Holdings was organized and operated by Services, Offshore and Oag as mere tools or business conduits, or alter egos of themselves[29]; and (d) Group Holdings is somehow controlled by other, unspecified, people or entities[30].

MCR makes plain it cannot articulate a single cogent legal basis to pierce the corporate veil of Group Holdings or to impute to it the acts of others. By pleading these numerous, conclusory grounds for disregarding a corporate existence, MCR has created guesswork for the Court and fails to meet its burden. *Gurganus*, 2016 WL 3745684, at *5 (a plaintiff fails to meet the requirements of Fed. R. Civ. Pro. 8 by failing to clearly allege which individual is liable as the "alter ego" of which entity); *see also In re Parkcentral Global Litigation*, No. 3:09–CV–0765–M, 2010 WL 3119403, at *10 (N.D. Tex. Aug. 5, 2010) (Lynn, J.) (dismissing alter ego/ veil piercing claims where "Plaintiffs offer conclusory allegations lacking factual support that lump Defendants together and merely restate some elements of proof necessary for veil piercing, without providing necessary factual allegations.").

### ii.     *Scots Law Controls The Veil Piercing Analysis For Personal Jurisdiction*

In its TAC, MCR only alleges its "alter ego/veil piercing" theory under Texas law which is inapplicable.[31] As with determinations of liability, this Court, the Southern District of Texas, and the Fifth Circuit have all applied the ***law of the state of incorporation to determine whether corporate distinctions should be disregarded in determining personal jurisdiction***. *See e.g., Davaco, Inc. v. AZ3, Inc.*, No. 3:07-CV-803, 2008 WL 2243382, at *1 (N.D. Tex. May 30, 2008) (place of incorporation provides correct law for jurisdictional veil piercing analysis); *Ingenious Investments,*

---

[27] [Doc. 113, ¶¶ 14, 232].
[28] *Id.*, ¶ 231.
[29] *Id.*, ¶ 232.
[30] *Id.*, ¶ 231.
[31] Texas law is not relevant to the determination of alter ego/veil piercing as confirmed by Judge Lynn's ruling dated October 16, 2018 [Doc. 146]. Likewise, any argument regarding the Texas Business and Commerce Code are inapplicable.

*Inc. v. Bombart*, No. 4:05-CV-535-A, 2006 WL 1582080, at *3 (N.D. Tex. Jan. 20, 2006) (law of

state of incorporation controls in determining personal jurisdiction); *Kisiel v. RAS Sec. Corp.*, No.

3:01-CV-294-X, 2001 WL 912425, at *4 (N.D. Tex. Aug. 9, 2001) (same); *Peavy v. Striebel*, No.

CIV.A. G-06-443, 2007 WL 528184, at *3 (S.D. Tex. Feb. 14, 2007) (same); *House v. 22 Texas*

*Servs., Inc.*, 60 F. Supp.2d 602, 609 (S.D. Tex. 1999) (same); *see also Patin v. Thoroughbred Power*

*Boats Inc.*, 294 F.3d 640, 655 (5th Cir. 2002) (applying the law of the state of incorporation to both

liability and personal jurisdiction analysis). Thus, for Group Holdings, Scots law applies to determine

whether its corporate veil can be pierced—for purposes of both liability and personal jurisdiction.

Further, MCR offers no case law from this Circuit in support of the proposition that the law of the

state of incorporation does not—or should not—govern imputation for purposes of jurisdiction. Same

is true for each of the Non-resident Defendants.

Even if Texas law were relevant (which is not), MCR's alter ego/veil piercing theory fails[32]

under Texas law because MCR does not show that Group Holdings' control over the operations and

affairs of its subsidiaries is greater than that normally associated with common ownership. Further,

the TAC is bereft of any allegations that Group Holdings was used for any improper purpose.[33] Same

---

[32] The Fifth Circuit identifies "three categories in which a court may pierce a corporate veil: (1) the corporation is the alter ego of its owners and/or shareholders; (2) the corporation is used for illegal purposes; (3) the corporation is used as a sham to perpetrate a fraud." *Gurganus*, 2016 WL 3745684, at *4; *see also S-Line LLC v. B2B Supply*, No. 3:14-CV-2284-M, 2015 WL 4745069, at * 4 (N.D. Tex. Aug. 10, 2015) (Lynn, J.). Under the first category, at most, MCR alleges Group Holdings is a parent of certain subsidiaries (notably, not of its alleged alter egos and "shams," Services, Offshore, or Oag) [Doc. 113, ¶¶ 74, 83, 137-138, 140, 142] and Group Holdings shares some administrative services and functions with other entities in its corporate family. *Id.* at ¶ 234. MCR fails to prove Group Holdings' control over the business operations and affairs of its subsidiaries is *greater than normally associated with common ownership and directorship*, and cease to be separate. *Fiduciary Network*, 2015 WL 2165953, at *8. (emphasis added).

[33] As to the second and third categories, MCR claims that certain statements in the license agreements were false (i.e., they were misrepresentations) and were subsequently breached. Normally, this is called a breach of contract. MCR, however, contends that the licensees (Offshore, Services, and, implausibly, Oag, because he was never a party to the agreement) never intended to perform so, the licensees committed fraud *and* breached the contract. [Doc. 113, ¶ 224]. What MCR fails to appreciate is this fraud allegation, as thin as it is, has nothing to do with Group Holdings. There is no allegation that Group Holdings' corporate existence was used or abused to commit the fraud alleged or for any other illegal purpose particularly given Group Holdings did not become the parent of various Defendants until April 13, 2016. Simply listing a count of "fraud" in its TAC is not enough.

is true for each of the other Non-resident Defendants. For this reason, MCR's personal jurisdiction under a "alter ego/veil piercing" theory fails.

### iii.       Scotland Veil Piercing Analysis Fails

MCR's TAC is devoid of any allegations of veil piercing theory under applicable Scots law. Instead, MCR conclusorily states that Group Holdings is an "alter ego" of Offshore, Services, and Oag.[34] However, even if MCR had plead any veil piercing theory under Scots law (which it did not), it would fail nonetheless. Veil piercing under Scots law can only be invoked where a person: (1) is under an existing legal obligation, liability, or is subject to an existing legal restriction; (2) which he deliberately evades or whose enforcement he deliberately frustrates; (3) by interposing a company under his control. *Prest v Petrodel Resources Ltd.*, [2013] 2 AC 415. Further, veil piercing requires Group Holdings to be a shareholder. *See Adams v Cape Industries plc,* [1990] Ch 433. As two independent experts on Scots law have informed this Court, the evasion principle is the current law on veil piercing under Scots law.[35] MCR cannot establish veil piercing over Group Holdings under the facts alleged under Scots law.[36] As set out in the Table below, any attempt to pierce the corporate veil of Group Holdings fails as a matter of law:

| Veil Piercing for Entity/Person | Existing Legal Obligations | Control | Impropriety in Corporate Structure | Shareholder | Result |
|---|---|---|---|---|---|
| Group Holdings | NO. Group Holdings has no existing legal obligation because it was not a party to the license agreements. | NO. Group Holdings has no control over the non-existent companies or Oag. | NO | NO. Not a shareholder in the non-existent companies or Oag. | Group Holdings' veil cannot be pierced under Scots law. |

Thus, based on its own allegations, there is no basis to disturb the corporate existence of Group Holdings for either jurisdictional or liability purposes.

---

[34] [Doc. 113, ¶ 14].
[35] Exhibit **5** - Declaration of Craig Connal, QC, ¶ 28, App.017; *see also* Exhibit **7** - Second Declaration of Garry Borland, QC, ¶ 24, App.444; *see also* Exhibit **6** - Declaration of Garry Borland, QC, ¶ 39, App.026-028.
[36] Exhibit **7**, ¶¶ 42-61, App.449-453; *see also* Exhibit **6**, ¶¶ 72-98, App.038-044.

### d. The Exercise Of Jurisdiction Over Group Holdings Would Offend Traditional Notions Of Fair Play And Substantial Justice.

Since Group Holdings does not have the requisite minimum contacts with Texas, it is unnecessary to consider whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice. However, if the Court finds that MCR made a *prima facie* showing that MCR's claims arise out of or are related to Group Holdings' individual connections to Texas (which it has not), it would be unreasonable for the Court to exercise personal jurisdiction over Group Holdings.

The Supreme Court has made clear that even when minimum contacts exist, the Due Process Clauses prohibit the exercise of personal jurisdiction when it would be unreasonable. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987). The relevant factors for assessing reasonableness are: "(1) the burden on the nonresident defendant to litigate in that forum; (2) the forum state's interest in the matter; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the several states' shared interest in furthering substantive social policies." *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476, 487 (5th Cir. 2008). "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *U.S. v. First Nat'l City Bank*, 379 U.S. 378, 404 (1965).

To allow an individual foreign entity to be hauled into court to answer a handful of emails unrelated to any claim is unsupported by any authority and would offend due process. The unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders. *Asahi*, 480 U.S. at 114. It is axiomatic that it would be burdensome for Group Holdings to

litigate in Texas.[37] Group Holdings would have to defend the lawsuit far from Scotland, where the witnesses and evidence are located. This difficulty is particularly acute because the suit requires foreign counsel, will require significant foreign travel, and subjects Group Holdings to an unfamiliar legal system. Adding another layer of complexity and expense is the fact that resolution of this case likely has and will entail significant proof of Scots law and evidence that must be gathered in Scotland. To defend this suit in Texas would severely tax the financial and human resources of all Non-resident Defendants.

In the present case, a review of the several states' shared interest in furthering substantive social policies calls the Court to consider the procedural and substantive policies of another nation (Scotland in the United Kingdom) whose interests are affected by the assertion of jurisdiction by the Court and by any "alter ego/piercing the corporate veil" theory. Those interests will be best served by a careful inquiry into the reasonableness of the assertion of jurisdiction, and an unwillingness to find the serious burdens on an alien defendant outweighed by minimal interests on the part of the MCR or Texas. *Asahi*, 480 U.S. at 114. Further, Texas has little interest in resolving a dispute about whether a Scottish entity allegedly committed torts by publishing international patents or in the way Group Holdings organizes itself under Scots law to conduct business and whether that comports with the way of doing business or organization of business entities in Texas. Group Holdings does not make any products, and is solely in the business of providing management support and other support services to its subsidiaries. Thus, it seems likely that MCR's sole purpose for attempting to drag Group Holdings into this litigation is to increase the harassment value of this case. MCR is free to secure relief in Scotland where MCR is already attempting to obtain relief against the dissolved contracting parties. Thus, the Court's assumption of jurisdiction over Group Holdings would offend traditional notions of fair play and substantial justice.

---

[37] Exhibit **1**, ¶ 17, App.003.

## B.   SPEX OFFSHORE (UK) LTD.

### 1.   Background

Non-resident Defendant SPEX Offshore (UK) Ltd. ("Offshore UK") is a Scotland-based corporation in business of providing services to the oil and gas industry using explosive tools and trained personnel.[38] Offshore UK conducts the majority of its business in the North Sea, mainly on the United Kingdom Continental Shelf.[39] Offshore UK maintains no offices, headquarters, property, records, or bank accounts in Texas or any other location in the United States, much less Texas.[40] Offshore UK does not maintain a designated agent for service in Texas.[41] The employees, officers and Directors of Offshore UK have never traveled to the United States to conduct business on behalf of Offshore UK.[42]

### 2.   Offshore UK Must Be Dismissed For Lack Of Personal Jurisdiction

#### a.   MCR Fails To Establish Offshore UK Has The Required Minimum Contacts With Texas.

First, MCR makes a general allegations that jurisdiction is proper over Offshore UK because it "engaged in business in Texas, directed substantial communications to MCR representatives in Texas, and sent agents to Texas to test and develop competing tools or products."[43] However, the foregoing allegations are conclusory and directly contradicted.[44] Offshore UK does not have the requisite minimum contacts with Texas.

Second, references to Offshore UK in the TAC fail to allege any acts occurred in Texas. They are conclusory and plainly controverted[45], and there is no conflicting evidence otherwise.[46]

---

[38] *See* Exhibit **2** – Declaration of Ryan Strachan at ¶ 4, App.004.
[39] *Id.*, ¶ 7, App.004.
[40] *Id.*, ¶ 6, App.004.
[41] *Id.*
[42] *Id.* at ¶ 7, App.004.
[43] [Doc. 113, ¶ 14].
[44] Exhibit **2**, ¶¶ 6-7, App.004; *see also* Exhibit **9** – Insufficient Minimum Contacts for Offshore UK Chart at rows 1-3, 17-18, 30, App.553-559.
[45] Exhibit **2**, ¶¶ 6-7, App.004.
[46] Exhibit **9**, at rows 1-3, 17-18, 30, App.553-559.

Third, the central allegation in the TAC is that all defendants breached the license agreements by publishing patents. However, MCR fails to show that publishing international patents has any connection to acts performed in Texas, nor is publishing international patents directed at Texas.

Fourth, MCR's use of the collective term, "SPEX Defendants," in the TAC fails to establish personal jurisdiction over Offshore UK.[47] MCR plainly fails to allege any individual conduct by Offshore UK in Texas to exercise jurisdiction over it. Further, these "collective" allegations are conclusory, directly contradicted[48], and there is no conflicting evidence otherwise.[49]

Thus, MCR's first theory for personal jurisdiction fails because MCR does not identify any minimum contacts by Offshore UK in Texas necessary for this Court's exercise of personal jurisdiction.

### b.     Offshore UK Committed No Tort Directed At Texas Or Otherwise.

Equally unavailing is MCR's claim that this Court can exercise personal jurisdiction over Offshore UK because it "committed and continue[s] to commit intentional torts expressly aimed at Texas, causing serious harm to MCR in Texas."[50]

### i.     *No Factual Support For Effects Based Jurisdiction*

MCR argues that personal jurisdiction exists because the effects of Offshore UK's allegedly intentional torts were felt by MCR in Texas. Here, the allegations MCR relies on to establish effect-based jurisdiction have nothing to do with any torts allegedly committed by Offshore UK, much less directed towards Texas. Specifically, MCR asserts five independent tort claims against Offshore UK[51], each of which hinges on the allegedly wrongful acquisition, use or disclosure of "confidential

---

[47] Exhibit **9**, at rows 17-23, App.555-557.
[48] Exhibit **2**, ¶¶ 6-7, App.004.
[49] Exhibit **9**, at rows 1-3, 17-18, 30, App.553-559.
[50] [Doc. 113 at 2–3, 5 ¶¶ 7, 14].
[51] MCR alleges the following claims against Offshore UK: (1) violations of TUTSA; (2) violations of the DTSA; (3) Unfair Competition; (4) Tortious Interference; and (5) Denuding the Corporation. Alter ego/piercing the corporate veil and conspiracy are derivative claims, not direct claims. *See Western Oil and Gas JV*, 91 Fed. App'x at 903–04; *see also Dodd*, 426 S.W.3d at 291; *see Tilton*, 925 S.W.2d at 681.

and proprietary information," "trade secrets" or the so-called "SPEX Patents."[52] But any Offshore UK-specific allegations hardly support these tort claims[53] nor establish personal jurisdiction over Offshore UK on a claim-by-claim basis. *See Breckenridge*, 2009 WL 1469808, at *2. Even if MCR's allegations were sufficient to state a tort claim against Offshore UK at all (they are not), there are no non-conclusory allegations in the TAC to suggest that ***any acts occurred in Texas***.

### ii.     Harmful Effects Are Insufficient For Personal Jurisdiction

MCR fails to make allegations in its TAC that might conceivably support personal jurisdiction over Offshore UK for any tort directed at Texas. At best, allegations in the TAC can be read to say that MCR felt the purported harm in Texas.

### iii.     No Intentional Communication Of False Information Targeted At Texas

While Offshore UK communicated via e-mail with MCR in 2016, those communications were regarding the return of stock to MCR which contained no false information giving rise to MCR's claims. Again, the allegations MCR relies on to establish effects-based jurisdiction have nothing to do with any torts allegedly committed by Offshore UK, much less directed toward Texas.

### iv.     No Allegations Of Death Or Serious Physical Harm

In its TAC, MCR proffers no evidence or make non-conclusory allegations that the harm MCR has allegedly suffered in Texas caused death or serious physical harm to MCR which are found by courts to support specific jurisdiction. *Guidry*, 188 F.3d at 629. As such, the effects jurisdiction does not apply. *AllChem Performance Prod.,* 878 F. Supp.2d at 793; *Level 10 Promotions*, 2008 WL 2781534, at *5. Thus, MCR's second theory for personal jurisdiction fails.

---

[52] [Doc. 113, ¶¶ 84-110, 199-200, 211, 217, 227, 243].
[53] [Doc. 113, ¶¶ 79, 83, 94, 137-138, 141, 142, 153]; *see also* Exhibit **9**, at rows 1-16, App.553-555.

     **c.**      **No Jurisdiction Over Offshore UK Under Veil Piercing Theory.**

         *i.*      *No Comprehensible Veil Piercing Theory Of Jurisdiction Against Offshore UK*

MCR's TAC is bereft of allegations specific to Offshore UK. At best, it alleges that Offshore UK is a wholly-owned subsidiary of another entity, it acquired some assets by virtue of a transfer agreement, and it shares some overhead and administrative functions and costs with other entities in a corporate family.[54] That Offshore UK forms one part of a larger corporate enterprise is not enough to disregard its corporate form under any body of law. Further, those allegations do not support liability under any theory. In the absence of such a showing, MCR's allegations are insufficient to support this Court's exercise of personal jurisdiction over Offshore UK under an alter ego theory. *See Breckenridge, supra*. For this reason, MCR's personal jurisdiction under an alter ego theory fails.

         *ii.*      *Scots Law Controls The Veil Piercing Analysis For Personal Jurisdiction*

This Court resolved the choice-of law question with respect to MCR's alter ego/veil piercing allegations.[55] Offshore UK, and its alleged alter egos, Services, Offshore and Oag, are Scottish corporations and, in the case of Oag, a Scottish individual.[56] Thus, Scots law governs whether this Court can exercise jurisdiction via any veil piercing/alter ego theory. As such, MCR's personal jurisdiction under a Texas "alter ego/veil piercing" theory fails.[57]

---

[54] [Doc. 113 at 20, 45, 48].

[55] [Doc. 146 at 7]; *see supra* III. A. 2. c. *ii.* for discussion.

[56] [Doc. 113 at 1-3].

[57] Even if the Court applies Texas law (which it should not), it would reach the same result. *See supra* III. A. 2. c. *ii.* for discussion. MCR does nothing more than allege that Group Holdings (the parent) owns 100% of Offshore UK (the subsidiary) and Offshore UK's 2016 financial statements are consolidated into Group Holdings' statements [Doc. 113, ¶ 153]; as such, Group Holdings exercises complete control over its activities. *Id.* at ¶¶ 232, 234. This is not enough; MCR has offered no evidence or allegations that warrants a court to let down the corporate shield. Thus, based on its own allegations, there is no basis to disturb the corporate existence of Offshore UK for either jurisdictional or liability purposes.

### iii.     Scotland Veil Piercing Analysis Fails

Although MCR fails to plead a Scots law veil piercing claim, even if it had, any veil piercing under applicable Scots law fails.[58] As set out in the Table below, any attempt to pierce the corporate veil of Offshore UK fails as a matter of law:

| Veil Piercing for Entity/Person | Existing Legal Obligations | Control | Impropriety in Corporate Structure | Shareholder | Result |
|---|---|---|---|---|---|
| Offshore UK | NO. Offshore UK has no existing legal obligation because it was not a party to the license agreements. | NO. Offshore UK has no control over the non-existent companies or Oag. | NO | NO. Not a shareholder in the non-existent companies or Oag. | Offshore UK veil cannot be pierced under Scots law. |

For these reasons, there is no basis to disturb the corporate existence of Offshore UK for either jurisdictional or liability purposes.

### d.     The Exercise Of Jurisdiction Over Offshore UK Would Offend Traditional Notions Of Fair Play And Substantial Justice.

Offshore UK has no requisite minimum contacts with Texas. Thus, it is unnecessary to consider whether exercising jurisdiction would comport with traditional notions of fair play and substantial justice. Even if the Court determines that MCR made a *prima facie* showing that MCR's claims arise out of or are related to Offshore UK's connections to Texas (which it has not), it would be improper for the Court to exercise personal jurisdiction over Offshore UK.

A significant and extreme burden would be imposed – and is being imposed – if Offshore UK is required to defend itself far from Scotland.[59] The costs, time and effort associated with Offshore UK defending a lawsuit in another country with no minimum contact whatsoever are significant.[60]

Texas has little interest in adjudicating whether Offshore UK, a Scottish entity, allegedly committed torts by publishing international patents or in the way Offshore UK organizes itself under

---

[58] *See supra* III. A. 2. c. *iii* for elements where veil piercing under Scots law can be invoked.
[59] Exhibit **2**, ¶ 14, App.005.
[60] *See supra* III. A. 2. c. *ii*. for discussion.

Scots law to conduct business. Nowhere in TAC does MCR enumerate any specific conduct on the part of Offshore UK occurring or directed at Texas. Moreover, dismissal of Offshore UK with no contacts with Texas will not hinder the efficient resolution of the issues between the parties already in the lawsuit. Likewise, the shared interest of the states in furthering fundamental substantive social policies weighs in favor of dismissing Offshore UK. Finally, MCR is free to secure relief in Scotland where MCR is already attempting to obtain relief against the dissolved contracting parties. In sum, the Court's exercise of jurisdiction would offend traditional notions of fair play and substantial justice.

## C.    SPEX CORPORATE HOLDINGS, LTD.

### 1.    Background

Non-resident Defendant SPEX Corporate Holdings, Ltd. ("Corporate") is a private company limited by shares incorporated and domiciled in Scotland.[61] The registered office is Blackwood House, Union Grove Lane, Aberdeen, AB10 6XU.[62] Corporate's registration number is SC553125 and it was incorporated on December 21, 2016.[63] Corporate maintains no offices, headquarters, property, records, or bank accounts in Texas or any other location in the United States.[64] Corporate does not maintain a designated agent for service in Texas.[65]

In November and December of 2017, Halliburton arranged for demonstrations of Corporate's explosive precision cutting tool to be held in Texas.[66] Corporate had no control of the location of the tool demonstrations.[67]

In 2018 and 2019, Corporate shipped its explosive precision cutting tool for demonstrations to be held in the Texas.[68] The location of the tool demonstrations was arranged by Northrop Grumman

---

[61] Exhibit **3** – Declaration of Nadir Mahjoub, ¶ 4, App.006.
[62] *Id.*
[63] *Id.*
[64] *Id.* at ¶ 5, App.006.
[65] *Id.*
[66] *Id.* at ¶ 6, App.006.
[67] *Id.*
[68] *Id.* at ¶ 7, App.007.

Innovation Systems, Inc., formerly known as Orbital ATK ("ATK"), who supplied the propellant for the tool demonstrations.[69]

For reasons that the ATK propellant is explosive in nature, Corporate was only allowed to assist with the mechanical components or hardware of the tool in order for ATK to load propellant into them in the demonstrations in the demonstrations of the precision cutting tool.[70] Prior to these demonstrations, no employees, officers or directors of Corporate traveled to U.S. to conduct business on its behalf.[71]

### 2. Corporate Must Be Dismissed For Lack Of Personal Jurisdiction

### a. Plaintiff Fails to Establish Its Claims Arise Out Of Or Are Related To Corporate's Connections to Texas.

MCR's TAC is replete with bald and speculative allegations that Corporate "engaged in business in Texas, directed substantial communications to MCR representatives in Texas, and sent agents to Texas to test and develop competing tools or products."[72] The foregoing allegations are conclusory and directly contradicted.[73] However, more importantly, MCR fails to plead that the substance of its claims against Corporate connect to acts performed in Texas.[74]

In determining whether specific jurisdiction exists, the Court must conduct the minimum contacts analysis separately for each cause of action. *Breckenridge*, 2009 WL 1469808, at *2. In its TAC, MCR alleges claims against Corporate for: (1) violations of TUTSA[75]; (2) violations of the DTSA[76]; (3) Unfair Competition[77]; (4) Tortious Interference[78]; and (5) Denuding the Corporation.[79]

---

[69] *Id.*
[70] *Id.* at ¶ 8, App.007.
[71] *Id.* at ¶ 7, App.007.
[72] [Doc. 113, ¶ 14].
[73] Exhibit **3**, ¶ 5, App.006.
[74] Exhibit **10** – Insufficient Minimum Contacts for SPEX Corporate Holdings and Oag, at rows 1-3, 17-18, 28.
[75] [Doc. 113, ¶¶ 179, 192, 201-202].
[76] *Id.* at ¶¶ 211, 213, 215.
[77] *Id.* at ¶¶ 217-219.
[78] *Id.* at ¶ 227.
[79] *Id.* at 240. Alter ego/piercing the corporate veil and conspiracy are derivative claims, not direct claims. *See supra*, fn.24.

### i.   TUTSA / DTSA

Under the DTSA, "[a] claim for misappropriation of trade secrets requires: (1) a trade secret; (2) misappropriation; and (3) use in interstate commerce." 18 U.S.C. § 1836(b)(1). Texas has adopted TUTSA, which has similar elements to the federal act. *See* TEX. CIV. PRAC. & REM. CODE § 134A.002; *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013). Under TUTSA, a plaintiff needs to show use without authorization, but not that it was used in interstate commerce. *Id.*, 716 F.3d at 874. MCR fails to plead that acts comprising trade secret misappropriation occurred in Texas. MCR alleges that Corporate sent agents to Texas to test and develop competing tools. However, MCR fails to assert any non-conclusory and uncontroverted evidence to support its allegations. MCR does not plead that the misappropriation occurred at the alleged "testing" in Texas. Further, any misappropriation would logically have to have occurred prior to any "testing." Even considered in the light more favorable to MCR, the conclusory allegations do not relate to the use of MCR's product in competition by Corporate. Indeed, the propellant used in the explosive precision cutting tool was developed and supplied by ATK.[80] Moreover, Corporate was not in a position to "test" or "develop" any tools because it was only allowed to assist with the mechanical components or hardware of the tool in order for ATK to load propellants.[81] As such, the tool demonstrations in Texas at facilities chosen by Halliburton and arranged by ATK does not establish specific jurisdiction. Corporate had no control over where the demonstrations were conducted, much less "testing or developing" of any tools in competition with MCR. MCR's conclusory allegations are not credible and do not establish specific jurisdiction over Corporate. Thus, MCR has not pled a *prima facie* case for asserting personal jurisdiction over Corporate for the trade secret misappropriation claims.

---

[80] Exhibit **4** – Declaration of James "Jamie" Oag,  ¶ 11, App.009.
[81] Exhibit **3**, ¶ 8, App.007.

### ii.      Unfair Competition

The elements of unfair competition by misappropriation are: (1) the creation by plaintiff of a product through extensive time, labor, skill, and money; (2) the use of that product by defendant in competition with plaintiff, thereby giving the defendant a special competitive advantage because he was burdened with little or none of the expense incurred by plaintiff in the creation of the product; and (3) commercial damage to plaintiff. *Cable Elecs., Inc. v. N. Am. Cable Equip., Inc.*, 2010 WL 1541504, at *3 (N.D.Tex.2010) (citing *Alcatel USA, Inc. v. DGI Techs.*, 166 F.3d 772, 788 (5th Cir.1999)). MCR fails to plead that acts comprising unfair competition occurred in Texas.

MCR's allegations that Corporate sent agents to Texas to test and develop competing tools is conclusory and controverted. Even in the light more favorable to MCR, the conclusory allegations do not relate to use of MCR's product in competition by Corporate. The demonstrations of the tool in Texas at facilities chosen by Halliburton and arranged by ATK does not establish specific jurisdiction because Corporate had no control over where the demonstrations were conducted and where the tool needed to be shipped. *See e.g. Wolsey v. Tactical Med. Sols., LLC*, No. CV WDQ-08-0546, 2008 WL 11363373, at *3 (D. Md. July 2, 2008) (Defendants testing of device in Maryland did not establish specific jurisdiction because Defendants had no control over where third-party conducted its internal testing and analysis); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 788 (Tex. 2005) (holding nonresident seller's shipping of product to Texas did not satisfy purposeful availment requirement in due process minimum contacts analysis for personal jurisdiction over seller in Texas courts); *CMMC v. Salinas*, 929 S.W.2d 435, 439 (Tex. 1996) (a French winepress maker shipping a winepress to a Texas customer was insufficient to constitute purposeful availment).

Corporate's tool demonstrations and assisting with the mechanical components or hardware of the tools for propellant loading by ATK in locations chosen by Halliburton and arranged by ATK does not show purposeful availment or specific jurisdiction for any claim over Corporate, including

unfair competition. Purposeful availment involves contacts that a defendant ***purposefully directs*** into the forum state. The relationship must arise out of contacts that the "defendant himself" creates with the forum State. *Walden*, 571 U.S. at 284; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The demonstrations did not arise out of contacts that Corporate itself created with Texas. Rather, it was random, fortuitous, and attenuated contact outside its control. *See Burger King*, 471 U.S. at 476–77 (The purposeful availment requirement "ensures that a defendant will not be hauled into a jurisdiction solely as a result of random, fortuitous, or attenuated contact). Here, there was no purposeful availment in Texas by Corporate. As such, MCR fails to plead a *prima facie* case for asserting personal jurisdiction over Corporate for the unfair competition claim.

### iii.      *Tortious Interference*

The elements of tortious interference with contract under Texas law are: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with that contract, (3) which caused plaintiff's injury, and (4) resulted in actual damages or loss. *Prudential Ins. Co. v. Fin. Review Servs., Inc*, 29 S.W.3d 74, 77 (Tex. 2000). MCR fails to plead what acts by Corporate comprising tortious interference occurred in Texas. A court does not have specific personal jurisdiction over a defendant alleged to have tortiously interfered with a contract, where that interference happened outside of the forum state. *Fairchild v. Barot,* 946 F. Supp. 2d 573, 580–81 (N.D. Tex. 2013) (Lynn, C.J.); *Moncrief Oil Intern.,* 332 S.W.3d at 13–14 (Tex. App.—Fort Worth 2010, pet. granted).

Here, MCR fails to plead what acts by Corporate interfered with the license agreement, much less what acts comprising tortious interference occurred in Texas. Except for the tool demonstrations held in Texas at facilities chosen by Halliburton and arranged by ATK (which it had no control of the locations), MCR can show no acts occurred in Texas, given that prior to the tool demonstrations, no employees, officers or directors of Corporate traveled to the U.S. to conduct business on behalf of

Corporate.[82] Thus, MCR fails to plead a *prima facie* case for asserting personal jurisdiction over Corporate for the tortious interference claim. *See Fairchild,* 946 F. Supp. 2d at 580–81.

### iv.    *Denuding The Corporation*

To impose personal liability upon a corporate shareholder under the denuding the corporation doctrine under Texas law, MCR must show Corporate: (1) distributed all its assets, (2) by distributing them among the shareholders, and (3) that at the time of distribution there existed an unsatisfied claim. *World Broadcasting Systems, Inc. v. Bass*, 328 S.W.2d 863, 864 (Tex. 1959); *Francis v. Beaudry*, 733 S.W.2d 331, 335 (Tex. App.—Dallas 1987, writ ref'd n.r.e.). MCR fails to plead what acts by Corporate constitutes denuding corporate assets, much less what acts comprising denuding the company occurred in Texas. Except for the tool demonstrations held in Texas at locations chosen by Halliburton and arranged by ATK (which it had no control of the locations), MCR can show no acts occurred in Texas. MCR does not allege or present evidence tying its denuding claim to Texas. Thus, MCR fails to plead a *prima facie* case for asserting personal jurisdiction over Corporate for the denuding claim.

Thus, MCR's first theory for personal jurisdiction fails because it does not establish that the substance of its claims against Corporate arise out of or are related to its alleged connections to Texas.

### b.    **Corporate Committed No Tort Directed At Texas Or Otherwise.**

Again, MCR's claim that this Court has specific jurisdiction over Corporate because it "committed and continue[s] to commit intentional torts expressly aimed at Texas, causing serious harm to MCR in Texas"[83] is without merit.

### i.    *No Factual Support For Effects Based Jurisdiction*

Such a rote statement is unsupported by any non-conclusory allegations sufficient to meet MCR's *prima facie* burden to establish personal "effects" jurisdiction at all, much less on a claim-by-

---

[82] Exhibit **3**, ¶ 6, App.006.
[83] [Doc. 113 at 2–3, 5 ¶¶ 7, 14].

claim basis as MCR must. *See McFadin*, 587 F.3d at 759; *Breckenridge,* 2009 WL 1469808, at *2. MCR's independent tort claims against Corporate are based on the allegedly wrongful acquisition, use or disclosure of "confidential and proprietary information," "trade secrets" or the so-called SPEX Patents.[84] However, none of MCR's allegations specific to Corporate, if any, support these tort claims, let alone show personal jurisdiction over Corporate on a claim-by-claim basis.

### ii.       *Harmful Effects Are Insufficient For Personal Jurisdiction*

Plainly, MCR fails to point to any allegations in TAC that might conceivably support personal jurisdiction over Corporate for any tort directed at Texas.

### iii.       *No Intentional Communication Of False Information Targeted At Texas*

There is no evidence that Corporate communicated with MCR.[85] Even if there were (which there is none), there is no evidence or allegations that such communications contained false information giving rise to MCR's claims, and MCR makes no such argument in support of specific personal jurisdiction.

### iv.       *No Allegations Of Death Or Serious Physical Harm*

There is no evidence nor non-conclusory allegations that the alleged tort actions by Corporate caused death or serious physical harm to the MCR in Texas. Thus, MCR's second theory for personal jurisdiction fails.

### c.       No Jurisdiction Over Corporate Under Veil Piercing Theory.

### i.       *No Comprehensible Veil Piercing Theory Of Jurisdiction Against Corporate*

MCR's veil piercing allegations are conclusory and lack factual support. At first, MCR contends Corporate is the "alter ego" of: (1) Offshore, (2) Services, and (3) Oag[86]. Later, MCR appears to advance the notion that personal jurisdiction exists over Corporate, not because it is an

---

[84] [Doc. 113, ¶¶ 84-110, 199-200, 211, 217, 227, 243].
[85] Corporate was not incorporated until well after the termination by MCR of its license agreements with Offshore.
[86] [Doc. 113, ¶¶ 14, 232].

"alter ego" of Offshore, Services, and Oag, but because the contacts of its subsidiary, SPEX Group US LLC, are imputed to Corporate as its alter ego[87]. Next, MCR suggests that Corporate is somehow controlled by other, unspecified people or entities.[88] These allegations are conclusory, inconsistent, and insufficient to support MCR's claim that this Court can exercise personal jurisdiction over Corporate under an alter ego theory.

### ii.     Scots Law Controls The Veil Piercing Analysis For Personal Jurisdiction

As a Scottish corporation, for Corporate, Scots law applies to determine whether this Court can exercise jurisdiction over Corporate via any veil piercing theory.[89] MCR does not allege veil piercing under Scots law, so its claim for jurisdiction over Corporate under a Texas "alter ego/veil piercing" theory fails.[90]

### iii.     Scotland Veil Piercing Analysis Fails

As set out in the Table below, any attempt to pierce the corporate veil of Corporate fails as a matter of law for any one of the following reasons:[91]

| Veil Piercing for Entity/Person | Existing Legal Obligations | Control | Impropriety in Corporate Structure | Shareholder | Result |
|---|---|---|---|---|---|
| Corporate | NO. Corporate has no existing legal obligation because it was not a party to the license agreements. | NO. Corporate has no control over the non-existent companies or Oag. | NO | NO. Not a shareholder in the non-existent companies or Oag. | Corporate's veil cannot be pierced under Scots law. |

For these reasons, there is no basis to disturb the corporate existence of Corporate for either jurisdictional or liability purposes.

---

[87] *Id.*
[88] *Id.*
[89] *See supra* II. A. 2. c. *ii.* for discussion.
[90] Even if the Court applies Texas law (which it should not), it would reach the same result. *See supra* III. A. 2. c. *ii.* for discussion.
[91] *See supra* II. A. 2. c. *ii.* for discussion.

### d.   The Exercise Of Jurisdiction Over Corporate Would Offend Traditional Notions Of Fair Play And Substantial Justice.

Even if the Court finds that MCR made a *prima facie* showing that MCR's claims arise out of or are related to Corporate's connections to Texas (which it has not), it would be unreasonable for the Court to exercise personal jurisdiction over Corporate. The burden on Corporate does not comport with the traditional notions of fair play and substantial justice[92] because all of Corporate's documents, records, and potential testifying witnesses are located in Scotland, maintaining this lawsuit in Florida would place a significant strain on many of Corporate's officers and employees.[93] Moreover, Texas has no prevailing interest in adjudicating this dispute about whether a Scottish entity allegedly committed torts by publishing international patents or participating in tool demonstrations arranged by third parties in Texas or in the way Corporate organizes itself under Scots law to conduct business and whether that comports with the way of doing business in Texas. MCR can just as easily adjudicate this matter in Scotland where MCR is already attempting to obtain relief against the dissolved contracting parties. For these reasons, the Court's assumption of jurisdiction would offend traditional notions of fair play and substantial justice and this action should be dismissed.

## D.   JAMIE OAG

### 1.   Background

Non-resident Defendant Jamie Oag ("Oag") is a United Kingdom citizen who resides in Aberdeen, Scotland.[94] He does not conduct or engage in business in Texas in his individual capacity.[95] He maintains no offices, headquarters, property, residence, domicile, employees, records, or bank accounts in Texas (or any other location in the United States).[96] He is not registered to do business in

---

[92] Exhibit **3**, ¶ 8, App.007.
[93] *See supra* II. A. 2. d. for discussion.
[94] Exhibit **4**, ¶ 3, App.008.
[95] *Id.*, ¶ 5, App.008.
[96] *Id.*

Texas and does not maintain a designated agent for service in Texas.[97] Except for the instant lawsuit, he has no litigation pending by or against him in Texas and has never initiated legal action in Texas.[98]

He did not negotiate the terms of 2014 License Agreement, much less negotiate them in Texas.[99] The 2014 License Agreement (and the 2015 Extension) were reviewed, read, and signed by Oag on behalf of Offshore in Scotland.[100] Oag has never traveled to Texas to conduct business on his own behalf.[101] He has never traveled to Texas in relation to entering into, negotiating, or procuring the 2014 License Agreement.[102] He traveled to Texas on behalf of Offshore on three occasions to meet with MCR, but all those visits were subsequent to the execution of the 2014 License Agreement.[103]

In November and December of 2017, Oag traveled to Texas on behalf of Corporate at the request of Halliburton.[104] Halliburton arranged for demonstrations of Corporate's explosive precision cutting tool be held in Texas.[105] Neither Oag nor Corporate controlled the location of the tool demonstrations.[106] In 2018 and 2019, Oag traveled to Texas on behalf of Corporate for demonstrations of Corporate's explosive precision cutting tool.[107] The location of the tool demonstrations was arranged by ATK.[108]

The propellant used in the explosive precision cutting tool was developed and supplied by ATK.[109] ATK designs, builds and delivers space, defense and aviation-related propulsion systems, including propellants for rockets and missiles.[110] Because of the explosive nature of the ATK

---

[97] *Id.,* ¶ 6, App.008.
[98] *Id.,* ¶ 7, App.008.
[99] *Id.,* ¶ 8, App.009.
[100] *Id.*
[101] *Id.*
[102] *Id.*
[103] *Id.*
[104] *Id.,* ¶ 9, App.008.
[105] *Id.*
[106] *Id.*
[107] *Id.,* ¶ 10, App.008.
[108] *Id.*
[109] *Id.,* ¶ 11, App.008.
[110] *Id.*

propellant, Oag on behalf of Corporate was only allowed to assist with the mechanical components or hardware of the tool for the tool demonstration.[111]

> **2.      Oag Must Be Dismissed For Lack Of Personal Jurisdiction**
>
> > **a.      Plaintiff Fails To Establish Its Claims Arise Out Of Or Are Related To Oag's Individual Connections To Texas.**

After almost a year of litigation and amending its complaint three times, MCR's TAC is still light on actual facts. MCR pleads conclusory allegations and merely recites claim elements referencing all defendants. Importantly, MCR alleges that "the crux of MCR's claims against [all defendants] stem from breaches (and continuing breaches) of MCR's license agreements."[112] Further, the substance of the TAC is that all defendants breached the license agreements by publishing patents.[113] But MCR fails to plead that the substance of its claims connect to acts performed in Texas.

MCR conclusorily alleges that Oag: (1) has engaged in business in Texas;[114] (2) has entered into contracts in Texas;[115] (3) sent agents to Texas to test and develop competing tools or products;[116] (4) directed substantial communications to MCR representatives in Texas;[117] (5) utilized a research center in Texas to assist in the development of competing tools;[118] (6) made representations and agreements as set out in the 2014 License Agreement (not connected to Texas);[119] (7) filed numerous international patent applications (not connected to Texas);[120] and (8) committed and continues to commit intentional torts expressly aimed at Texas, causing serious harm to MCR in Texas.[121][122]

---

[111] *Id.*, ¶ 12, App.008.
[112] [Doc. 113, ¶ 14].
[113] [Doc. 113, ¶¶ 47, 111, 113, 115-120, 125, 127-129, 132-133].
[114] [Doc. 113, ¶¶ 9, 13].
[115] [Doc. 113, ¶¶ 9, 13].
[116] [Doc. 113, ¶¶ 13, 135].
[117] [Doc. 113, ¶ 13].
[118] [Doc. 113, ¶ 135].
[119] [Doc. 113, ¶¶ 42, 44, 124, 188, 221-222].
[120] [Doc. 113, ¶¶ 46, 49, 50, 53, 55, 60, 127].
[121] [Doc. 113, ¶¶ 46-50, 53, 55, 60].
[122] Exhibit **10**, at rows 26, 28, 30. Oag individually does not have the minimum contacts giving rise to MCR's claims against Oag individually.

As mentioned above[123], the Court must conduct the minimum contacts analysis for each cause of action to determine whether specific jurisdiction exist. *Breckenridge, supra*. MCR alleges the following claims against Oag: (1) violations of the TUTSA[124]; (2) violations of the DTSA[125]; (3) Unfair Competition[126]; (4) Fraud[127] and Fraudulent Inducement[128]; (5) Tortious Interference[129]; and (6) Denuding the Corporation[130].

###### i.    TUTSA / DTSA

MCR fails to plead that acts comprising trade secret misappropriation occurred in Texas. As set out above, MCR has not pled a *prima facie* case for asserting personal jurisdiction over Oag for the trade secret misappropriation claims.

###### ii.    Unfair Competition

MCR also fails to plead that acts comprising unfair competition occurred in Texas. The conclusory allegations that Oag sent agents to Texas to test and develop competing tools or products and utilized a research center in Texas to assist in the development of competing tools is not credible and controverted. Even in the light more favorable to MCR, the conclusory allegations do not relate to use of MCR's product in competition by Oag individually. The demonstrations of the tool in Texas at facilities arranged by ATK and Halliburton does not establish specific jurisdiction because Oag had no control over where the demonstrations were conducted and where the tool needed to be shipped. *See Wolsey*, 2008 WL 11363373, at *3; *Michiana Easy Livin' Country*, 168 S.W.3d at 788; *CMMC*, 929 S.W.2d at 439.

---

[123] *See supra* III. C. 2. a. for discussion.
[124] [Doc. 113, ¶¶ 179, 187-190, 197-198, 203-204].
[125] [Doc. 113, ¶¶ 211, 313, 215].
[126] [Doc. 113, ¶¶ 218-219].
[127] [Doc. 113, ¶¶ 221-222, 224].
[128] [Doc. 113, ¶¶ 221-222, 224].
[129] [Doc. 113, ¶240].
[130] *Id.*, ¶¶ 239-240. Alter ego/piercing the corporate veil and conspiracy are derivative claims, not direct claims. *See supra*, fn. 24.

As a representative of Corporate, Oag's presence at the tool demonstrations in Texas at locations arranged and controlled by Halliburton and ATK does not establish purposeful availment or specific jurisdiction for any claim over Oag individually. There is no specific, purposeful act through which Oag can be said to have availed himself of Texas. Thus, MCR fails to plead a *prima facie* case for asserting personal jurisdiction over Oag for the unfair competition claim.

### iii.     Tortious Interference

MCR fails to plead what acts by Oag interfered with the license agreement, let alone what acts comprising tortious interference occurred in Texas. Indeed, Oag is a Scottish resident and all work related to patents was performed outside of Texas. Thus, MCR has not pled a *prima facie* case for personal jurisdiction over Oag for the tortious interference claim.

### iv.     Fraud And Fraudulent Inducement

MCR has sued Oag personally for fraud and fraudulent inducement. MCR alleges that "the crux of MCR's claims against [all defendants] stem from breaches (and continuing breaches) of MCR's license agreements."[131] MCR has failed to plead that the license agreements were negotiated or signed in Texas. Further, it has failed to plead that Oag personally made material misrepresentations, instead pleading that the "misrepresentations" allegedly made "were **part of the express terms** of the [License] agreement[s]."[132] MCR has failed to plead that Oag made any misrepresentations separate or independent from, prior to, or that were later subsumed in the 2014 License Agreement (or the 2015 Extension). As such, MCR has failed to plead that Oag fraudulently procured the 2014 License Agreement. Regardless, importantly, MCR has failed to plead a connection between the alleged "misrepresentations" contained in the 2014 License Agreement and Texas.

---

[131] [Doc. 113, ¶ 14].
[132] [Doc. 113, ¶ 221].

The conclusory allegation that Oag "entered into contracts in Texas" is not creditable.[133] Even if Oag were personally a party to a contract in Texas, it would be insufficient to establish the minimum contacts necessary to support the exercise of specific personal jurisdiction. *See Burger King*, 471 U.S. at 472, 476–77; *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 778 (5th Cir.1986)*; see also Olympia Capital Assoc., L.P. v. Jackson*, 247 S.W.3d 399, 417 (Tex. App.–Dallas 2008, no pet.) ("The existence of a contract between the nonresident defendant and a resident of the forum and engaging in communications related to the execution and performance of that contract are insufficient to establish the minimum contacts necessary to exercise specific personal jurisdiction over the nonresident defendant."). Finally, the evidence shows the alleged "misrepresentations" contained in the 2014 License Agreement were true when the agreement was entered into on the effective date.[134]

Similarly unavailing, the conclusory allegation that Oag directed substantial communications to MCR's representatives in Texas is not creditable and insufficient to establish specific jurisdiction. *See Holt Oil,* 801 F.2d at 778 ("communications between Texas and [Ohio] in the course of ... carrying out the contract [i]s in itself ... insufficient to constitute purposeful availment of the benefits and protections of Texas law."); *Olympia*, *supra*. Moreover, MCR fails to plead that the **content** of those "communications" give rise to fraud or fraudulent inducement for which jurisdiction is sought.[135]

Likewise unavailing, the conclusory allegation that Oag "has engaged in business in Texas" is not creditable and is expressly controverted.[136] The exercise of specific jurisdiction over Oag individually without a factual connection to Texas for the fraud and fraudulent inducement claims is inconsistent with due process. *See Bristol-Myers*, 137 S. Ct. at 1781; *Breckenridge*, 2009 WL 1469808, at *2. Thus, MCR has not pled a *prima facie* case for personal jurisdiction over Oag for the fraud or fraudulent inducement claims.

---

[133] [Doc. 113, ¶ 13].
[134] Exhibit **11** – Jamie Oag's Deposition Transcript p/l 510:22 – 511:11; 515:1-6; 516:4-8, App.
[135] [Doc. 113, ¶ 13].
[136] Exhibit 4, ¶¶ 5-7, App.008.

### v.       *Denuding The Corporation*

MCR fails to plead what acts by Oag individually constitutes denuding corporate assets, much less what acts comprising denuding occurred in Texas. Thus, MCR has failed to plead a *prima facie* case for asserting personal jurisdiction over Oag individually for the denuding the corporation claim.

For these reasons, MCR's first theory for personal jurisdiction fails because MCR does not establish its claims arise out of or are related to Oag's alleged connections to Texas.

### b.       **Oag Committed No Tort Directed At Texas Or Otherwise.**

### i.       *No Factual Support For Effects Based Jurisdiction*

Equally unavailing is MCR's conclusory allegation that Oag "committed and continue[s] to commit intentional torts expressly aimed at Texas, causing serious harm to MCR in Texas."[137] Such bald allegations are insufficient to meet MCR's *prima facie* burden to establish personal "effects" jurisdiction at all. *See McFadin*, 587 F.3d at 759; *Breckenridge, supra*. Oag's visits to and communications with MCR were not in his individual capacity, but on behalf of Offshore, the licensee. A corporate officer who signs a contract on behalf of his corporation is not a party to the contract, but acting in his corporate capacity which is not a jurisdictional contact for Oag individually. *Wolf v. Summers-Wood, L.P.*, 214 S.W.3d 783, 792 (Tex. App.—Dallas 2007, no pet.) (no specific jurisdiction existed where officer contracted in corporate capacity). Moreover, the "fraud" alleged by MCR concerns statements contained in the license agreement which Oag signed in a representative capacity, not statements made by Oag individually.[138] None of MCR's allegations specific to Oag individually support these tort claims, much less establish personal jurisdiction over Oag on a claim-by-claim basis. *See Breckenridge, supra*.

---

[137] [Doc. 113, ¶ 13].
[138] [Doc. 113, ¶¶ 220-222].

### ii.     Harmful Effects Are Insufficient For Personal Jurisdiction

MCR fails to point to any allegations in the TAC that might conceivably support personal jurisdiction over Oag for any tort directed at Texas.[139]

### iii.     No Intentional Communication Of False Information Targeted At Texas

Oag's communications with MCR on behalf of Offshore, the licensee, not in his ***individual*** capacity. There is no evidence of email or telephone calls from Oag individually to MCR. Even if there were (which there is none), there is no evidence or allegations that such communications contained false information giving rise to MCR's claims.

### iv.     No Allegations Of Death Or Serious Physical Harm

MCR also fails to allege that Oag's alleged tortious actions caused serious physical injury or death to MCR in Texas. Thus, MCR's second theory for personal jurisdiction fails.

### c.     No Jurisdiction Over Oag Under Veil Piercing Theory.

### i.     Scotland Veil Piercing Analysis Fails

As set out in the Table below, any attempt to pierce the corporate veil of Oag fails as a matter of law:[140]

| Veil Piercing for Entity/Person | Existing Legal Obligations | Control | Impropriety in Corporate Structure | Shareholder | Result |
|---|---|---|---|---|---|
| Oag | NO. Oag individually has no existing legal obligation because it was not a party to the license agreements. | NO. Oag individually has no control over the non-existent companies or Oag himself. | NO | NO. Not a shareholder in the non-existent companies or Oag. | Oag's veil cannot be pierced under Scots law. |

---

[139] *See supra* III. A. 2. b. *ii.* for discussion.
[140] Even if the Court applies Texas law (which it should not), it would reach the same result. *See supra* III. A. 2. c. *ii.* for discussion.

**d.      The Exercise Of Jurisdiction Over Oag Would Offend Traditional Notions Of Fair Play And Substantial Justice.**

Even if the Court finds that MCR made a *prima facie* showing that Oag is subject to personal jurisdiction (which it has not), it would be unreasonable for the Court to exercise personal jurisdiction over Oag. To allow an individual foreign citizen to be hauled into court to answer for fraud and fraudulent inducement for signing a contract overseas on behalf of a foreign company does not comport with the traditional notions of fair play and substantial justice. The burden is high for Oag to litigate in Texas.[141] Oag would have to defend the lawsuit far from his home in Scotland represented by foreign counsel, with significant foreign travel, and subjects Oag to an unfamiliar legal system. To defend this suit in Texas would severely tax the financial resources of Oag. Moreover, Texas has no prevailing interest in resolving a dispute about whether a Scottish citizen individually, fraudulently induced a Texas company in Scotland. Further, MCR is free to secure relief in Scotland where it is already attempting to obtain relief against the dissolved contracting parties—under the very contract that Oag allegedly fraudulently induced MCR to enter into. For these reasons, the Court's assumption of jurisdiction over Oag would offend traditional notions of fair play and substantial justice.

## IV.      CONCLUSION

SPEX Group Holdings, Ltd., SPEX Offshore (UK) Ltd., SPEX Corporate Holdings, Ltd. are Scotland-based companies and Jamie Oag is a citizen of Scotland, over which the Court lacks personal jurisdiction and, therefore, Non-resident Scottish-based Defendants and Jamie Oag respectfully request that the Court dismiss all claims asserted against them by Plaintiff MCR Oil Tools, LLC pursuant to Federal Rule of Civil Procedure 12(b)(2) and grant such other and further relief to which they are justly entitled.

---

[141] Exhibit 4, ¶ 13, App.009.

Respectfully submitted,

/s/ Craig D. Dillard

**Craig D. Dillard**
Texas State Bar No. 24040808
cdillard@foley.com
**Terrell Miller**
Texas State Bar No. 24046446
tmiller@foley.com
**Jason P. Sharp**
Texas State Bar No. 24039170
jsharp@foley.com
FOLEY GARDERE
FOLEY & LARDNER LLP
1000 Louisiana, Suite 2000
Houston, Texas 77002
Tel:    713-276-5500
Fax:    713-276-5555

**Steven C. Lockhart**
Texas State Bar No. 24036981
slockhart@foley.com
**Robert T. Slovak**
Texas State Bar No. 24013523
rslovak@foley.com
**Rachel Kingrey O'Neil**
Texas State Bar No. 24068616
rkoneil@foley.com
FOLEY GARDERE
FOLEY & LARDNER LLP
2021 McKinney Avenue, Suite 1600
Dallas, Texas 75201
Tel:    214-999-4668
Fax:    214-999-3668

**ATTORNEYS FOR NON-RESIDENT
DEFENDANTS SPEX GROUP HOLDINGS, LTD.,
SPEX OFFSHORE (UK) LTD.,
SPEX CORPORATE HOLDINGS, LTD., AND
JAMIE OAG**

## **CERTIFICATE OF SERVICE**

The undersigned Counsel hereby certifies that the foregoing has been served via ECF on this the 30th day of July, 2019 to:

Blake L. Beckham
Jose M. Portela
THE BECKHAM GROUP P.C.
3400 Carlisle, Suite 550
Dallas, TX 75204
214-965-9301 (fax)
*Attorneys for Plaintiff, MCR OIL TOOLS, LLC*

/s/ Craig D. Dillard
Craig D. Dillard