IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| MCR OIL TOOLS LLC | § § § | |
| *Plaintiff* | § § | |
| vs | § § | CIVIL ACTION NO. 3:18-CV-00731-M |
| SPEX OFFSHORE LTD<br>SPEX SERVICES LTD<br>SPEX OFFSHORE (UK) LTD<br>SPEX GROUP US LLC<br>SPEX ENGINEERING (UK) LTD | § § § § § § § | |
| *Defendants* | § | |

## DECLARATION OF R CRAIG CONNAL QC, SOLICITOR ADVOCATE

### Introduction

1. My name is R Craig Connal QC. My date of birth is 7th July 1954. My business address is at Pinsent Masons LLP. I am Queen's Counsel, Solicitor Advocate, in Scotland.

2. I graduated from the University of Glasgow, Scotland with First Class Honours in Law. I then trained with a small local firm (long defunct) before joining the then McGrigor Donald & Co in 1977. I became a Partner in that firm on 1st January 1980 and have continued to work there to the present day, where that firm has been subsumed into Pinsent Masons LLP. I am now a senior litigation partner. In 1996, I obtained an additional qualification allowing me to appear in every Court in Scotland.

3. In 2002, I was appointed as Queen's Counsel, the first practising Solicitor Advocate to be so appointed by Her Majesty the Queen (pursuant to a recommendation from the authorities in Scotland).

4. In 2006, I obtained Rights of Audience in the Higher Courts of England and Wales. I accordingly have Rights of Audience in the Supreme Court of the United Kingdom (and the Judicial Committee of the Privy Council), the Supreme Courts of Scotland, the Senior Courts in England and lower Courts in both jurisdictions. I have appeared in the UK Supreme Court. I am also registered to appear in the DIFC Court, Dubai and I am the Scottish Vice Chairman of the British Irish Commercial Bar Association.

5. My practice is much taken up with assisting in and advising on matters of difficulty in various locations and providing views on complex matters on which

my advice is sought (whether formally or informally). My litigation practice has spanned a very wide variety of matters, most falling within the broad phrase 'corporate and commercial'. I have regularly appeared in legal directories as a leading litigator, being described by one commentator as the "best disputes lawyer in Scotland".

6. Given my experience and interest in advocacy in a variety of Courts, I became a NITA accredited advocacy trainer. I also chair the Qualification Course which new candidates from the solicitors' branch of the Scottish profession must undergo before obtaining Higher Court Rights in the Civil Courts. I have Rights in both Civil and Criminal matters and I have conducted a modest number of prosecutions in the Scottish higher first instance Court, the High Court of Justiciary. I also sit from time to time as an Arbitrator.

7. I have been requested to provide this declaration on certain matters of Scots law for the purposes of the above named proceedings by Craig Dillard, Foley Gardere, Solicitor in Texas, acting on behalf of the Defendants.

**Lifting The Corporate Veil**

8. I am asked to advise on Scots law regarding the principle of lifting (or piercing) the corporate veil. I understand that concept to relate to circumstances in which a liability of a limited company is, according to the proponent, to be visited on an individual or on another company by ignoring or avoiding the corporate structure.

9. While conscious that corporate structures are infinitely variable and no option is precluded, I am not aware of nor has research located, any corporate veil case focussed on subsidiary to fellow subsidiary

**The Scottish Position – General**

10. Some background on the position in Scotland may assist. Corporate law is largely applied on a common basis throughout the UK, the prime example being the corpus of legislation known as the Companies Acts. While there are, no doubt, points of detail on which the law may be said to differ in Scotland from that in the rest of the UK, I am **not** aware of **any** differences likely to be material for present purposes.

11. As I set out below, discussions relating to the lifting of the corporate veil are treated as applying across the UK. Decisions of the Courts in England and Wales are treated as persuasive in Scotland (and vice-versa). Decisions of the UK Supreme Court on a topic such as lifting the corporate veil are, strictly speaking, not binding other than in the country from which the appeal originates, but they are effectively treated as **binding in practice**.

12. As it happens, the UK Supreme Court has had relatively recent occasion to take up the challenge of reviewing what was asserted to be the law on lifting (or piercing) the corporate veil in the case of *Prest -v- Petrodel Resources* which I return to below.[1] Indeed, for the purposes of the present discussion I rely heavily on

---

[1] *See* Exhibit A, *Prest -v- Petrodel Resources*, 2013 UK SC 34 (Sumption, JSC).

2

what was said in *Prest*. For completeness, the UK Supreme Court has also touched on the matter subsequently, albeit briefly, but nothing detracts from its full examination in *Prest*.[2]

**Scottish Cases**

13. To vouch the proposition that the Scottish Courts accept the approach in *Prest*, it may be sensible to look briefly at two relatively recent Scottish decisions. The first, *Tartan Army -v- Sett and others*[3], is a decision of Lord Glennie, a Judge of the Outer House of the Court of Session[4]. Claims were made against a number of parties in respect of alleged infringement of trade marks. One target for these proceedings was a Mr Emerson, who was said to be responsible for acts carried out by another defendant, Alba Football Fans Limited. Mr Emerson had arranged for Alba to be incorporated. It was under his control. He was the "guiding and controlling mind". Alba had no other employees than Mr Emerson. He made all the day-to-day decisions. It is worth quoting what immediately follows that narrative in the decision in full:-

> "The starting point for any consideration of the pursuer's arguments is, as both parties accepted, that a company is a legal entity distinct from its shareholders, with rights and liabilities of its own distinct from that of its shareholders and property of its own distinct from that of its shareholders. These principles apply as much to a company that is wholly owned and controlled by one man as to any other company: *Salomon* v *Salomon*[5], *Prest* v *Petrodel Resources Ltd* per Lord Sumption JSC at para 8. It follows that there is nothing wrong in principle in a director or shareholder, even a sole director or shareholder, causing a liability to be incurred by a company, nor is it wrong in principle for such a director or shareholder, in defending a claim, to rely upon the fact that the liability is not his but that of the company he controls – that is what incorporation is all about."

14. Lord Glennie then went on to reference some of the judgments in *Prest* before he said this:

> "Although the authorities cited in this area are all English, it was not suggested that Scots law differed in any material respect."

15. Lord Glennie accepted that the relationship been Mr Emerson and Alba was undoubtedly close. It was to all intents and purposes "his" company. He made all the decisions. But that was no different to any other "one man company" and that gave no assistance to the case, nor did the company's purpose. That was, "short of fraud or concealment or evasion of some legal liability, irrelevant".

---

[2] *See* Exhibit **B**, *Campbell -v- Gordon* 2016 UK SC 38, where, in the context of seeking to impose upon a director responsibility for the consequences of not having insured against a liability which, by statute, the company ought to have insured against, the Court pointed out there was no basis for "looking through" the veil. They left the liability with the company.
[3] *See* Exhibit **C**, *Tartan Army -v- Sett and others* (2015 CSOH141).
[4] Scotland's highest civil first instance Court; Lord Glennie now sits as a Judge of the Inner House of the Court of Session, Scotland's equivalent of the English Court of Appeal.
[5] *See* Exhibit **D**.

3

16. It perhaps emphasises the fundamental and long-standing nature of this principle in UK law to note that Lord Glennie also referenced the famous case of *Salomon -v- Salomon*.[6] The principles have stood firm for well over 100 years.

17. For completeness, I also mention the case of *Ashley -v- Scottish Football Association*[7], another decision of a Judge sitting in the Outer House of the Court of Session[8]. This was a regulatory dispute, ultimately determined on the interpretation of a football (soccer) regulatory rule. *Prest* was cited to the Court and referred to (albeit briefly) with approval by Lord Brodie in his judgment.

18. It may also be useful, by way of reminder, to point out that there is no automatic discovery or disclosure in Scots legal procedure. While it is open to a party to seek to persuade the Court to grant a targeted disclosure order, that may or may not be granted, according to the circumstances and stage of the case. One situation where disclosure may not be granted is where the other party persuades the Court that the pursuer's (plaintiff's) case may not be legally relevant and should be the subject of preliminary challenge[9]. For instance, if a claim failed to come within the doctrine as set out in *Prest*, below, a defender (defendant) could have that claim struck out.

**Prest v Petrodel**

19. Having established the UK-wide basis for the law in this area and the leading place in that jurisprudence of *Prest*, I now turn to that case. I do not suggest that the whole corpus of material on this topic can be found there, but for reasons which should, by now, be obvious, it provides a ready source of up to date and authoritative discussion in the UK's highest Court. Indeed the Supreme Court, which for a normal hearing will sit with five Justices, sat on this occasion with seven.

20. The leading judgement was delivered by Lord Sumption. I focus primarily on that, together with brief reference to what was said by the then President of the Court, Lord Neuberger. In a previous case a short time earlier, the Court had declined to embark upon an extensive analysis of the corporate veil issue.[10] To get a flavour of some of the discussion on lifting the veil, it is also worth noting that Lord Neuberger commented in *VTB* about "the use of pejorative expressions to mask the absence of rational analysis". In his comments in *Prest*, he partnered that reference with one from Justice Cardozo. That famous US judge had referred to "mists of metaphor" in company law which "*starting as devices to liberate thought, ...end often by enslaving it.*"[11]

---

[6] *Id.*, Salomon v. A. Salomon & Co., Ltd., [1897] A.C. 22 (H.L.).
[7] *See* Exhibit E, *Ashley -v- Scottish Football Association*, (2016 CSOH 78).
[8] In this instance Lord Brodie, who is likewise now a judge of the Inner House.
[9] Very commonly done in the Court of Session at a Procedure Roll Discussion – or legal Debate – where in effect one party argues that part or the whole of the opposition's case should be deleted (struck out) and not allowed to proceed to proof (trial).
[10] *See* Exhibit F, *VTB*, 2013 2WLR398.
[11] *Berkey v. Third Ave. Ry. Co.*, 244 N.Y. 84, 95, 155 N.E. 58, 61 (1926).

21. The Supreme Court not only carried out a review of authority in the UK, but also elsewhere in the world – including the United States. For the sake of brevity, I will not repeat the whole of that discussion here.

**Lord Sumption in Prest**

22. Lord Sumption regarded "piercing the corporate veil" properly used, as confined to true exceptions to the rule in *Salomon*, *i.e.* where a person (or for that matter entity) who owns and controls a company is said in certain circumstances to be identified with it, in law. In his review of authority, he started with a Scottish House of Lords (predecessor of the UK Supreme Court) decision in *Woolfson -v- Strathclyde Regional Council*.[12] That Court spoke of piercing the corporate veil only where special circumstances existed indicating that it was a mere facade concealing the true facts. Lord Sumption described the first systematic analysis of this topic in English case law as being in *Adams -v- Cape Industries plc*.[13] There the question was whether the UK parent of a US incorporated subsidiary was present in the US for the purpose of making a default judgment enforceable against it. That proposition was rejected by the English Court of Appeal, holding that the corporate veil could only be disregarded where it was being used for deliberately dishonest purposes, stressing that the Salomon principle could not be disregarded merely because the Court considered that justice so required and emphasising that subsidiary companies are to be treated as separate legal entities.

23. Lord Sumption concluded that most of the cases said to support the 'principle' were in fact cases where the corporate veil was *not* pierced. Most cases where it **had** been pierced could have been decided on other grounds. However, his view was that an analysis of the 'principle' could, and should, be identified. Talk of a "facade" or "sham" was not satisfactory; a general plea to "the interests of justice" equally so. Two potential principles could be identified. The "concealment principle" (which he described as "legally banal") lay where a company or several companies were interposed so as to conceal the identity of the real actors. That would not deter the Courts from identifying the real actors, assuming their identity was legally relevant. That was not lifting the veil at all. The Court was simply trying to discover the facts which the corporate structure was concealing.

24. The 'evasion principle' was different. That was to the effect that "the court may disregard the corporate veil if there is a legal right against the person in control of it which exists independently of the company's involvement, and a company is interposed so that the separate legal personality of the company will defeat the right or frustrate its enforcement." Lord Sumption concluded:

> "…there is a limited principle of English law which applies when a person is under an existing legal obligation or liability or subject to an existing legal restriction which he deliberately evades or whose enforcement he deliberately frustrates by interposing a company under his control. The court may then pierce the corporate veil for the purpose, and only for the

---

[12] *See* Exhibit **G**, *Woolfson -v- Strathclyde Regional Council*, (1978 SC (HL) 90).
[13] *See* Exhibit **H**, *Adams -v- Cape Industries plc*, (1990) Ch 433.

5

purpose, of depriving the company or its controller of the advantage that they would otherwise have obtained by the company's separate legal personality. The principle is properly described as a limited one, because in almost every case where the test is satisfied, the facts will in practice disclose a legal relationship between the company and its controller which will make it unnecessary to pierce the corporate veil. ...I consider that if it is not necessary to pierce the corporate veil, it is not appropriate to do so, because on that footing there is no public policy imperative which justifies that course. ...For all of these reasons, the principle has been recognised far more often than it has been applied. But the recognition of a small residual category of cases where the abuse of the corporate veil to evade or frustrate the law can be addressed only by disregarding the legal personality of the company is, I believe, consistent with authority and with long-standing principles of legal policy."[14]

**Lord Neuberger's Judgement**

25. Lord Neuberger, too, started with *Salomon*. That case was "the unyielding rock" on which company law is constructed. It was a substantial obstacle in the way of an argument that the veil of incorporation could be pierced. The importance of maintaining clarity and simplicity meant that the circumstances in which any doctrine which did pierce the veil could apply must be limited and as clear as possible.

26. Lord Neuberger noted comments on the lack of coherence in the doctrine which had been made in cases in other common law jurisdictions and likewise by judges in the United States. He quoted the decision of the Delaware Court of Chancery in *Allied Capital Corp v. GC-Sun Holdings LP*, to the effect that the doctrine had been "rightfully criticised for its ambiguity and randomness".[15] Academic writing was to a similar effect.[16]

27. Lord Neuberger's initial view was that the whole concept should simply be 'given its quietus', to make the law clearer and reduce cost. The doctrine "appears never to have been invoked successfully and appropriately in its 80 years of supposed existence". (Thus, it is no longer safe, I suggest, to rely on any previous case as authoritative in relation to the doctrine.) Ultimately Lord Neuberger was persuaded that this would be wrong, because the doctrine represented a potentially valuable judicial tool to undo wrongdoing, where no other principle was available. He was then persuaded to accept Lord Sumption's analysis.

---

[14] *See* Exhibit A.
[15] *Allied Capital Corp. v. GC-Sun Holdings, L.P.*, 910 A.2d 1020, 1042-43 (Del. Ch. 2006).
[16] One selected comment was from a discussion on veil piercing by Oh in Texas Law Review (89 TEXAS LAW REVIEW 81, 84 (2010)).

6

**Scottish Legal Principles on Piercing the Corporate Veil**

28. Accordingly, under Scots law, the doctrine of piercing the corporate veil should only be invoked[17] where: "a person: (1) is under an **existing** legal **obligation or liability** or subject to an existing legal restriction; (2) which he **deliberately evades** or whose enforcement he deliberately frustrates; (3) by interposing a company **under his control**.

29. Glossing a lengthy decision can be challenging, but it is suggested the following additional points regarding piercing the corporate veil under Scots law emerge:

    (i) the doctrine can only be invoked where there is "relevant wrongdoing" *i.e.* impropriety or dishonesty. That does not include *e.g.* relying on the fact that a liability is not the controller's because it is the company's;

    (ii) references to a 'façade' or a 'sham' provide no proper basis for applying the doctrine. Likewise, it is not enough that the result is thought to be "in the interests of justice";

    (iii) there will in fact be few cases – a "small residual category" – where the principle is applied, and

    (v) it can only be applied where no other principle is available.

**Conclusion**

30. I have also cited extensively from *Prest*, in part in light of the lengths that the Court went to in reviewing other materials, (from the UK and elsewhere and both academic writing and statements in the Courts). It is also clear that the Court's aim was to produce a clear analysis and definition to govern future cases. That analysis and summary – challenging though it may be to apply to any particular case - produced by the Court will be treated as authoritative (and in practice binding) on the issue of piercing the veil in the UK.

31. For the avoidance of doubt, what is set out above is the law based on my professional experience and within the areas to which my attention has been directed. I have not been asked to look at pleadings, arguments or other documents in the case.

32. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

    Executed on ___15/6___, 2018.

    R Craig Connal QC

---

[17] Using Lord Neuberger's summary in para 81 of *Prest* but adding numbering and emphasis. The formulation may also explain the comment in para 9 of this Declaration on the lack of subsidiary to subsidiary cases.