UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MCR OIL TOOLS LLC, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | |
| | § | |
| SPEX OFFSHORE LTD., | § | Civil Action No. 3:18-CV-731-X |
| SPEX SERVICES LTD., | § | |
| SPEX OFFSHORE (UK) LTD., | § | |
| SPEX GROUP US LLC, | § | |
| SPEX ENGINEERING (UK) LTD., | § | |
| SPEX GROUP HOLDINGS, LTD., | § | |
| SPEX CORPORATE HOLDINGS, | § | |
| LTD., AND JAMIE OAG, | § | |
| | § | |
| *Defendants*. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Earlier this century, SPEX Offshore, Ltd. and SPEX Services, Ltd. (two companies formerly within the SPEX family of corporations) licensed unique pipecutting tools from MCR Oil Tools, Inc.  MCR alleges that these companies, in cahoots with the rest of the SPEX family of Scottish corporations listed in this case's caption, violated their licensing agreements, stole large tracts of intellectual property, strategically divested themselves of all their assets except the licenses, and sought to escape accountability by dissolving themselves in a vat of Scottish law.

MCR's initial case in America against the SPEX entities was removed to this Court from a Texas state court.  MCR also filed suit to revive the dissolved companies—now known as General Services 1, Ltd. and General Services 2, Ltd.—in

1

the Outer House[1] of the Scottish Court of Session.  In the revival action, MCR won the initial stage.  But the SPEX family then filed a motion in the Inner House of the Scottish Court of Session seeking to keep the two dissolved entities dead.[2]  While the reclamation motion was pending, the SPEX family turned around and filed a motion in this Court to dismiss the American case on the grounds of *forum non conveniens* [Doc. No. 334].

Before the Court is that motion to dismiss for *forum non conveniens*.  The defendants argue that the private and public interest factors all weigh in favor of forcing MCR to litigate all their claims in Scotland.  MCR asserts that the defendants' motion is untimely, that the defendants have not and cannot meet their burden under the *forum non conveniens* standard, and that all private and public interest factors favor litigation in Texas.

Because the Court agrees that the defendants' motion is untimely, that they have not met their burden, and because the private and public interest factors favor venue in Texas, the defendants' motion to dismiss for *forum non conveniens* is **DENIED**.

## I. Background

In 2009, 2011, 2014, and 2015, SPEX Services Ltd. and SPEX Offshore Ltd. entered licensing agreements with MCR.  The agreements allowed SPEX Services Ltd., and SPEX Offshore Ltd. to use MCR's special oil pipe cutting tools and

---

[1] Out houses mean something quite different in Texas.

[2] A reclaiming motion is a type of appeal.  *See* Rules of the Court of Session 1994, Chapter 38.

associated intellectual property. The specific tools and intellectual property that were licensed involved MCR's special pipe cutting tools. These pipe cutting tools allow oil companies to quickly cut and retrieve blocked pipes. Most pipe cutting tools used by oil companies involve explosives that create burrs and imperfections at the cut. These burrs delay the removal of blocked pipes from their wells because oil companies have to grind them for easier removal. On the other hand, MCR's tools use a propellant mixture that creates a plasma that acts like directed magma. This propellant mixture makes a clean cut of the oil pipe. The clean cut allows oil companies to remove the pipe without the added delay of sending a grinding tool down the pipe before being able to lift the pipe out of the well. In real terms, MCR's tools save the oil rigs approximately 10 hours to an entire day when used to remove blocked pipes. This savings in time saves oil companies millions of dollars.

In the licensing agreements, SPEX Services Ltd. and SPEX Offshore Ltd.: (a) acknowledged that MCR would own any improvements or modifications developed by them; (b) assigned, conveyed and sold any rights in any such improvements or modifications to MCR; and (c) undertook to co-operate in executing, or causing to have executed, any documents necessary to effect such a transfer.

In 2014, 2015, and 2016, James Oag (the director of several SPEX companies) and Rae Younger filed for patents in the United Kingdom. These patents included such things as an "Improved Plug," "Downhole Tool with a Propellant Charge," "[a] Tool for Severing Or Assisting In The Severing Of A Conduit," an "Improved Tool," a

"Downhole Tool", and more.[3]  Oag and Younger then assigned several of these patents to SPEX Services Ltd., which assigned some to SPEX Engineering UK.

MCR alleges that these patents are based on intellectual property stolen by the SPEX family of businesses, and that they violate the licensing agreement MCR had with SPEX Services Ltd. and SPEX Offshore Ltd.

In 2016, SPEX Holdings was formed, and SPEX Services Ltd. transferred all of its assets—except the licensing agreements with MCR—to SPEX Holdings.  SPEX Offshore Ltd. and SPEX Services Ltd. then changed their names to General Services 1 Ltd., and General Services 2 Ltd., respectively.[4]  The SPEX family of companies allegedly continues to file patents in various European countries based on MCR's intellectual property.

In 2017, without notice to MCR, SPEX Offshore Ltd. and SPEX Services Ltd.—now known as General Services 1 Ltd. and General Services 2 Ltd.—were bankrupted and dissolved.  The only assets left to these companies before their self-imposed demise were the licenses with MCR.

MCR subsequently sued the SPEX family of businesses in Texas state court.

In 2018, MCR's case was removed to federal court.  As of the date of this order, there have been just short of 400 docket filings.  The defendants have filed ten motions to dismiss.  Both parties have conducted extensive document discovery.  There have been eight motions hearings.  The plaintiffs are on their third amended

---

[3] Plaintiffs' Third Amended Complaint ¶¶ 49–50, 53–55 [Doc. No. 113].

[4] MCR asserts that it was not notified of the name change.

complaint, and on their second attempt to file a fourth amended complaint.  And the Inner House of the Scottish Court of Session has just raised SPEX Offshore Ltd. and SPEX Services Ltd. from the dead.

## II.  Law

The first step in a *forum non conveniens* analysis requires the Court to decide whether an available and adequate alternative forum exists.[5]  A forum is available and adequate if that forum would have personal jurisdiction over the defendants and provide the plaintiff with adequate remedies.[6]

If such a forum exists, the second step requires the Court to decide which forum is preferable to host the suit after balancing private and public interest factors.[7]  The defendant bears the burden of proof on all elements of the analysis, including the burden of proving the private and public interest factors weigh in their favor.[8]

The private interest factors include: (1) the relative ease of access to sources of proof; (2) availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; (3) the possibility of viewing the premises, if inspection would be appropriate to the action; and (4) all other practical

---

[5] *Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 221 (5th Cir. 2000); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254–55 (1981).

[6] *Alpine View Co. Ltd.*, 205 F.3d at 221 (stating a viable alternative forum exists when the entire case and all of the parties can appear within the jurisdiction of the proposed forum.)

[7] *Id.* at 221–22; *Piper Aircraft Co.*, 454 U.S. at 255.

[8] *Piper Aircraft Co.*, 454 U.S. at 255.

problems that make trial of a case easy, expeditious, and inexpensive.[9]  The fourth factor includes a consideration of the timeliness of the motion.[10]

The public interest factors consist of (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; (4) the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty.[11]

### III.  Analysis

For the sake of argument, the Court will assume that the Scottish courts are available and adequate and moves on to considering the various public and private interest factors at play in this case.

The Court will first go through the private interest factors.  After evaluating the private interest factors, the Court will discuss the public interest factors.  Lastly, the Court will briefly address the timeliness of the defendants' *forum non conveniens* motion.

---

[9] *Id.* at n.6 (quotation marks omitted).

[10] *See In re Air Crash Disaster Near New Orleans, La. on July 9, 1982*, 821 F.2d 1147, 1165, n.30 (5th Cir. 1987) ("A defendant's dilatoriness promotes and allows the very incurrence of costs and inconvenience the doctrine is meant to relieve" and "We believe the timeliness of the motion is one of the private 'practical problems' to be considered under the *Gulf Oil* and *Reyno* principles").

[11] *Id.*

A.  Private Interest Factors

Defendants argue that the private interest factors favor Scotland because a large portion of the remaining discovery is in Scotland; 28 potential witnesses reside in Scotland and their live testimony is better than video testimony or video depositions; and it would be expensive to bring the Scottish witnesses to the United States.  Additionally, the defendants argue that at least two claims deal with Scottish law exclusively and therefore it would be more convenient to litigate the whole case in Scotland.  Finally, they assert that if they, the defendants, happen to be wrong about the ability of MCR to litigate all its claims in Scotland, the Court could always revive this case here in Dallas.[12]

Plaintiff responds that "dismissal for forum non conveniens is the exception rather than the rule"[13] and "[t]he plaintiff's choice of forum is entitled to great weight in the balancing of factors[.]"[14]  The plaintiff also asserts that the witnesses the defendant lists are not exhaustive and that a great deal of evidence and witnesses needed to prove up the similarity between the competing patents and to establish the theft are here in Texas.  They also argue that neither Scottish nor U.S. courts can compel foreign witnesses, so the defendants' concern over video depositions and

---

[12] *Robinson v. TCI/US West Comms. Inc.*, 117 F.3d 900, 907 (5th Cir. 1997) (holding the failure to include a return jurisdiction clause in a *forum non conveniens* dismissal constitutes a per se abuse of discretion).

[13] *In re Air Crash*, 821 F.2d at 1164 n. 26 (citing WRIGHT, MILLER & COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION § 3828, at 291–92 (2d ed. 1986)).

[14] *Syndicate 420 at Lloyd's London v. Early Am. Ins. Co.*, 796 F.2d 821, 830 (5th Cir. 1986).

7

possible remote testimony is six of one and half-dozen of another.  The plaintiffs also assert that the motion is untimely.

Defendants replied with reiterations of their initial arguments while spending a good deal of time on plaintiff's untimeliness argument.  One of the cases defendants cite to bolster their position is *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G.*[15]  Defendants assert that *Empresa's* "stage of development did not weigh against dismissal even though underlying suit was filed eight years before and even though much work ha[d] been done."[16]  What the defendants don't mention is that case started with numerous defendants but, after 8 years, many of the defendants had settled or been dismissed for various reasons.  There was also a lingering question as to whether the court had jurisdiction over the remaining defendant, with two prior motions to dismiss for *forum non conveniens* relating to that issue being denied.  In this case, we have been adding defendants and reviving some from the dead, not getting rid of them.  And the pending *forum non conveniens motion* is the first such motion in this case.

The first of the private interest factors involves the ease of access to sources of proof.  The defendants' argument that much of the discovery resides in Scotland is unpersuasive given modern technology.  Even assuming that all the discovery existed in Scotland, the practice of law has moved on from the twentieth century.  The discovery in this case does not involve a physical tort like assault and battery, or

---

[15]  955 F.2d 368, (5th Cir. 1992).

[16] Defendants' Reply in Support of their Motion to Dismiss on Forum Non Conveniens at 3 (quotation marks omitted) (alteration in original).

injuries resulting from a fall caused by the SPEX family's negligent maintaining of some premises located in Scotland.

MCR is on a paper chase, seeking its proof in discovery that is electronically stored or easily scanned for the purposes of electronic transmission across the Atlantic.  Regarding depositions, Charles Ginsburg invented video recording in 1951, allowing the preservation of both moving images and sound.[17]  Al Gore's internet has been around since at least the 1980s.  It is now possible to take a deposition with parties present from as many locations as can be supported by the server being used. Meaning, getting discovery from point A to point B is nearly instantaneous.  Given that the extent of the sources of proof are electronic (or easily converted thereto) or captured by electronic means, the Court does not believe the defendants have met their burden on the first factor.  And video depositions for unavailable witnesses are admissible at trial.  The Court just conducted a jury trial that involved the presentation of three witnesses by deposition.

The second factor looks at the Court's power to compel unwilling witnesses, and the cost to the parties of obtaining the attendance of willing witnesses.  Given the litigation strategies of both parties, it would not surprise the Court if issues of

---

[17] Rachel Nuwer, *The Inventor of Videotape Recorders Didn't Live to See Blockbuster's Fall*, SMITHSONIAN MAGAZINE (Nov. 7, 2013), https://www.smithsonianmag.com/smart-news/the-inventor-of-videotape-recorders-didnt-live-to-see-blockbusters-fall-180947594/.

unwilling witnesses arose.[18]  But in the interest of international comity the nations of the world have provided a remedy to this issue for litigants facing that prospect.[19] Since both the United Kingdom and the United States are signatories of *The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters*, the parties can compel unwilling witnesses as necessary.[20]   The Hague evidence convention creates, among other things, a process for litigants in a suit in one signatory country to compel unwilling witnesses residing in other signatory countries.[21]  The Federal Rules of Civil Procedure recognize the existence of this process in Rule 28(b), which informs litigants of the possibility of taking depositions in foreign countries and supplies litigants with the initial details of the process.  As there may be unwilling witnesses in Scotland and in the U.S., if this case were dismissed for the sake of litigation in Scotland the Court finds that this factor leads to a neutral conclusion.  In other words, the defendants have not met their burden for the second factor.

Given that there appears to be little need for the viewing of premises, and given that the parties both appear to be well-heeled enough—having both spent (according

---

[18] The Court assumes that the defendants' argument is not an implied threat that this will happen if the case were to remain in Texas.  Therefore, the discussion of this factor is, of course, purely academic.

[19] The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444.

[20] The Court judicially notices that Scotland is still part of the United Kingdom.  That said, given this case's timeline trajectory, the parties are ordered to notify the Court if William Wallace achieves his dream posthumously and Scotland achieves independence from the U.K. during this litigation.

[21] The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, art. 1–10, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444.

to the parties) "millions of dollars" on this case—to view any premise they have permission to view, the third factor does not factor into the Court's consideration.

The fourth private interest factor is the catch-all, and it deals with all other practical problems that make trial of a case easy, expeditious, and inexpensive.[22] This fourth factor includes a consideration of the timeliness of the motion.[23]  On this point, the Court finds that the motion is untimely given the well-developed nature of this proceeding.

### B.  Public Interest Factors

Defendants argue that there is no need to get to the public interest factors, but they say that if the Court does, this case would create administrative difficulties, there is a local interest in having the controversy resolved in Scotland, Scottish lawyers will be familiar with the two claims requiring application of Scottish law, and it would be an unfair burden for Texas citizens to have to be jury members.  MCR parallels these arguments but instead contends Texas is the proper forum.  MCR also points out that it has a forum selection clause with General Services 1 Ltd. and General Services 2 Ltd. that designates Texas as the proper forum.

Insofar as administrative difficulties and conflict of law issues are concerned, the Court finds that the administrative difficulties here are not sufficient to override MCR's forum selection, that the majority of claims will still be decided under United

---

[22]  *See In re Air Crash*, 821 F.2d at 1162.

[23]  *See id.* at 1165, n.30 ("We believe the timeliness of the motion is one of the private 'practical problems' to be considered under the *Gulf Oil* and *Reyno* principles.").

States or Texas law, and that the applicable Scottish law is not so complicated as to warrant dismissal for the sake of litigation in Scotland.

Regarding local interest and burdening citizens with jury duty, the situation there is clear.  MCR has alleged that foreign corporations came to Texas to license Texan intellectual property and tools that would make (and save their clients) millions of dollars fixing blocked oil pipes.  As part of the licensing agreement, those foreign corporations promised not to steal the Texans' property.  MCR then alleges that the SPEX family stole the Texans' property and conspired with other MCR clients, such as Haliburton, to test and develop tools to compete with the Texan tools. Given the well-pled complaint, the Court finds that these facts, if proved by MCR, give Texas a significant interest in the outcome of this suit.  And it will not be unfair to burden Texan citizens with deciding the outcome.

IV.  Conclusion

The defendants' motion to dismiss for *forum non conveniens* is **DENIED**.

**IT IS SO ORDERED** this 4th of September, 2020.

_____

BRANTLEY STARR
UNITED STATES DISTRICT JUDGE

12