# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| MCR OIL TOOLS LLC § <br> § <br> v. § <br> § <br> SPEX OFFSHORE LTD, SPEX SERVICES § <br> LTD, SPEX OFFSHORE (UK) LTD, SPEX § <br> GROUP US LLC, SPEX ENGINEERING § <br> (UK) LTD, SPEX GROUP HOLDINGS § <br> LTD, SPEX CORPORATE HOLDINGS § <br> LTD, and JAMIE OAG § | CIVIL ACTION NO. 3:18-CV-0731-S |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Defendants' Motion to Dismiss Plaintiff's Fifth Amended Complaint ("Motion") [ECF No. 509]. The Court has reviewed the Motion, Plaintiff MCR Tools, LLC's Response to the Motion ("Response") [ECF No. 520], Defendants' Reply in Support of the Motion ("Reply") [ECF No. 523], and the applicable law. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

### I. BACKGROUND

According to the operative pleading, Plaintiff MCR Oil Tools LLC "researches, invents, designs, develops, manufactures and sells oilfield tools, products, equipment and accessories" including "non-explosive, thermite-based tools—pipe cutters or torches fueled by solid combustible fuel—used to cut, perforate and consume oil well pipe downhole." Pl.'s Fifth Am. Compl. [ECF No. 503] ¶ 25. Plaintiff licensed some of its technology to Defendants SPEX Services and SPEX Offshore in agreements executed in 2009, 2011, 2014, and 2015. *Id.* ¶¶ 34-44. The agreements included provisions that were "specifically negotiated by [Plaintiff] in order to protect its [t]ools and intellectual property." *Id.* ¶ 44. The rest of the 129-page pleading details Defendants' alleged plot to "use their web of agents to damage [Plaintiff] and obtain a competitive

advantage in the marketplace" by inducing the Pipeline and Hazardous Materials Safety Administration ("PHMSA"), the United States agency that regulates transportation of hazardous materials, to "alter the longstanding Hazardous Materials Regulation ("HMR") classification of [Plaintiff]'s thermite-based technology from a Class 4 'non-explosive' categorization to an erroneous Class 1 'explosive' designation." *Id.* ¶ 176. The reclassification allegedly caused "a wide range of civil and criminal penalties as punishment, and result[ed] in complete shutdowns and grave monetary loss." *Id.*

This case has been pending for almost eight years.[1] *See* Notice of Removal, ECF No. 1, filed March 27, 2018. The operative pleading, filed in August 2025, is now Plaintiff MCR Oil Tools LLC's Fifth Amended Complaint. That pleading asserts fourteen "counts" against Defendants General Services I, Ltd., f/k/a/ SPEX Offshore, Ltd.; General Services 2, Ltd., f/k/a/ SPEX Services, Ltd.; SPEX Offshore (UK) Ltd.; SPEX Group US, LLC; SPEX Engineering (UK) Ltd.; SPEX Group Holdings, Ltd.; SPEX Corporate Holdings, Ltd.; and Jamie Oag:

1. Breach of contract, Fifth Am. Compl. ¶¶ 214-218;
2. Specific performance, *id.* ¶¶ 219-221;
3. Declaratory judgment, *id.* ¶¶ 222-226;
4. Misappropriation of trade secrets under the Texas Uniform Trade Secrets Act, *id.* ¶¶ 227-259;
5. Misappropriation of trade secrets under the Defend Trade Secrets Act, *id.* ¶¶ 260-266;
6. Unfair competition under Texas law, *id.* ¶¶ 267-271;
7. Common-law fraud and fraudulent inducement, *id.* ¶¶ 272-279;
8. Tortious interference with an existing contract, *id.* ¶¶ 280-282;

---

[1] The case was reassigned to the undersigned in July 2025. *See* ECF No. 485.

9. Alter ego/piercing the corporate veil, *id.* ¶¶ 283-293;

10. Denuding the corporation, *id.* ¶¶ 294-295;

11. Conspiracy, *id.* ¶¶ 296-302;

12. Malicious prosecution, *id.* ¶¶ 303-313;

13. Violations of the Texas Uniform Fraudulent Transfer Act ("TUFTA"), *id.* ¶¶ 314-319; and

14. Business disparagement, *id.* ¶¶ 320-325.

Plaintiff seeks damages and injunctive relief. *Id.* 128.

Defendants moved to dismiss some of the claims in the Fifth Amended Complaint for failure to state a claim. Mot. 2-3. The Motion targets Plaintiff's allegations of fraud, tortious interference, conspiracy, malicious prosecution, TUFTA violations, and business disparagement. *Id.* at i-ii.

## II. LEGAL STANDARD

To survive a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). The court does not, however, accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). At the motion-to-dismiss stage, the court does not evaluate the plaintiff's likelihood of success but determines only whether the plaintiff has stated a claim upon which relief can be granted. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

Federal Rule of Civil Procedure 9(b) requires that claims sounding in fraud must be pleaded with particularity. *Nix v. Major League Baseball*, 62 F.4th 920, 931 (5th Cir. 2023). In other words, a plaintiff must provide the "who, what, when, where, and how" of the alleged fraud. *Daughtry v. Silver Fern Chem., Inc.*, 138 F.4th 210, 215 (5th Cir. 2025).

### III. ANALYSIS

Defendants ask the Court to dismiss Plaintiff's claims of fraud, conspiracy, tortious interference with contract, malicious prosecution, violations of TUFTA, and business disparagement. Mot. 2-3. Applying the facial plausibility jurisprudence of *Twombly* and *Iqbal*, accepting all well-pleaded facts as true, and viewing the facts in the light most favorable to Plaintiff, the Court concludes that Plaintiff's Fifth Amended Complaint pleads sufficient facts to state facially plausible claims for: tortious interference with contract; malicious prosecution; TUFTA violations; business disparagement; and conspiracy to commit those acts. To the extent that the Motion asks the Court to dismiss those claims, it is **DENIED**.

The Court therefore addresses only the allegations pertaining to the fraud and related conspiracy claims. Defendants argue that the fraud claims and the civil-conspiracy claims that rely on the alleged fraud must be dismissed because alleged co-conspirators Craig Dillard and Terrell Miller are protected by attorney immunity and because the allegations fail to state a claim.

4

Mot. 5-18. Attorney immunity does not bar Plaintiff's claims, but one of Plaintiff's alleged fraud claims must be dismissed.

### A. Attorney Immunity

Texas law provides that, "as a general rule, attorneys are immune from civil liability to non-clients for actions taken in connection with representing a client in litigation." *Cantey Hanger, LLP v. Byrd*, 467 S.W.3d 477, 481 (Tex. 2015) (quotation marks omitted). Attorney immunity is an affirmative defense. *Id.* That immunity "does not apply to an activity simply because attorneys often engage in that activity"; instead, it only "applies when attorneys act in the uniquely lawyerly capacity of one who possesses the office, professional training, skill, and authority of an attorney." *Landry's, Inc. v. Animal Legal Def. Fund*, 631 S.W.3d 40, 47, 52 (Tex. 2021) (quotation marks omitted). That immunity may extend even to wrongful conduct if it is "part of the discharge of the lawyer's duties in representing his or her client." *Byrd*, 467 S.W.3d at 482. But misbehaving attorneys may still be subject to "other mechanisms [that] are in place to discourage and remedy such conduct, such as sanctions, contempt, and attorney disciplinary proceedings." *Id.*

The operative complaint identifies attorneys Dillard and Miller as "co-conspirators," Pl.'s Fifth Am. Compl. ¶¶ 15-16, and the allegations describe their involvement in the alleged fraud. But the attorneys are not defendants in this suit, and Plaintiff does not seek to hold them liable for fraud or civil conspiracy. Defendants identify no authority to support their position that the doctrine of attorney immunity extends to immunize non-attorneys, so the Court will not dismiss the claims against Defendants, none of whom are attorneys, on that basis.

### B. Fraud and Civil Conspiracy

A fraud claim under Texas law consists of four elements:
(1) the defendant made a material representation that was false;
(2) the defendant knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth;

(3) the defendant intended to induce the plaintiff to act upon the representation; and

(4) the plaintiff actually and justifiably relied upon the representation and suffered injury as a result.

*JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018). The last element "has two requirements: the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable." *Id.*

The "essential elements" of a civil-conspiracy claim are "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). For the last element, "the injury is the damage from the underlying wrong, not the conspiracy itself." *Agar Corp., Inc. v. Electro Circuits Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019).

There are two sets of alleged misrepresentations that form the basis of Plaintiff's fraud claims: (1) statements by Defendants SPEX Services, SPEX Offshore, and Jamie Oag related to agreements executed in 2011, 2014, and 2015; and (2) statements by Dillard to PHMSA regarding the classification of Plaintiff's thermite-based technology.

Plaintiff alleges that Defendants SPEX Services, SPEX Offshore, and Oag represented in the agreements that they had not developed any technology similar to Plaintiff's and that they had no intention of doing so. *Id.* ¶¶ 51-52. Plaintiff alleges that it relied on those statements when it entered into the licensing agreements with Defendants. *Id.* Plaintiff alleges that, around the time the 2014 agreement was executed, SPEX Services and Oag began filing patent applications "in an attempt to rebrand [Plaintiff]'s intellectual property as their own." *Id.* ¶¶ 55-59. That is enough to state a claim for fraud.

Plaintiff also alleges that Dillard made false statements to PHMSA in a letter describing Plaintiff's thermite-based product as dangerous and suggesting that the Class 4 non-explosive

6

classification was improper. Pl.'s Fifth Am. Compl. ¶ 199. Plaintiff alleges that PHMSA relied on those statements first when it issued a letter in February 2022 reclassifying the product as a Class 4.1 Flammable Solid and later in May 2024 when it issued a letter preventing Plaintiff from transporting its product because it was not approved for transport. *Id.* ¶ 207. Plaintiff alleges that it suffered millions of dollars in damages because it had to reconfigure its supply chain based on the new, erroneous classification. *Id.* ¶ 205.

Texas law recognizes fraud claims based on misrepresentations made to a third party only where the defendant making the false statement intends both that the third party relay the statement to the plaintiff and that the plaintiff to rely on it. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001). Plaintiff pleads that PHMSA relied on the false statements about the dangers of the thermite-based product in the Dillard letter. But Plaintiff does not plead its own reliance on those statements—nothing in the operative pleading suggests that Plaintiff changed its position on the explosive nature of its thermite-based product in response to PHMSA relaying Dillard's false statements. Instead, the operative pleading demonstrates that Plaintiff has maintained all along that its product is not explosive. *See, e.g.*, Pl.'s Fifth Am. Compl. ¶¶ 25, 199-200, 208. Without Plaintiff's reliance on the allegedly false statements, the Fifth Amended Complaint fails to state a claim of fraud for the alleged misrepresentations in the Dillard letter. That claim, and the conspiracy claim that relies on it, are therefore **DISMISSED**.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion to Dismiss Plaintiff's Fifth Amended Complaint [ECF No. 509].

**SO ORDERED.**

SIGNED December 23, 2025.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**