# United States District Court
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| MCR OIL TOOLS, LLC<br><br>v.<br><br>GENERAL SERVICES 1 LTD. f/k/a SPEX OFFSHORE LTD., GENERAL SERVICES 2 LTD. f/k/a SPEX SERVICES LTD., SPEX OFFSHORE (UK) LTD., SPEX GROUP US LLC, SPEX ENGINEERING (UK) LTD., SPEX GROUP HOLDINGS, LTD, SPEX CORPORATE HOLDINGS, LTD., and JAMIE OAG | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:18-CV-0731-S |

## MEMORANDUM OPINION AND ORDER

This Memorandum Opinion and Order addresses Plaintiff's Motion to Dismiss Defendants' Counterclaims and Brief in Support ("Motion") [ECF No. 540]. The Court has reviewed the Motion, Defendants' Response to the Motion ("Response") [ECF No. 579], Plaintiff's Reply in Support of the Motion [ECF No. 593], and the applicable law. For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion.

## I. BACKGROUND

On December 27, 2017, Plaintiff MCR Oil Tools, LLC, filed suit against Defendants SPEX Offshore (UK), Ltd. ("SPEX Offshore"), SPEX Group US LLC ("SPEX Group US"), and SPEX Engineering (UK), Ltd. ("SPEX Engineering") in Texas state court. SPEX Offshore's Notice of Removal [ECF No. 1] 1. SPEX Offshore removed the case to federal court, where it has been pending since 2018. After multiple judges[1] and iterations of Plaintiff's operative pleading, the undersigned was assigned to the case and permitted Plaintiff to file its Fifth Amended Complaint

[1] The case was reassigned to the undersigned in July 2025. *See* ECF No. 485.

and Application for Permanent Injunctive Relief [ECF No. 503]. *See* ECF Nos. 485, 497. On January 16, 2026, Defendants SPEX Offshore, SPEX Group US, SPEX Engineering, SPEX Group Holdings, Ltd., SPEX Corporate Holdings, Ltd. (collectively with the preceding Defendants, "SPEX Companies"), and Jamie Oag filed their Answer to Plaintiff's Fifth Amended Complaint and Application for Permanent Injunctive Relief and Counterclaims [ECF No. 536].[2]

Defendants allege that the SPEX Companies "are specialists on the use of explosives in the oilfield industry." Countercls. 41 ¶ 11. The SPEX Companies "design, model[,] and manufacture energetic downhole tools using non-thermite fuel to cut drill pipe and other tubulars." *Id.* Plaintiff manufactures and sells thermite-based pipe cutting tools for use in oil and gas wells. *Id.* Defendants allege that they had a business relationship with Plaintiff. *See, e.g.*, *id.* at 42 ¶ 14. Defendants challenge a number of actions allegedly taken by Plaintiff both before and during this lawsuit.

First, Defendants take issue with Plaintiff's classification of its fuel and tools. Plaintiff allegedly represented to Defendants and others that its tools use a non-explosive fuel. *Id.* at 41 ¶ 12. But, according to Defendants, this representation was false. *Id.* at 42 ¶ 13. Defendants claim that Plaintiff's fuel is a "misclassified hazardous explosive." *Id.* Defendants state that they relied on Plaintiff's representations about its fuel in deciding to continue a business relationship with Plaintiff and in incurring the increased costs of Plaintiff's tools. *Id.* at 42 ¶ 14.

Second, Defendants contest the filing of the instant lawsuit, alleging that Plaintiff filed it, "in part, to derail Defendants' prospective sale of assets to Halliburton." *Id.* at 42 ¶ 15. And Defendants contend that Plaintiff further interfered with the prospective sale by making false statements about its own tools and disparaging Defendants' tools, fuel, services, "and other economic interests." *Id.*

[2] Defendants' Answer spans pages 2-39 of ECF No. 536. Defendants' Counterclaims are found on pages 40-59 of ECF No. 536. The Court will refer to the latter portion of the document as the Counterclaims.

Third, Defendants allege that Plaintiff misappropriated their trade secrets. *Id.* at 42 ¶ 16. According to Defendants, they "had to disclose their trade secret information in discovery pursuant to a protective order," and they designated the materials as "Attorneys Eyes Only." *Id.* at 44 ¶ 19. Defendants assert that Plaintiff is now using the trade secrets it obtained in discovery to develop competing tools and fuel. *Id.*

Fourth, Defendants claim that Plaintiff has "published false and disparaging words about Defendants['] tools, fuel, services, and other economic interests to Defendants' customers and regulatory officials throughout the world." *Id.* at 44 ¶ 20. As a result, Defendants state that Plaintiff has interfered with Defendants' contracts with their customers. *Id.*

Fifth, Defendants assert that the above conduct caused Oag—an officer of the SPEX Companies—severe emotional distress. *Id.* at 41 ¶ 11, 44 ¶ 21.

Sixth, Defendants challenge Plaintiff instituting or continuing a liquidation proceeding in Scotland ("Scottish Proceeding") involving Defendants General Services 1 Ltd. ("GS1") and General Services 2 Ltd. ("GS2"). *Id.* at 45 ¶ 22. Defendants allege that Plaintiff "fabricated" claims so that Scottish liquidators would take control of GS1 and GS2. *Id.* The Scottish Proceeding allegedly ended with an award of $2,500,000 to Defendants as the prevailing parties. *Id.* at 45 ¶ 23. Defendants allege that to avoid the judgment, Plaintiff has (1) "transferr[ed] assets and property interests to" unidentified "insiders and affiliates" and (2) "divert[ed] company assets between and among its controlling affiliates." *Id.*

Based on the foregoing allegations, Defendants bring the following claims against Plaintiff: (1) fraud; (2) trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, and Texas Uniform Trade Secrets Act ("TUTSA"), TEX. CIV. PRAC. & REM. CODE ANN. § 134A.001, et seq.; (3) unfair competition; (4) business disparagement; (5) malicious

prosecution; (6) tortious interference with prospective relationship; (7) tortious interference with contract; (8) fraudulent transfer under the Texas Uniform Fraudulent Transfer Act ("TUFTA"), TEX. BUS. & COM. CODE ANN. § 24.001, et seq.; and (9) denuding the corporation. Countercls. 49-56 ¶¶ 35-67. Individually, Oag asserts a claim for intentional infliction of emotional distress ("IIED"). *Id.* at 56 ¶¶ 68-69.

## II. LEGAL STANDARD

To survive a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court must accept well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins.*, 509 F.3d 673, 675 (5th Cir. 2007). The court does not, however, accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007). A plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation omitted). At the motion-to-dismiss stage, the court does not evaluate the plaintiff's likelihood of success but determines only whether the plaintiff has stated a claim upon which relief can be granted. *See Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977).

Federal Rule of Civil Procedure 9(b) requires that claims sounding in fraud must be pleaded with particularity. *Nix v. Major League Baseball*, 62 F.4th 920, 931 (5th Cir. 2023) (citation omitted). In other words, a party must provide the "who, what, when, where, and how" of the alleged fraud. *Daughtry v. Silver Fern Chem., Inc.*, 138 F.4th 210, 215 (5th Cir. 2025) (citation omitted).

## III. ANALYSIS

Plaintiff moves to dismiss all of Defendants' counterclaims. Plaintiff begins by arguing that the counterclaims fail because of Defendants' group pleading. Mot. 6. Next, Plaintiff argues that the statute of limitations bars the fraud claim and potentially other claims. *Id.* at 6-7, 10. Finally, Plaintiff focuses on each claim individually and identifies defects that allegedly warrant dismissal. *Id.* at 7-25.

### *A. Group Pleading*

Plaintiff first moves to dismiss Defendants' counterclaims because Defendants rely on group pleading and "seemingly impute all the harm of each Defendant to each of the others." *Id.* at 6. Having reviewed the Counterclaims, the Court declines to dismiss them on this basis. Except as set forth below, Defendants have adequately pleaded their claims and alleged harm at this stage.

### *B. Statute of Limitations*

Plaintiff next moves to dismiss all of Defendants' counterclaims on statute of limitations grounds. The argument is divided into two parts. First, as to all causes of action other than fraud, Plaintiff "reserves the right to assert that any claim is and should be barred on statute of limitations grounds upon re-pleading the actual timing of relevant allegations." *Id.* at 6-7. However, the Court is not ordering Defendants to replead. Further, "Rule 12(b)(6) dismissal under a statute of limitation is proper only when the complaint makes plain that the claim is time-barred and raises no basis for tolling." *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 253 (5th Cir.

2021) (citation omitted). Because the Counterclaims do not make the limitations defense plain, the Court will not dismiss Defendants' non-fraud claims as time barred.

Second, as to Defendants' fraud claim, Plaintiff argues that Defendants failed to file this claim within the four-year statute of limitations. Mot. 10. But Plaintiff relies on inferences and matters outside of the pleadings to draw this conclusion. *See id.* It is not evident from Defendants' pleadings that the fraud claim "is barred," and Defendants "raise[d] some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir. 2003) (citation omitted); *see also* Countercls. 56-58 ¶¶ 70-75. Thus, it would be improper to dismiss Defendants' fraud claim as time barred at this stage.

### *C. Fraud*

To state a fraud claim under Texas law, Defendants must plead four elements: (1) Plaintiff made a material representation that was false; (2) Plaintiff knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) Plaintiff intended to induce Defendants to act upon the representation; and (4) Defendants actually and justifiably relied upon the representation and suffered injury as a result. *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (citation omitted). The last element "has two requirements: [Defendants] must show that [they] actually relied on [Plaintiff's] representation and, also, that such reliance was justifiable." *Id.* (citation omitted).

Defendants allege that Plaintiff fraudulently represented that its tools and fuel were not explosive "[i]n written and verbal statements made by its employees." Countercls. 49 ¶ 36. Plaintiff challenges Defendants' fraud claim, contending that it "rest[s] on broad allegations that do not specify the speaker of any statement, identify when and where statements were made, explain why the statements were fraudulent, or even identify any specific statement." Mot. 8. Plaintiff also asserts that Defendants do not plead facts supporting Plaintiff's intent to commit

fraud, that Defendants cannot allege falsity, and that Defendants lack standing because they do not allege that Plaintiff made a representation to them or that Defendants relied on any representation. *Id.* at 9, 11-13.

Having reviewed the Counterclaims, the Court finds that Defendants' fraud claim, as pleaded, is somewhat weak. And Plaintiff's arguments against the fraud claim have some merit. However, given the firm trial setting and procedural posture of this case, the Court finds that it is more proper to address Defendants' fraud claim at the summary judgment stage, as opposed to granting the Motion and allowing Defendants to replead. As such, the Court denies Plaintiff's request to dismiss the fraud claim.

### *D. Trade Secrets*

Trade secret misappropriation claims under the DTSA and TUTSA have similar elements, so courts often analyze them together. *Atlus Grp. US, Inc. v. Cole*, No. 3:25-CV-1361-B, 2026 WL 673587, at *8 (N.D. Tex. Mar. 10, 2026) (citation omitted). To state a misappropriation claim, Defendants must allege that: (1) a trade secret existed, which Defendants owned; (2) Plaintiff acquired the trade secret through a breach of a confidential relationship or discovered by improper means; and (3) Plaintiff used the trade secret without authorization from Defendants. *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 149-50 (5th Cir. 2004) (citation omitted); 18 U.S.C.§ 1836(b)(1); TEX. CIV. PRAC. & REM. CODE § 134A.002(3-a). Applying the facial plausibility jurisprudence of *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and accepting all well-pleaded facts as true, and viewing them in the light most favorable to Defendants, the Court concludes that the Counterclaims contain sufficient facts to state plausible trademark misappropriation claims under federal and state law. Accordingly, the Court denies the Motion with respect to these claims.

### *E. Unfair Competition*

Unfair competition by misappropriation requires Defendants to plead: (1) the creation of their product through extensive time, labor, skill, and money; (2) Plaintiff's use of Defendants' product in competition with Defendants, thereby gaining a special advantage in that competition; and (3) commercial damage to Defendants. *Baylor Scott & White v. Project Rose MSO, LLC*, 633 S.W.3d 263, 287 (Tex. App.—Tyler 2021, pet. denied) (citation omitted). Applying the facial plausibility jurisprudence of *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and accepting all well-pleaded facts as true, and viewing them in the light most favorable to Defendants, the Court concludes that the Counterclaims contain sufficient facts to state a claim for unfair competition by misappropriation that is plausible on its face. As such, the Court denies the Motion with respect to this claim.

### *F. Business Disparagement*

To state a claim for business disparagement, Defendants must allege: (1) that Plaintiff published false and disparaging information about them; (2) with malice; (3) without privilege; (4) that resulted in special damages to Defendants. *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 155 (Tex. 2014) (citation omitted). Applying the facial plausibility jurisprudence of *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and accepting all well-pleaded facts as true, and viewing them in the light most favorable to Defendants, the Court concludes that the Counterclaims contain sufficient facts to state a business disparagement claim that is plausible on its face. Accordingly, the Court denies the Motion as to this claim.

### *G. Malicious Prosecution*

A claim for malicious prosecution requires Defendants to allege: (1) the institution or continuation of civil proceedings against them; (2) by or at the insistence of Plaintiff; (3) malice

in the commencement of the proceeding; (4) lack of probable cause; (5) termination in Defendants' favor; and (6) special damages. *Tex. Beef Cattle Co. v. Green*, 921 S.W.2d 203, 207 (Tex. 1996) (citation omitted). Defendants' claim is based on Plaintiff's "malicious prosecution of the Scottish [Proceeding]." Countercls. 53 ¶ 54.

Plaintiff first challenges Defendants' standing to bring this claim because Defendants were not parties to the Scottish Proceeding. Mot. 20. Defendants respond that they "alleged they were parties to the Scottish . . . Proceeding" and that SPEX Group Holdings, Ltd., "act[ed] as a group representative for all Defendants in the adjudication process." Resp. 22-23 (emphasis omitted). The parties' arguments ask the Court to determine whether Defendants should be considered to have been parties to the Scottish Proceeding, but no party provided adequate supporting facts or case law so that the Court could make that decision. Because the standing dispute requires the Court to look outside the Counterclaims and to understand how the Scottish Proceedings operated, and because the parties did not equip the Court to do so with their briefing, the Court will not dismiss Defendants' malicious prosecution claim at this stage for lack of standing.

Plaintiff next argues that Defendants failed to state a claim for malicious prosecution. Mot. 20-21. Applying the facial plausibility jurisprudence of *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and accepting all well-pleaded facts as true, and viewing them in the light most favorable to Defendants, the Court concludes that the Counterclaims contain sufficient facts to state a malicious prosecution claim that is plausible on its face. Therefore, the Court will not dismiss this claim at this stage.

### *H. Tortious Interference with Prospective Relationship*

Under Texas law, a tortious interference with prospective relationship claim has five elements: (1) there was a reasonable probability that Defendants would have entered into a

business relationship with a third party; (2) Plaintiff acted with a conscious desire to prevent the formation of the relationship or knew that interference was certain or substantially certain to occur; (3) Plaintiff's conduct was independently tortious or unlawful; (4) the interference proximately caused injury to Defendants; and (5) Defendants suffered actual damage or loss. *WickFire, L.L.C. v. Woodruff*, 989 F.3d 343, 356 (5th Cir. 2021) (quoting *Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)). Applying the facial plausibility jurisprudence of *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and accepting all well-pleaded facts as true, and viewing them in the light most favorable to Defendants, the Court concludes that the Counterclaims contain sufficient facts to state a tortious interference with prospective relationship claim that is plausible on its face. As such, the Court denies the Motion with respect to this claim.

### *I. Tortious Interference with Contract*

To establish a tortious interference with contract claim, Defendants must plead: (1) the existence of a valid contract subject to interference; (2) that Plaintiff willfully and intentionally interfered with the contract; (3) that the interference proximately caused Defendants' injury; and (4) that Defendants incurred actual damage or loss. *Cmty. Health Sys. Pro. Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017) (citation omitted). Applying the facial plausibility jurisprudence of *Twombly*, 550 U.S. 544, and *Iqbal*, 556 U.S. 662, and accepting all well-pleaded facts as true, and viewing them in the light most favorable to Defendants, the Court concludes that the Counterclaims contain sufficient facts to state a tortious interference with contract claim that is plausible on its face. Accordingly, the Court denies the Motion as to this claim.

### *J. Fraudulent Transfer*

An actual fraudulent transfer claim under TUFTA has four elements: (1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; and

(4) actual intent by the debtor to hinder, delay, or defraud its creditors. *Life Partners Creditors' Tr. v. Cowley* (*In re Life Partners Holdings, Inc.*), 926 F.3d 103, 117 (5th Cir. 2019) (quoting TEX. BUS. & COM. CODE ANN. § 24.005(a)(1)). Defendants may also bring a constructive fraudulent transfer claim, which has largely the same elements. But instead of pleading fraudulent intent, they need only plead "a lack of reasonably equivalent value for the transfer" and that "the transferor was 'financially vulnerable' or insolvent at the time of the transaction." *Id.* at 120 (citing *Janvey v. Golf Channel, Inc.*, 487 S.W.3d 560, 562, 566 & n.21 (Tex. 2016); TEX. BUS. & COM. CODE ANN. § 24.006(a)).

Having reviewed the Counterclaims, the Court finds that Plaintiff correctly points out that Defendants' TUFTA claim leaves much to be desired. *See* Mot. 23-25. However, given the firm trial setting and procedural posture of this case, the Court finds that it is more proper to address Defendants' TUFTA claim at the summary judgment stage, as opposed to granting the Motion and requiring Defendants to replead. As such, the Court denies Plaintiff's request to dismiss the TUFTA claim.

As a final note, Defendants' brief argument in support of their TUFTA claim includes the assertion that "[Plaintiff's] challenge to the truthfulness of [Defendants'] allegations is inappropriate and not a basis for dismissal." Resp. 26. This statement is part of a trend of Defendants balking at challenges to the truthfulness of their allegations throughout the Response. *See id.* at 1, 2, 9, 22-23. While Defendants are correct that the Court must take their well-pleaded allegations as true at this stage, their repeated reliance on the ability to be untruthful in their allegations is noteworthy. The Court reminds Defendants of their obligations under Federal Rule of Civil Procedure 11 and urges Defendants to withdraw any causes of action not rooted in the truth.

### *K. Denuding the Corporation*

"[W]here a corporation has sold all of its assets to a third party, leaving it denuded, the third party may be liable to the corporation for the assets it received." *AAB Logistics, Inc. v. Forward Air, Inc.*, No. 3:15-CV-3840-G, 2016 WL 8672773, at *10 (N.D. Tex. Nov. 18, 2016) (citation omitted). This cause of action exists because a "corporation cannot disable itself from responding [to liabilities] by distributing its property . . . and leaving remediless those having valid claims." *World Broad. Sys., Inc. v. Bass*, 328 S.W.2d 863, 864 (Tex. 1959) (citation omitted).

Here, Defendants allege that Plaintiff "moved" and "divert[ed]" its assets. Countercls. 56 ¶ 67. But Defendants do not allege that Plaintiff has been "stripped of its property as completely and effectively as if it had been dissolved and its assets appropriated." *World Broadcasting Sys.*, 328 S.W.2d at 866. And there is no indication that Plaintiff has "nothing left with which to pay" Defendants. *Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 632 (Tex. App.—Houston [14th Dist.] 1973, no writ). As such, Defendants have not sufficiently pleaded that Plaintiff has been denuded.

Moreover, Defendants failed to adequately defend this claim in the Response. Instead, they merely contend in conclusory fashion that they stated a claim for denuding the corporation. *See* Resp 26. For this additional reason, the Court concludes that dismissal of the denuding the corporation claim is proper. *See Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007) (waiving issue for inadequate briefing where the party failed to provide "any legal argument beyond bare assertions" (citation omitted)).

Defendants request leave to amend any deficient claims. Resp. 26-27. But the Court finds that amending the denuding the corporation claim would be futile. Defendants included no allegations—either in the Counterclaims or the Response—that would support this claim. As such,

the Court concludes that dismissal with prejudice is appropriate. *See Martinez v. Nueces County*, 71 F.4th 385, 391 (5th Cir. 2023) ("If the [pleading], as amended, would be subject to dismissal, then amendment is futile and the district court [is] within its discretion to deny leave to amend." (citation omitted)).

### *L. Intentional Infliction of Emotional Distress*

Oag brings a claim for IIED, alleging that Plaintiff's "conduct in lying about the explosive nature of its tools and fuel was extreme and outrageous" and "caused [Oag] severe emotional distress." Countercls. 56 ¶ 69. Oag also mentions the fact that he has had to defend himself in this case and in the Scottish Proceeding, although it is unclear how that fact connects to his IIED claim, and Oag does not reference it in the Response. *Id.*; *see also* Resp. 21. Finally, Oag challenges Plaintiff "making false statements about Defendants' economic interests to Defendants' customers." Countercls. 44 ¶ 21.

IIED is a "gap-filler" tort meant to "allow[] recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004) (citation omitted). Here, Oag has multiple other theories of redress for the challenged conduct, including claims for fraud, malicious prosecution, business disparagement, and tortious interference. Because the gravamen of Oag's IIED claim concerns other torts, Oag's claim cannot survive. *See Miller v. Target Corp.*, 854 F. App'x 567, 569-70 (5th Cir. 2021) (affirming dismissal of IIED claim where the gravamen of the complaint concerned defamation and malicious prosecution). "There is, in short, no gap that IIED needs to fill in this case." *Stelly v. Duriso*, 982 F.3d 403, 409 (5th Cir. 2020) (citation and internal quotation marks omitted). Therefore, the Court dismisses Oag's IIED claim.

To the extent Oag seeks leave to amend, the Court concludes that doing so would be futile. *See Martinez*, 71 F.4th at 391 (citation omitted). As stated above, IIED is a gap-filler tort, and there is no gap to fill in this case. Thus, the deficiencies in Oag's IIED claim cannot be cured by amendment.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion to Dismiss Defendants' Counterclaims and Brief in Support [ECF No. 540]. The Court **GRANTS** the Motion as to Defendants' claim for denuding the corporation and Oag's claim for intentional infliction of emotional distress. These claims are **DISMISSED WITH PREJUDICE**. With respect to all other claims asserted by Defendants, the Court **DENIES** the Motion.

**SO ORDERED.**

SIGNED August 17, 2026.

**KAREN GREN SCHOLER**
**UNITED STATES DISTRICT JUDGE**